UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN V. BIVONA, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-01386-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Docket No. 4 |

## I.   BACKGROUND

On March 22, 2016, Plaintiff Securities and Exchange Commission (SEC) filed the instant complaint against Defendants John V. Bivona, Saddle River Advisors, LLC, SRA Management Associates, LLC, and Frank Gregory Mazzola, and Relief Defendants SRA I LLC, SRA II LLC, SRA III LLC, Felix Investments LLC, Michele J. Mazzola, Anne Bivona, Clear Sailing Group IV LLC, and Clear Sailing Group V LLC (collectively, "Defendants"). *See* Docket No. 1 ("Complaint"). The SEC alleges that Defendants have committed, *inter alia*, violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940. ¶¶ 88-120 (referring to 15 U.S.C. § 77a *et seq*., § 78a *et seq*., § 80b-1 *et seq*.).

The same day, the SEC also filed a motion for a temporary restraining order ("TRO") that would:

　　1.　Prohibit Mr. Bivona, Saddle River, and SRA Management from violating the anti-fraud provisions of the federal securities laws and from selling or purchasing securities;

　　2.　Appoint an independent monitor, Mr. Michael A. Maidy of Sherwood Partners, who will review Saddle River's, SRA Management's, the SRA Funds', and Clear Sailing's

1  financial records, transactions, and operations for the purpose of identifying assets, preventing
2  dissipation of funds, and recommending future steps;
3      3.    Freeze the assets of the Bivonas, the Mazzolas, and Felix Investments;
4      4.    Authorize discovery before the parties' discovery conference; and
5      5.    Require initial accountings of Saddle River, SRA Management, SRA Funds, and
6  Clear Sailing.

*See* Docket No. 4 at 1, 24-25 ("Motion"). The SEC contended the TRO was needed to prevent further dissipation of investors' funds, and to prevent the destruction of evidence. Mot. at 22-24.

The Court granted the SEC's application for a TRO on March 25, 2016, and set a hearing date for the preliminary injunction. *See* Docket No. 36. The Court ordered Defendants to brief why the Court should not turn the TRO into a preliminary injunction extending until a final adjudication on the merits. *Id*. at 10.

On April 22, the majority of the Defendants stipulated to be bound by a preliminary injunction. *See* Docket No. 59. The Mazzolas did not so agree. *See id*. Because the Mazzolas are the only defendants who have not already stipulated, this Order addresses only whether the preliminary injunction should be imposed against the Mazzolas.

On May 9, the Mazzolas filed an opposition to the preliminary injunction. *See* Docket No. 72 ("Opposition"). This Opposition did not object to the motion except to ask that the Court to partially unfreeze the Mazzolas' assets. *See id*. At the hearing, the Court asked for information it deemed necessary to partially unfreeze the Mazzolas' assets. While the Mazzolas' counsel refused to provide this information, he indicated he was amenable to working on a solution with the SEC. On May 18, 2016, the SEC and the Mazzolas filed a stipulation outlining their solution. Docket No. 85. The Court entered the proposed order and stipulation on May 20, 2016. Docket No. 92. Also on May 20, the Mazzolas filed the supplemental briefing requested by the Court at the hearing. Docket No. 86 ("Supplement").

## II.   ANALYSIS

A.   Standard of Review

In its application for a TRO, the SEC argued that a TRO was needed to prevent further

dissipation of investors' funds, and to prevent the destruction of evidence. Mot. at 22-24. The SEC argued that "[u]nder Section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), and Section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d), the SEC is entitled to a preliminary injunction when it establishes the following: (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." Mot. at 13 (quoting *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 n.2 (11th Cir. 1999)). However, this test has not been expressly adopted by the Ninth Circuit. *See SEC v. Eadgear, Inc.*, No. 3:14-CV-04294-RS, 2014 WL 6900938, at *1 (N.D. Cal. Dec. 8, 2014) (noting the Ninth Circuit has not adopted the Exchange Act's test).

When evaluating a motion for a preliminary injunction, the Ninth Circuit requires the moving party to show:

(1) it "is likely to succeed on the merits";
(2) it "is likely to suffer irreparable harm in the absence of preliminary relief";
(3) "the balance of equities tips in [its] favor"; and
(4) "an injunction is in the public interest."

*Boardman v. Pac. Seafood Grp.*, No. 15-35257, 2016 WL 1743350, at *5 (9th Cir. May 3, 2016) (line breaks added) (quoting *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). Alternatively, a plaintiff may obtain a preliminary injunction if the plaintiff "raises 'serious questions' as to the merits and 'the balance of hardships tips sharply in [plaintiff's] favor.'" *Puente Ariz. v. Arpaio*, No. 15-15211, 2016 WL 1730588, at *10 (9th Cir. May 2, 2016).

The balance of equities test "is substantially identical" to the test the Ninth Circuit uses to evaluate an application for a temporary restraining order. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 (9th Cir. 2001) ("Because our analysis is substantially identical for the injunction and the TRO, we do not address the TRO separately."). As the analysis is nearly the same for TROs and preliminary injunctions, where the Court made a determination on a factor in the course of granting the TRO and the parties raise no new arguments in briefing the preliminary injunction, the Court does not repeat its previous analysis.

3

### B. The SEC Can Satisfy the Balance of Equities Test

The SEC satisfies the balance of equities test on its request for a preliminary injunction against the Mazzolas. As explained in the Order granting the TRO, the SEC has presented evidence of the Mazzolas diverting funds away from investors. Because it has evidence of this diversion, the SEC is likely to succeed on the merits. The preliminary injunction will preserve the assets, preventing the "irreparable harm" of those assets being dissipated, and will assist the SEC in investigating the case, preventing the "irreparable harm" of evidence being destroyed or concealed. *See Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (recognizing that irreparable harm is likely to result if assets are dissipated); *Shutterfly, Inc. v. ForeverArts, Inc.*, No. CR 12-3671 SI, 2012 WL 2911887, at *3 (N.D. Cal. July 13, 2012) (recognizing that irreparable harm is likely to result if evidence is destroyed). The only harm raised by the Mazzolas is the asset freeze (discussed *infra*). Finally, a preliminary injunction will assist the SEC in preventing further harm to the investing public, and is thus in the public's interest.

For the same reasons the SEC was able to satisfy the requirements for a TRO, it can satisfy the requirements for a preliminary injunction against the Mazzolas.

#### 1. The Court Will Not Modify the Asset Freeze Provisions at This Time

The Mazzolas seek relief from the asset freeze to pay for their "ordinary living expenses." Mot. at 3. Whether to freeze a party's assets is a matter for the Court's discretion. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 562-63 (9th Cir. 1992) (district court had discretion to impose asset freeze). So too is the modification of an asset freeze. *See F.T.C. v. Trek All., Inc.*, 81 F. App'x 118, 119 (9th Cir. 2003) ("the district court did not abuse its discretion in deciding that modification of the [asset freeze] order was not warranted in the circumstances").

The Mazzolas seek relief to pay expenses such as:

- $9,140.24/month for mortgage payments, plus $32,841.09 to pay the amount in arrears, *see* Docket No. 72-1 ("Mazzola Decl.") at ¶ 2a;
- $779.38/month for gas and electric utilities, *id*. at ¶ 2b;
- $142.98/month for telephone, internet, and cable, *id*. at ¶ 2c;
- $820/month for car payments, plus $2,610.00 for arrears, *id*. at ¶ 2d;

4

- $2,400/month for food and miscellaneous costs, *id*. at ¶ 2f;
- at some point, money sufficient to pay for car insurance, *id*. at ¶ 2e.

In all, the Mazzolas seek the release of $13,282.60 per month ($159,391.20 per year) for their "ordinary living expenses." *See id*. They seek a further $35,451.09 to pay the arrears on their mortgage and car payments. *Id*.

The Court agrees with the SEC that modification is not appropriate because the Mazzolas have not established that they lack income or assets necessary to pay their living expenses. *See* Docket No. 76, SEC Response ("Response") at 2-3. While Mrs. Mazzola claims she is unemployed, the SEC points out that she has been unemployed for years. Response at 2. The Mazzolas also failed to state their assets, or how much income Mr. Mazzola receives. *Id*.

Mrs. Mazzola does not say that she no longer receives money from her husband, as (based on her long-term unemployment and high expenses) she was presumably doing before the asset freeze was imposed. *See generally* Mazzola Decl. She does not represent that her husband's income is reduced. *Id*. Nor does she explain why, in the face of her purported financial need, she is unable to find work. *Id*.[1] *See F.T.C. v. IAB Mktg. Assoc.*, 972 F.Supp.2d 1307, 1314 (S.D. Fla. 2013) ("nothing in the Preliminary Injunction prevents [defendants] from working to support themselves"). Indeed, the Court has no information as to the totality of assets available to the Mazzolas.

The Court requested the Mazzolas provide this information about available income and assets, but they refused to provide that information. *See* Tr. at 6-7, 10-12, 22-23. In the supplemental briefing ordered on this issue, the Mazzolas invoked their privilege against self-incrimination under the Fifth Amendment and refused to disclose their current assets and income. Supp. at 2.[2] Because the Mazzolas invoke their Fifth Amendment rights, the Court will not order

---

[1] While Mrs. Mazzola states she is the mother of four children, her children are "aged ten to fifteen." Mazzola Decl. ¶ 1.

[2] The Supplement stated that the Mazzolas have equity of $800,000 in their home, which appears to be worth slightly more than $2 million. Supp. at 2. The outstanding principal mortgage is nearly $1.2 million. *Id*. And as stated above, the Mazzolas are in arrears of nearly $33,000. Mrs. Mazzola asked the Court to unfreeze a bank account with $3,220.94. Because this will not cover even one-tenth of the arrears on the mortgage, unfreezing seems pointless. *See Commodity*

5

1  them to disclose assets and income. However, without a complete picture of their finances, the
2  Court will not modify the asset freeze beyond the deal negotiated with the SEC. Courts have
3  refused to modify an asset freeze without evidence of actual need. *See, e.g., Century--ML Cable*
4  *Corp. v. Carrillo Diaz*, 43 F. Supp. 2d 166, 174 (D.P.R. 1998) (refusing to modify asset freeze
5  because "Defendants have made no accounting or other showing that their assets were derived
6  from legitimate conduct"); *cf. Intermedia Partners Se. Gen. P'ship v. QB Distribs. L.L.C.*, 999 F.
7  Supp. 1274, 1285 (D. Minn. 1998) (expressing a willingness to modify an asset freeze "if
8  defendants can demonstrate . . . a need for such funds"). Courts continue to require evidence of
9  need where the defendant has invoked his or her privilege against self-incrimination. *See S.E.C. v.*
10 *Cherif*, 933 F.2d 403, 416-17 (7th Cir. 1991) (affirming district court's refusal to modify
11 injunction where defendant refused to provide information about his assets, and rejecting
12 defendant's argument that this penalized him for invoking the Fifth Amendment).[3]

13 Because the Mazzolas decline to provide the Court with evidence of need, the Court will
14 not modify the asset freeze. However, this decision does not affect the arrangement reached
15 between Mrs. Mazzola and the SEC, allowing for a partial use of bank accounts so long as the
16 monies deposited are untainted. *See* Docket No. 85.

17 ///
18 ///
19 ///
20 ///
21 ///

---

*Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (approving denial of freeze modification, where the amount sought was dwarfed by the amount needed).

[3] *See also In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2004 WL 2186582, at *13 (S.D.N.Y. Sept. 27, 2004) (finding that a court's refusal to modify an asset freeze, "in the face of the [defendants'] continued refusal to make full disclosure of their assets," was proper despite invocation of Fifth Amendment, and noting that "the exercise of one's Fifth Amendment privilege is not without consequences"); *CSC Holdings, Inc. v. New Info. Techs., Inc.*, No. 3-00-CV-1398-R, 2001 WL 276941, at *1 (N.D. Tex. Mar. 14, 2001) (defendants' refusal to "respon[d] to questions about their assets and profits," on the grounds of Fifth Amendment privilege, "provide[d] an independent basis for continuing the asset freeze).

United States District Court
For the Northern District of California

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the SEC's motion for a preliminary injunction.

This order disposes of Docket No. 4.

**IT IS SO ORDERED**.

Dated: May 25, 2016

_____
EDWARD M. CHEN
United States District Judge