# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) Case No. 3:16-cv-1386 |
| | ) |
| Plaintiff, | ) **[PROPOSED] ORDER AND** |
| | ) **STIPULATION GRANTING** |
| v. | ) **THE RECEIVER'S REQUEST** |
| | ) **TO APPROVE A** |
| JOHN B. BIVONA; SADDLE RIVER | ) **SETTLEMENT OF A SISTER** |
| ADVISERS, LLC; SRA | ) **RECEIVER'S DEMAND FOR** |
| MANAGEMENT ASSOCIATES, LLC; | ) **CONTROL OF ASSETS** |
| FRANK GREGORY MAZZOLA | ) |
| | ) Date:   No Date |
| Defendants. | ) Time:   No Time |
| | ) Judge:  Edward M. Chen |
| | ) |

The parties, U.S. Securities & Exchange Commission ("SEC"), counsel for defendants John Bivona and Saddle River Advisers, LLC ("Saddle River"), Frank G. Mazzola individually (Mazzola"), appearing *in pro per*, and counsel for the Receiver, hereby stipulate and agree to the entry of an order as follows:

1.) The Receiver in this matter, Sherwood Partners Inc. ("Sherwood"), received notice of an investor demand for 1,250 shares of Square Inc. ("the Demand ") on December 8, 2016, from Kevin Duff Esq., the court-appointed receiver in a sister SEC action in the Northern District of Illinois styled *SEC v. Neal V. Goyal, Civ. No. 14- CV-3900*. A copy of the notice of the Demand, and its attachments setting forth its basis, are appended to this proposed stipulated Order as <u>Exhibit A</u>.

2.) Prior to this Court's Order Appointing Sherwood as Receiver ("the Order"), Mr. Duff had given notice to defendant Bivona of his appointment in the SEC sister action in the Northern District of Illinois and made demand on Bivona that upon the happening of a liquidity event in the shares of Square, that the 1,250 shares belonging to the *Goyal* Receivership estate be distributed to him. That process was underway prior to the Order, but had not been completed with the transmission of those 1,250 shares to Mr. Duff by defendant SRA Advisers.

3.) In his Demand, made on behalf of his Receivership Estate in the *Goyal* action, Mr. Duff raised the legal issue of whether that action took substantive precedence over the present action insofar as it seeks to recover the exact amount of Square shares to which it holds in an SRA fund, due to the filing of a notice in this District pursuant to 28 U.S.C. 754 on June 12, 2014, prior to the filing of the instant action by the SEC on March 22, 2016. In effect, Mr. Duff's Demand raises the issue of whether the filing of a notice pursuant to 28 U.S.C. 754 pre-emptively removed the 1,250 shares of Square held by the

defendants in this action from this Court's jurisdiction and in turn, from Sherwood's control.

4.) Sherwood, through counsel, has responded to the Demand and raised issue with its jurisdictional underpinning, that is, whether a pre-existing and properly-noticed receivership in one federal district court, such as the *Goyal* receivership, can essentially pre-empt jurisdiction over a specific asset subject to a later imposed receivership in a different federal district court, such as this one.

5.) The receivers in both SEC actions agree that at the liquidation value of $17 a share, which was received by Sherwood on March 2017 for the sale of all the remaining Square shares held by Sherwood for the SRA funds, the total amount of the Demand is $21,250. The receivers in both SEC actions agree that to litigate the novel legal issue raised by the Demand before either or both federal district courts for the Northern Districts of California and Illinois, would likely cost in excess of the amount at issue, or at least erode its value in a material amount, rendering the very point of the adjudication a wasteful exercise.

6.) As a result of the agreement of the two receivers referred to in Paragraph 5, they have agreed to settle the Demand for the amount of $20,000 in order to avoid the wasteful and time-consuming litigation that would be necessary to have either, or both federal courts' consider the legal issue of pre-emption. All parties to the Stipulation agree that such litigation would likely be wasteful of estate assets. As a result the plaintiff SEC in this action, as well as in the *Goyal* action have no objection to the proposed Order settling the Demand. Counsel for defendants Bivona and SRA Advisers in this action, and defendant Mazzola acting *in pro per*, likewise, have no objection to the proposed Order.

7.) The settlement amount of $20,000, which is $1,250 less than the amount of the Claim, takes into consideration the 4 % "set aside fund" amount ($860) and a remainder amount ($390) to satisfy a possible share shortfall in any as yet undistributed Square shares going to SRA investors.

8.) On May 17, 2017, the Honorable Rebecca R Pallmeyer of the U.S. District Court for the Northern District of Illinois approved the settlement amount that will be received in the *Goyal* matter. A copy of Judge Pallmeyer's order approving the settlement is appended to this proposed stipulated Order as Exhibit B.

THEREFORE, based on the agreement of the two receivers set forth above, and the statement of non-objection by the Plaintiff SEC and the defendants herein, the Court hereby approves the settlement amount of $20,000 for the settlement of the jurisdictional dispute over the 1,250 shares of Square as being the most practical and efficient manner of resolving the Demand without resort to costly and time-consuming litigation.

SO STIPULATED.


Dated: May 30, 2017        GARTENBERG GELFAND HAYTON LLP

                           By:    /s/  *John W. Cotton*
                                  JOHN W. COTTON
                                  Counsel to the Receiver


DATED: May 30, 2017        SECURITIES & EXCHANGE COMMISSION

                           By://s// By Permission (Civ. L.R. 5-1 (i)
                           JOHN YUN
                           Attorneys for Plaintiff

DATED: May 30, 2017

DEFENDANTS BIVONA AND SADDLE RIVER ADVISERS

By://s// By Permission (Civ. L.R. 5-1 (i)
JAHAN P. RAISSI
SHARTSIS FRIESE LLP

Attorneys for Defendants John Bivona and Saddle River Advisers

DATED: May 30, 2017

DEFENDANT FRANK MAZZOLA, *In Pro Per*

By://s// By Permission (Civ. L.R. 5-1 (i)

FRANK MAZZOLA

IT IS SO ORDERED.

DATED: ~~May    , 2017~~
        June 6, 2017

UNITED STATES DISTRICT COURT

IT IS SO ORDERED

Judge Edward M. Chen

NORTHERN DISTRICT OF CALIFORNIA

[Proposed] Stipulated Order Granting Receiver's Request to Settle An Asset Demand of a Sister Receiver

Exhibit A

# Caldera Advisors, LLC
### Caldera Equity Fund, LP
## &
# Blue Horizon Asset Management, LLC
#### Blue Horizon Partners Fund, LP
#### Blue Horizon Bio-Energy Fund, LP
#### Blue Horizon Global Equity Fund, LP



*In Receivership*
*Kevin B. Duff, Receiver*

c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390 Phone
(312) 733-3950 Fax
kduff@rdaplaw.net

December 8, 2016

<u>**Via U.S. Mail and E-Mail**</u>

Michael A. Maidy, Receiver
(mam@shrwood.com)
Sherwood Partners, Inc.
1100 La Avenida Street
Building A
Mountain View, CA  94043

> **Re:** *United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.* **("Receivership Defendants")**

Dear Mr. Maidy:

This is to advise you that I have been appointed Receiver for the Receivership Defendants (as described above), pursuant to an order entered by the Honorable Rebecca R. Pallmeyer in the case captioned *United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.,* No. 14-cv-3900, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

Enclosed is a copy of the Court's order, titled "Order Appointing Receiver," which appoints me as Receiver for all assets of whatever kind and wherever situated, of Receivership Defendants Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Managements, LLC, and Caldera Investment Group, Inc. (the "Receivership Assets").  On July 10, 2014, notice of the Receivership and this Order was sent to Felix Investments.  On July 29, 2014, notice of the Receivership and this Order was sent to John Bivona at SRA Fund, LLC.  Copies of these letters

are enclosed. I also have had numerous communications with Saddle River Advisors, LLC, which similarly has notice of my role as Receiver.

During the course of Neal Goyal's fraud, he made a private equity investment on behalf of Caldera Venture Partners, LLC in Square, Inc. All assets of Caldera Venture Partners – which includes the equity investment in Square, Inc. – were conveyed by an assignment to the Receivership Estate. A copy of the assignment agreement is enclosed.

On February 24, 2014, Goyal sent a check made out to SRA I LLC in the amount of $25,000 from Caldera Venture Partners for a Series membership and 125 shares of Square, Inc. stock. On April 23, 2014, John Bivona of SRA Management Associates LLC sent Neal Goyal a letter with an accepted subscription agreement for the investment in Series CC-3 (SA) of SRA Fund I, LLC. A copy of the check written and letter are enclosed.

I previously contacted John Bivona, of SRA Management Associates, LLC, and Susan Diamond, of Saddle River Advisors, LLC, to determine the value of the investment and options for liquidation, and had numerous communications in 2015 and 2016.

I was told that the Receivership Estate's stock underwent a 10-1 split and Caldera Venture Partners held 1,250 shares with a stock price of $20 per share and that these shares were subject to a 180-day lockup period that expired in mid-May 2016.

On June 7, 2016, I filed a Motion for Court Approval of the Sale and Liquidation of Private Equity Investments, which included the liquidation of the 1,250 Square shares of stock. June 15, 2016, the Honorable Rebecca Pallmeyer granted this Motion. A copy of the Motion and Order are enclosed.

On June 15, 2016, I sent an email to Susan Diamond to liquidate the 1,250 shares. On August 30, 2016, Ms. Diamond informed me that in order to receive the Square shares, I would need to set up a brokerage account. To set up this account, I asked Ms. Diamond for a statement showing the number of shares and how they are being held.

To date, I have not received a statement showing the number of shares held and the name of the entity holding the shares. Accordingly, please send any information and a statement or certificate showing the number of shares held for me as Receiver for Neal V. Goyal, et al., and/or in the name of Caldera Venture Partners, LLC and/or Neal Goyal to the address below:

Kevin B. Duff, Receiver
Caldera Advisors, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605

Additionally, it bears noting that the Honorable Rebecca Pallmeyer, a United States District Court Judge in the Northern District of Illinois, has exclusive jurisdiction over the Receivership Assets for which I am Receiver, including all such assets located in the Northern

District of California.  A copy of the Order appointing me as Receiver was filed with the Clerk of the United States District Court for the Northern District of California on June 12, 2014, and assigned N.D. Cal. Case No. CV 14 80 182 MISC.  A copy is enclosed for your reference.

Thank you for your prompt attention to this matter.

Very truly yours,

Kevin B. Duff, Receiver

Enclosures (13)

cc:     John W. Cotton (jcotton@gghslaw.com)
        Special Counsel to the Receiver
        Gartenberg Gelfand & Hayton LLP
        15260 Ventura Blvd., Suite 1920
        Sherman Oaks, CA  91403

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

———————————————————————

|  |  |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | **Civil Action No. 1:14-cv-03900** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Hon. Judge Rebecca R. Pallmeyer** |
| **NEAL V. GOYAL, CALDERA ADVISORS, LLC, and BLUE HORIZON ASSET MANAGEMENT, LLC** ) | |
| **Defendants,** ) | |
| **and** ) | |
| **CALDERA INVESTMENT GROUP, INC.** ) | |
| **Relief Defendant.** ) | |

———————————————————————

## ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S. Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Defendants and those assets of the Relief Defendant that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets"); and,

**WHEREAS** this Court has subject matter jurisdiction over this action and personal

**Enclosure 1**

jurisdiction over the Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants and Relief Defendant: Neal V. Goyal, Caldera Advisors, LLC, Blue Horizon Asset Management, LLC and Relief Defendant Caldera Investment Group, LLC (collectively, the "Receivership Defendants").

2.      Until further Order of this Court, Kevin B. Duff, of the firm Rachlis Duff Adler Peel & Kaplan, LLC Duff is hereby appointed to serve without bond as the federal equity receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. <u>Asset Freeze</u>

3.      Except as otherwise specified herein, all assets of the Defendants and Relief Defendants (collectively, "Receivership Assets") are frozen until further order of this Court. Accordingly, all persons, institutions and entities with direct or indirect control over any Receivership Assets other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such Receivership Assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with any financial institutions or other entities, including, but not limited to, banks, brokerage firms and mutual funds. In particular, the Court enjoins any disbursement of proceeds by the Defendants, their agents, representatives, employees and officers and all persons acting in concert or participation with them, whatever business name they may operate under, derived from the sales of interests in Receivership Defendants, or any of them.

## II.  General Powers and Duties of Receiver

4.      The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners of the Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a federal equity receiver, including but not limited to those powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, Fed. R. Civ. P. 66, and this Order.

5.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted in writing by the Receiver.  This order, however, does not dismiss Defendant Goyal's personal attorneys.

6.      The Receiver may assume and control the operation of any of the Receivership Defendants and may pursue and preserve all of their claims or interests.  The Receiver may continue and conduct the business, if any, of the Receivership Defendants in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all.

7.      No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act for or on behalf of any of those Receivership Defendants, unless expressly authorized, in writing, by the Receiver.

8.      Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly (the foregoing collectively may be referred to as "Receivership Assets" or the "Receivership Estates");

B.      To take exclusive custody, control and possession of all Receivership Assets and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Assets and records relevant thereto;

C.      To manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Assets, pending further Order of this Court;

D.      To take possession of all bank and investment accounts or securities accounts owned by or associated with the Receivership Estates or Receivership Defendants, whether in the name of the Receivership Defendants or their subsidiaries or affiliates, wherever located (collectively, the "Accounts").  The Receiver shall have the authority to open, close, transfer and change all bank, investment and securities Accounts.

E.      To sign checks on, otherwise withdraw or transfer, trade or otherwise control the funds and/or securities contained in any Accounts owned or controlled by, or in the name of, the Receivership Defendants and Receivership Estate.  The Receiver shall also be authorized to add or delete signers, including those currently authorized on the Account(s). The representatives of the Receiver initially designated with authority over these accounts shall be Kevin B. Duff.

F.      To open and maintain new bank accounts in the name of the Receiver for the use in administering and preservation of the Receivership Estate, using the Federal Employer Identification Number of the Receivership Estate, at the Receiver's discretion.

G.      To take control of, conserve, and liquidate any and all securities or commodities, owned by or for the benefit of the Receivership Estate, as the Receiver deems advisable or necessary.

H.      To use Receivership Assets for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging

his duties as Receiver;

I.      To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, members, trustees, and agents of the Receivership Defendants;

J.      To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

K.      To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

L.      To issue subpoenas to compel testimony of persons or production of records consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provision of Fed. R. Civ. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order;

M.      To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

N.      To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates;

O.      To prepare a full accounting with regard to the activities of the Receivership Defendants for the period January 1, 2006 through the date of this Order;

P.      To take such other action as may be approved by this Court.

### III. <u>Defendants' Duties to Receiver</u>

9.      The individual Receivership Defendants and the past and/or present officers,

directors, agents, managers, members, general and limited partners, trustees, attorneys,

accountants and employees of the entity Receivership Defendants, as well as those acting in their

place, are hereby ordered and directed to preserve, provide immediate access, and turn over to

5

the Receiver forthwith all paper and electronic information of, and/or relating to, the

Receivership Defendants and/or all Receivership Assets; such information shall include but not

be limited to books, records, documents, accounts, access codes, security codes, passwords, safe

deposit keys, combinations, and all other instruments, papers, and electronic data.  This does not,

however, include documents and files of Defendant Goyal's personal attorneys that are protected

by the work-product doctrine and attorney-client privilege.

10.     Within ten (10) days of the entry of this Order, the Receivership Defendants shall

file with the Court and serve upon the Receiver and the Commission a sworn statement, listing:

(a) the identity, location and estimated value of all Receivership Property; (b) all employees (and

job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of

the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known

creditors of the Receivership Defendants.  Defendant Goyal shall retain responsibility, and the

Receiver shall assume no responsibility, for preparing and filing Goyal's personal income tax

returns.

11.     Within thirty (30) days of the entry of this Order, the Receivership Defendants

shall file with the Court and serve upon the Receiver and the Commission a sworn statement and

accounting, with complete documentation, covering the period from January 1, 2006 to the

present:

        A.     Of all Receivership Property, wherever located, held by or in the name of
the Receivership Defendants, or in which any of them, directly or
indirectly, has or had any beneficial interest, or over which any of them
maintained or maintains and/or exercised or exercises control, including,
but not limited to: (a) all securities, investments, funds, real estate,
automobiles, jewelry and other assets, stating the location of each; and (b)
any and all accounts, including all funds held in such accounts, with any
bank, brokerage or other financial institution held by, in the name of, or
for the benefit of any of them, directly or indirectly, or over which any of
them maintained or maintains and/or exercised or exercises any direct or

indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B.    Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.    Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.    Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.    Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.    Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.    Of all transfers of assets made by any of them.

12.    Within ten (10) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for 2006 through 2013 with all relevant and necessary underlying documentation. The Receivership Defendants shall also deliver all state licenses, tax identification numbers, and all other relevant tax information.

13.    The individual Receivership Defendants named in the Complaint and the Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, members, shareholders, employees, accountants, debtors, creditors, managers and general and

limited partners, and other appropriate persons or entities shall answer under oath to the Receiver

all questions which the Receiver may put to them and produce all documents as required by the

Receiver regarding the business of the Receivership Defendants, or any other matter relevant to

the operation or administration of the receivership or the collection of funds due to the

Receivership Defendants.  In the event that the Receiver deems it necessary to require the

appearance of the aforementioned persons or entities, the Receiver shall make his discovery

requests in accordance with the Federal Rules of Civil Procedure.  Nothing in this Order shall

operate as or effectuate a waiver of the attorney-client privilege regarding communications

between Defendant Goyal and his personal attorneys, and Goyal's personal attorneys shall not be

compelled by this Order to divulge information that would otherwise be protected by the

attorney-client privilege.

14.     The Receivership Defendants are required to fully cooperate with and assist the

Receiver in all respects in fulfilling his duties and obligations.  As such, the Receivership

Defendants must respond promptly and truthfully to all requests for information and documents

from the Receiver.

### IV.  Access to Books, Records and Accounts

15.     The Receiver is authorized to take immediate possession of all assets, bank

accounts or other financial accounts, books and records and all other documents or instruments

relating to the Receivership Defendants.  All persons and entities receiving notice of this Order

by personal service, facsimile or other electronic transmission, or otherwise, having control,

custody or possession of any Receivership Assets are hereby directed to turn such property,

including but not limited to all Accounts, over to the Receiver.

16.     The Receivership Defendants, as well as their agents, servants, employees,

attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

17.     All banks, brokerage and securities firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants that receive actual notice of this Order by personal service, email, facsimile transmission, or otherwise shall:

A.     Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;

B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C.     Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D.     Cooperate expeditiously in providing access to accounts, assets and funds, as well as information as well as transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

**V.  <u>Access to Real and Personal Property</u>**

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and

accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, automobiles, and equipment.

19.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

20.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the real property and premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.     The Receiver is authorized to open all mail, other than mail addressed to Defendant Goyal's spouse, directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.     Upon the request of the Receiver, the U.S. Marshals Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estates.  In addition, the Receiver is authorized to request similar

assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

## VI. **Notice to Third Parties**

23.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, members, and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone

other than the Receiver concerning the Receiver's Mail.  The Receivership Defendants shall not

open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when

received, to the Receiver.  All personal mail of any individual Receivership Defendants, mail

addressed to Defendant Goyal's spouse, and/or any mail appearing to contain privileged

information, and/or any mail not falling within the mandate of the Receiver, shall be released to

the named addressee or addressee's attorney by the Receiver.  The foregoing instructions shall

apply to any proprietor, whether individual or entity, of any private mail box, depository,

business or service, or mail courier or delivery service, hired, rented, or used by the Receivership

Defendants.  The Receivership Defendants shall not open a new mailbox or take any steps or

make any arrangements to receive mail in contravention of this Order, whether through the U.S.

mail, a private mail depository or courier service.

27.     Subject to payment for services provided, any entity or utility furnishing water,

electric, telephone, sewage, garbage, or trash removal services to the Receivership Defendants

shall maintain such service and transfer any such accounts to the Receiver unless instructed to

the contrary by the Receiver.

28.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under

any insurance policy held by or issued on behalf of the Receivership Defendants, or their

officers, directors, agents, employees, or trustees, and to take any and all appropriate steps in

connection with such policies.

## VII.  Injunction Against Interference with Receiver

29.     The Receivership Defendants and all persons receiving notice of this Order by

personal service, facsimile transmission, or otherwise, are hereby restrained and enjoined from

directly or indirectly taking any action or causing any action to be taken, without the express

written agreement of the Receiver, which would:

      A.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

      B.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

      C.      Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against any Receivership Assets or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Assets; or,

      D.      Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.      The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

31.      The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII.  <u>Stay of Litigation</u>

32.      As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy

proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature filed against or seeking relief from: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

34.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to any cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled until the earlier of two years following entry of this Order or such time as the Receiver has filed his accounting with this Court.

## IX.  Managing Assets

35.     For each of the Receivership Estates, the Receiver shall establish one or more accounts at a federally insured bank to receive and hold all cash and cash equivalent Receivership Assets (the "Receivership Funds").

36.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of **[Name of Receivership Defendant]**" together with the name of the action, or a title to that effect.

37.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Assets, other than real estate, in the ordinary course of

business, on terms and in the manner the Receiver deems most beneficial to the Receivership

Estate, and with due regard to the realization of the true and proper value of such Receivership

Property.

38.     Subject to Paragraph 39, immediately below, the Receiver is authorized to locate,

list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all

necessary and reasonable actions to cause the sale or lease of all real property in the Receivership

Estates, either at public or private sale, on terms and in the manner the Receiver deems most

beneficial to the Receivership Estates, and with due regard to the realization of the true and

proper value of such real property.

39.     The Receiver is authorized to sell, and transfer clear title to, all real property in

the Receivership Estates after first obtaining Court authorization.

40.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-

down business operations of the Receivership Estates, including making legally required

payments to creditors, employees, and agents of the Receivership Estates and communicating

with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.     The Receiver shall take all necessary steps to enable the Receivership Funds to

obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section

468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed,

temporary or final, or pronouncements thereunder, including the filing of the elections and

statements contemplated by those provisions.  The Receiver shall be designated the administrator

of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the

administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a)

obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local

tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2].

## X. <u>Investigate and Prosecute Claims</u>

42.     Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Assets.

43.     Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estates, as the Receiver deems necessary and appropriate. As part of his duty to investigate and report to this Court pursuant to Section XV, the Receiver is authorized to conduct a full accounting with regard to the activities of the Receivership Defendants. The Receiver shall advise the Court as to the anticipated scope and nature of the accounting in his initial report to this Court. The Receiver also may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other

relief from this Court as may be necessary to enforce this Order. Where appropriate, the

Receiver should provide prior notice to counsel for the Commission before commencing

investigations and/or actions.

44. The Receiver hereby holds, and is therefore empowered to waive, all privileges,

including the attorney-client privilege, held by all entity Receivership Defendants.

45. The Receiver has a continuing duty to ensure that there are no conflicts of interest

between the Receiver, his Retained Personnel (as that term is defined below), and the

Receivership Estate.

## XI.  Repatriation of Foreign Assets and Documents

46. The Receiver shall take such steps as are necessary to repatriate to the territory of

the United States of America all Receivership Assets that are located in a country other than the

United States and are held by or for Defendants or are under Defendants' direct or indirect

control, jointly, severally, or individually.

47. To the extent he has not already done so, within three (3) business days following

entry of this Order, Neal V. Goyal shall provide the Receiver and the Commission with a full

accounting of all assets, including Receivership Assets, that are located outside of the United

States that have been transferred to the United States and are held by or for any Defendant or are

under any Defendants' direct or indirect control, jointly, severally, or individually, including the

addresses and names of any foreign or domestic financial institution or other entity holding the

assets, along with the account numbers and balances.

48. Neal V. Goyal shall take all steps necessary and appropriate to prevent any

transfer, disposition, or dissipation whatsoever of any assets, including Receivership Assets,

located outside the United States.

49.     To the extent he has not already done so, within three (3) business days following entry of this Order, Neal V. Goyal shall provide the Receiver and the Commission access to Defendants' records and documents held by financial institutions or other entities outside the United States, by signing and delivering to the Receiver and Commission's counsel a Consent to Release of Financial Records.

## XII.  Interference with Repatriation

50.     **IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, including Receivership Assets, or in the hindrance of the. repatriation required by the preceding Section XI of this Order, including but not limited to:

A.      Sending any statement, letter, facsimile, email or wire transmission, or telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that the assets have been fully repatriated pursuant to the preceding Section XI of this Order; and

B.      Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order or the fact that repatriation is required pursuant to a Court Order, until such time as assets, including Receivership Assets, have been fully repatriated pursuant the preceding Section XI of this Order.

## XIII.  Bankruptcy Filing

51.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants, or any of them.  If a Receivership Defendant is placed in Chapter 11 bankruptcy

proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor-in-possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor-in-possession under the Bankruptcy Code to the exclusion of any other person or entity.

52.     The provisions of Section VII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XIV.  Liability of Receiver

53.     The Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

54.     The Receiver and his attorneys and agents, acting within the scope of such agency (collectively, "Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their actions or omissions except upon an express finding by this Court that they acted as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

55.     No action shall be filed or proceeding commenced against the Receiver or the Retained Personnel arising out of or in any way related to this receivership or their duties or work performed in connection with the receivership without obtaining an order from the Court based upon a showing of good cause.

56.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

57.     In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor receiver. The Receiver shall then follow such instructions as the Court may provide.

## XV.  Insurance

58.     Given the urgency to appoint a Receiver, the Court recognizes that the Receiver accepts this appointment without time for independent verification that appropriate insurance is in place on the property or that appropriate liability or other insurance is in place to protect the Receivership Assets and the Receivership Estate.  Accordingly, the Court acknowledges that the Receiver has no responsibility or liability until such time as he can confirm that such insurance is in place or acquire the appropriate insurance.  The Receiver shall make it a priority to verify or obtain insurance coverage immediately upon this Order Appointing Receiver being entered; however, the Plaintiff, Receivership Defendants, and Court acknowledge there may be a gap of time before such insurance may be in place to properly protect the assets of the estate and any employees of the estate, and that the Receiver has no responsibility or liability until such time as he/it has notified the Court by filing a notice that insurance is in place.

59.     Neal V. Goyal is ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies.  This includes all applications, policies, riders, correspondence, endorsements, claims and other information.  Neal V. Goyal is ordered:  (1) to advise the insurance agent(s) of this Order in writing, (2) designate all authority over the policies to the Receiver, and (3) take no action with regard to terminating or modifying existing insurance policies.

60.     Any insurance broker, agent, carrier, or underwriter is specifically ordered by the Court to cooperate with the Receiver by timely furnishing the following:  (1) copies of all insurance policies including any riders, endorsements and applications with respect to policies

related to the Receivership Estates, (2) loss history for five consecutive years or for as long as insurance has been in force if less than five years, (3) premium payment history including current status, and (4) any correspondence with insurance agents, brokers and companies. Policies shall be endorsed by the Defendants naming the Receiver as Named Insured and Loss Payee effective the date of this Order as appropriate to the type of coverage, and evidence of this policy endorsement shall be promptly supplied to the Receiver.

61.     The Receiver is hereby authorized to engage insurance brokers and consultants as necessary to properly insure the Receivership Assets.

### XVI.  Recommendations and Reports

62.     The Receiver is authorized and empowered, in the Receiver's sole discretion, to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Assets (the "Liquidation Plan").

63.     Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

64.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value (if known), and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

65.     The Quarterly Status Report shall contain the following:

      A.     A summary of the operations of the Receiver;

      B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the

21

estate;

C.      A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.      A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.      A description of liquidated and unliquidated claims held by each Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.      A list of all known creditors with their addresses and the amounts of their claims;

G.      The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.      The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

66.      On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XVII.   Fees, Expenses and Accountings

67.      Subject to Paragraphs 68 – 74 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

68.      As provided in Section II above, and subject to Paragraph 59 below, the Receiver

is authorized to engage persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.

69.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

70.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

71.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

72.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

73.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.  Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

74.  At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED, this 6th day of June, 2014, at Chicago, Illinois**

**Rebecca R. Pallmeyer**
**UNITED STATES DISTRICT JUDGE**

# Caldera Advisors, LLC
### Caldera Equity Fund, LP
## &
# Blue Horizon Asset Management, LLC
### Blue Horizon Partners Fund, LP
### Blue Horizon Bio-Energy Fund, LP
### Blue Horizon Global Equity Fund, LP

*In Receivership*
*Kevin B. Duff, Receiver*

c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390 Phone
(312) 733-3950 Fax
kduff@rdaplaw.net

July 10, 2014

<u>**Via U.S. Mail**</u>
Felix Investments
17 State Street
New York, NY 10004

> Re: *United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.* (**"Receivership Defendants"**)

Dear Sir or Madam:

This is to advise you that I have been appointed Receiver for the Receivership Defendants (as described above), pursuant to an order entered by the Honorable Rebecca R. Pallmeyer in the case captioned *United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.,* No. 14-cv-3900, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

Attached is a copy of the Court's order, titled "Order Appointing Receiver," which appoints me as Receiver for all assets of whatever kind and wherever situated, of Receivership Defendants Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Managements, LLC, and Caldera Investment Group, Inc. (the "Receivership Assets"). Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets.

**Enclosure 2**

Accordingly, please direct all communications with respect to any accounts and/or assets associated with Receivership Defendants and/or the Receivership Assets to me.

In addition, please provide all information relating to any accounts held or assets associated with the Receivership Defendants and/or the Receivership Assets, including but not limited to information reflecting the nature, cost and value of the asset(s).

Very truly yours,

Kevin B. Duff, Receiver

Enclosure

# Caldera Advisors, LLC

### Caldera Equity Fund, LP

## &

# Blue Horizon Asset Management, LLC

### Blue Horizon Partners Fund, LP
### Blue Horizon Bio-Energy Fund, LP
### Blue Horizon Global Equity Fund, LP

*In Receivership*
*Kevin B. Duff, Receiver*

c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390 Phone
(312) 733-3950 Fax
kduff@rdaplaw.net

July 29, 2014

<u>**Via U.S. Mail**</u>
Mr. John Bivona
SRA Fund, LLC
40 Wall Street
17th Floor
New York, NY 10005

> **Re:** ***United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.* ("Receivership Defendants")**

Dear Mr. Bivona:

This is to advise you that I have been appointed Receiver for the Receivership Defendants (as described above), pursuant to an order entered by the Honorable Rebecca R. Pallmeyer in the case captioned *United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.,* No. 14-cv-3900, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

Attached is a copy of the Court's order, titled "Order Appointing Receiver," which appoints me as Receiver for all assets of whatever kind and wherever situated, of Receivership Defendants Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Managements, LLC, and Caldera Investment Group, Inc. (the "Receivership Assets"). Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets.

**Enclosure 3**

Accordingly, please direct all communications with respect to any accounts and/or assets associated with Receivership Defendants and/or the Receivership Assets to me.

In addition, please provide all information relating to any accounts held or assets associated with the Receivership Defendants and/or the Receivership Assets, including but not limited to information reflecting the nature, cost and value of the asset(s).

Please be advised that at this time no monies may be paid out of any Receivership Assets or accounts without express written permission from me.

Very truly yours,

Kevin B. Duff, Receiver

Enclosure

## Assignment of Membership Interests in Caldera Venture Partners, LLC

For good and valuable consideration, the receipt and adequacy of which is acknowledged, Neal V. Goyal and Christopher Ziobehr (hereinafter, "Transferors") convey, transfer, and assign all of Transferors' right, title, and interest in and to all of Transferors' membership interests in CALDERA VENTURE PARTNERS, LLC, an Illinois limited liability company (the "Company"), which constitute 100% of the membership interests in the Company and, thereby, any and all of the Transferors' rights to participate in the management and affairs of the Company and to be and exercise any rights of a member of the Company, to Kevin B. Duff as Receiver for Neal V. Goyal, Caldera Advisors, LLC, Blue Horizon Asset Management, LLC, and the recoverable assets of Caldera Investment Group, Inc. (hereinafter, "Transferee"), and the Transferee hereby accepts such conveyance, transfer, and assignment.

This Assignment of Membership Interests is made and received on 12/2/15, 2015.

**TRANSFERORS**

By: _____
Neal V. Goyal, Member

Kevin B. Duff, as Receiver for the assets of Neal V. Goyal

By: _____
Christopher Ziobehr, Member

**TRANSFEREE**

By: _____
Estate of Caldera Advisors, LLC, by Kevin B. Duff, Receiver

**Enclosure 4**

CALDERA VENTURE PARTNERS, LLC 02-13
500 N MICHIGAN AVE., STE. 2030
CHICAGO, IL 60611-3791

2-1/700 367                    223

DATE 2-24-14

PAY TO THE
ORDER OF   SRA I LLC                              | $ 25,000.00

TWENTY FIVE THOUSAND AND 00/100                DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO  SQUARE SERIES

⑈07100001⑈   180532006⑈0223

#1

Posting Date: 20140226

Sequence Number: 8080203609

Amount: $25,000.00

Account: 180532006

Routing Transit
Number: 07100001

Check/Serial
Number: 000000000223

Bank Number: 111

IRD Indicator: 0

BOFD: 000000000

Capture Source: PV

Entry Number: 0000002057

UDK: 111140226008080203609

Cost Center:

Teller Number:

Teller Sequence Number:

Missing Image: 5

PE Indicator: N

Application Code: 1

Trancode: 000223

DB/CR: DB

Item Type: P

Processing Date:

ISN: 123455773
Date/Time: 2/25/2014 12:37 PM
Valley National Bank 021201383
Branch: 236  Teller: 662

PAY TO THE ORDER OF
VALLEY NATIONAL BANK
MOONACHIE NJ 07074
► 021201383 ◄
FOR DEPOSIT ONLY
SRA LLC
000417/6191,

DO NOT WRITE,
RESERVED FOR FINANCIAL INSTITUTION USE

ENDORSE HERE

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved

**Enclosure 5**

**SRA FUND I LLC**
**40 Wall Street, 17th Floor**
**New York, NY 10005**

April 23, 2014

Caldera Venture Partners
401 N. Michigan Avenue, Ste. 1800
Chicago, IL 60611

**Re: SRA FUND I LLC - SERIES CC-3(SA)**

Dear Mr. Goyal:

Enclosed please find a copy of your accepted subscription agreement pertaining to your recent investment in membership interests in Series CC-3(SA) of SRA Fund I LLC (the "Company").

At this time the Company will not be preparing formal certificates reflecting your Series CC-3(SA) membership interests. We advise you to retain a copy of this letter, along with the enclosed accepted subscription agreement, as evidence of your admission as a member in Series CC-3(SA) of the Company.

Your total capital contribution of $25,000.00, received on February 25, 2014, constitutes a 100% membership interest in Series CC-3(SA) of the Company. Series CC-3(SA) currently owns 125[*] shares of Square, Inc. through an affiliate of the company. Your entire capital contribution of $25,000.00 has been applied to an investment in approximately 125 underlying shares of Square, Inc. at a purchase price equivalent to $200.00 per share.

If you have any questions regarding the Company or your investment therein, please contact John V. Bivona at (646) 597-4313.

Sincerely,
SRA FUND I LLC

By:

John Bivona, Manager of
SRA Management Associates LLC
Manager

---

[*] The number of shares (and/or proceeds thereof) to be distributed to Series CC-3(SA) investors upon liquidation is subject to adjustment for allocation of organizational and operating expenses of the Company.

**Enclosure 6**

# Caldera Advisors, LLC
### Caldera Equity Fund, LP
## &
# Blue Horizon Asset Management, LLC
### Blue Horizon Partners Fund, LP
### Blue Horizon Bio-Energy Fund, LP
### Blue Horizon Global Equity Fund, LP

*In Receivership*
*Kevin B. Duff, Receiver*

c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390 Phone
(312) 733-3950 Fax
kduff@rdaplaw.net

December 2, 2015

**Via FedEx**

John Bivona
SRA Management Associates, LLC
40 Wall Street, 17th Floor
New York, NY 10005

Susan Diamond
Saddle River Advisors, LLC
40 Wall Street, 17th Floor
New York, NY 10005

Ross Nadel
Square, Inc.
1455 Market Street
San Francisco, CA 94103

> **Re:** *United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.* **("Receivership Defendants")**

Dear Sirs/Madam,

As you know, I have been appointed Receiver for the Receivership Defendants (as described above), pursuant to an order entered by the Honorable Rebecca R. Pallmeyer in the case captioned *United States Securities Exchange Commission v. Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Management, LLC, and Caldera Investment Group, Inc.,* No. 14-cv-3900, pending in the United States District Court for the Northern District of Illinois, Eastern Division.

Enclosed is a copy of the Court's order, titled "Order Appointing Receiver," which appoints me as Receiver for all assets of whatever kind and wherever situated, of Receivership Defendants Neal V. Goyal, Caldera Advisors, LLC, and Blue Horizon Asset Managements, LLC, and Caldera Investment Group, Inc. (the "Receivership Assets"). Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver,

**Enclosure 7**

are restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets.

My responsibility as Receiver includes recovery of money that Goyal paid to entities using funds generated through the perpetration of this Ponzi-like scheme. With respect to Square, Inc., Goyal made a $25,000 investment through an entity he created called Caldera Venture Partners, LLC ("CVP").

As manager of the SRA Fund I, LLC John Bivona sent CVP a letter confirming CVP's interest in the SRA Fund I, LLC Series CC-3 (SA) on or about February 18, 2014. CVP sent a $25,000 check made payable to SRA I LLC on or about February 24, 2014. CVP, as the investor, received 125 shares of Square, Inc., showing Goyal as the managing partner and authorized signatory of CVP. CVP had two members: Goyal and Christopher Ziobehr. To dispel any question that the assets of CVP belong to the Receivership Estate, the members of CVP executed Assignment of Membership Interests in Caldera Venture Partners, LLC by which the members of CVP transferred their interests to the Estate of Caldera Advisors, LLC. A copy of this Assignment is attached hereto for your reference.

We are aware that on or about November 19, 2015 Square, Inc. issued an Initial Public Offering ("IPO"). Please send to the address below, any documents or communications relating to CVP's investment and ownership interest of all shares of Square, Inc. Specifically, please send us any information relating to the status of CVP's investment and all shares of Square, Inc. as effected by the recent IPO, to the address below:

> Kevin B. Duff, Receiver
> Caldera Advisors, LLC
> c/o Rachlis Duff Adler Peel & Kaplan, LLC
> 542 South Dearborn Street, Suite 900
> Chicago, IL 60605

Thank you for your prompt attention to this matter.

Very truly yours,

Kevin B. Duff, Receiver

Enclosures

**From:** **Diamond, Sue** sdiamond@saddleriveradv.com
**Subject:** Caldera Advisors, LLC & Blue Horizon Asset Management, LLC
**Date:** December 17, 2015 at 11:56 AM
**To:** kduff@rdaplaw.net
**Cc:** johnv@bivonalaw.com



Dear Mr. Duff,

I am in receipt of your letter dated December 3, 2015. Regarding the $25,000 investment in our SRA Fund I LLC Series CC-3 (SA) made by Caldera Venture Partners, LLC with the underlying shares of Square, Inc. please be advised that the Fund is subject to a 180 day lock-up and therefore the Fund nor its Managers can do anything with those shares until after the lock-up expires which is approximately the 2nd week in May 2016.

The underlying share position in Square, Inc. has been adjusted for a 10-1 split therefore they are entitled to 1,250 shares of Square, Inc. with a per share price of $20.

Please let me know if you require any additional information and as it gets closer to the expiration date we will be in further contact with you.

Thank you.

Susan M. Diamond
Chief Compliance Officer
Saddle River Advisors LLC

**Enclosure 8**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:14-cv-03900 |
| | ) | |
| v. | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| NEAL V. GOYAL, CALDERA | ) | Magistrate Judge Jeffery Cole |
| ADVISORS, LLC, and BLUE HORIZON | ) | |
| ASSET MANAGEMENT, LLC | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| CALDERA INVESTMENT GROUP, INC. | ) | |
| | ) | |
| Relief Defendant. | ) | |
| | ) | |

**RECEIVER'S MOTION FOR COURT APPROVAL OF THE SALE AND**
**LIQUIDATION OF PRIVATE EQUITY INVESTMENTS**

Kevin B. Duff, as the receiver ("Receiver") for Defendants Neal V. Goyal, Caldera

Advisors, LLC, Blue Horizon Asset Management, LLC, and the recoverable assets of Relief

Defendant Caldera Investment Group, Inc. (collectively "Receivership Defendants"), and

pursuant to the powers vested in him by the Order of this Court entered on June 6, 2014,

respectfully moves this Court to issue an order approving the sale and liquidation of private

equity investments (proposed order attached hereto as Exhibit A.)  In Support of his Motion, the

Receiver states as follows:

1.      This case arises from a long-running fraud perpetrated by Defendant Neal V.

Goyal who, since 2006, raised more than $11.4 million from at least 35 persons who believed

they were investing in one of four investment funds under Goyal's control.

**Enclosure 9**

2.      During this time, Goyal made four private equity investments on behalf of Caldera Venture Partners, LLC. These included a $50,000 investment in Dryv, LLC and a $25,000 investment in Square, Inc.

3.      Caldera Venture Partners is not a named defendant in this action. On December 2, 2015, pursuant to an agreement reached with its members, all assets of Caldera Venture Partners – which includes the equity investments that are the subject of this Motion – were conveyed by an assignment to the Receivership Estate.

## Investment in Dryv, LLC

4.      On April 1, 2014, Dryv and Caldera Venture Partners entered into a Convertible Note Purchase Agreement. Neal Goyal signed the agreement as a "Co-Managing Partner."

5.      On May 7, 2014, a Convertible Promissory Note was executed in the amount of $50,000 payable to Caldera Venture Partners, and originally due on April 15, 2016.

6.      Earlier in the Receivership, the Receiver contacted the managers of Dryv to determine the status of the Promissory Note and liquidity of the investment.

7.      At the request of the managers of Dryv, the Receiver approved an extension of the maturity date to July 15, 2016 to enable the company to pursue additional financing. The company secured additional financing and on June 2, 2016, the Promissory Note converted to shares of preferred stock.

8.      The Receiver was contacted by an existing investor in Dryv who expressed an interest to purchase the Receivership Estate's investment. As a result, following communications with counsel for the SEC, the Receiver negotiated an arms-length purchase price of $12,500 for the Receivership Estate's investment in Dryv. The parties then negotiated

written terms and are prepared to execute an Assignment and Assumption Agreement subject to the Court's approval of the Receivership Estate's investment in Dryv.

## **Investment in Square, Inc.**

9.      On February 24, 2014, Caldera Venture Partners invested $25,000 in Square, Inc. and received a Series membership and 125 shares of Square, Inc. stock at a price of $200 per share.

10.     Earlier in the Receivership, the Receiver contacted Square to determine the value of the investment and options for liquidation.

11.     Thereafter, Square issued an initial public offering and the Receivership Estate's stock underwent a 10-1 split.  Accordingly, Caldera Venture Partners now holds 1,250 shares, with a stock price of $20 per share.  These shares were subject to a 180-day lockup period that expired in mid-May 2016.

12.     As of close of business on May 27, 2016, Square's stock price was $9.63.

## **Basis for Relief**

13.     On June 6, 2014, this Court appointed Kevin B. Duff as Receiver.  (Order Appointing Receiver attached hereto as Exhibit B.)

14.     Under the Order Appointing Receiver, the Receiver has the authority in equity, as well as under 28 U.S.C. §§ 754, 959, and 1692 and Fed. R. Civ. Pro. 66, and was given broad powers to investigate and safeguard the assets of the Receivership Defendants.

15.     Specifically, Paragraph 8 (G) of the Order Appointing Receiver authorizes the Receiver to "take control of, conserve, and liquidate any and all securities or commodities, owned by or for the benefit of the Receivership Estate, as the Receiver deems advisable or necessary."  (*Id.* at Para. 8 (G).)

16.     The Receiver seeks Court approval on the sale and liquidation of the Receivership Estate's investment in Dryv. This sale will eliminate the risk of the investment losing value or becoming difficult to liquidate and therefore, the Receiver believes selling at this time is reasonable and appropriate.

17.     The Receiver also seeks Court approval to liquidate the 1,250 shares of Square, Inc. stock as soon as practicable.  Liquidating at this time reduces risk associated with liquidity and loss of value that is inherent in the venture capital marketplace.  It would not be appropriate to speculate on this investment and therefore, it is reasonable and appropriate to liquidate at this time.

18.     The Receiver further believes selling the Receivership Estate's investment in Dryv and liquidating the Square shares of stock are both in the best interests of the efficient and economical administration of this Receivership.

WHEREFORE, the Receiver respectfully respects that this Court grant this Motion and enter an Order Approving the Sale of the Receivership Estate's investment in Dryv, LLC to the identified buyer for a price of $12,500 and the Liquidation of the Square, Inc. Stock at the highest price that can be achieved by the Receiver as soon as reasonably practical.

Dated:  June 7, 2016

Respectfully submitted,

Kevin B. Duff, Receiver

By:     /s/ Nicole Mirjanich

Daniel S. Kaplan
Nicole Mirjanich
Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax     (312) 733-3952
dkaplan@rdaplaw.net
nm@rdaplaw.net

# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 1:14-cv-03900** |
| **v.** | ) ) | **Hon. Rebecca R. Pallmeyer** |
| **NEAL V. GOYAL, CALDERA ADVISORS, LLC, and BLUE HORIZON ASSET MANAGEMENT, LLC** | ) ) ) ) | **Magistrate Judge Jeffery Cole** |
| **Defendants,** | ) ) | |
| **and** | ) ) | |
| **CALDERA INVESTMENT GROUP, INC.** | ) ) ) | |
| **Relief Defendant.** | ) ) | |

**ORDER APPROVING RECEIVER'S MOTION FOR COURT APPROVAL
OF THE SALE AND LIQUIDATION OF PRIVATE EQUITY INVESTMENTS**

The Court, after due notice has been given, and having conducted a hearing on the

Receiver's Motion for Court Approval of the Sale and Liquidation of Private Equity Investments,

being fully advised of the premises and for good cause shown, HEREBY ORDERS:

1. The Receiver's Motion is granted.

2. The Court approves the sale of the Receivership Estate's investment in Dryv, LLC to

    the identified buyer for a price of $12,500.

3. The Court approves the liquidation of the Square, Inc. shares of stock by the

    Receiver at the market price as soon as reasonably practical.

Entered:

_____
Honorable Rebecca R. Pallmeyer

Date: _____

# Exhibit B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

_____

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
|  | ) | Civil Action No. 1:14-cv-03900 |
| Plaintiff, | ) | |
| v. | ) | |
|  | ) | Hon. Judge Rebecca R. Pallmeyer |
| NEAL V. GOYAL, CALDERA ADVISORS, LLC, and BLUE HORIZON ASSET MANAGEMENT, LLC | ) ) ) | |
|  | ) | |
| Defendants, | ) | |
| and | ) | |
|  | ) | |
| CALDERA INVESTMENT GROUP, INC. | ) | |
|  | ) | |
| Relief Defendant. | ) | |

_____

## ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S.

Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a

receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the

appointment of a receiver in this action is necessary and appropriate for the purposes of

marshaling and preserving all assets of the Defendants and those assets of the Relief Defendant

that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held

in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants;

and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively,

the "Recoverable Assets"); and,

**WHEREAS** this Court has subject matter jurisdiction over this action and personal

1

jurisdiction over the Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants and Relief Defendant: Neal V. Goyal, Caldera Advisors, LLC, Blue Horizon Asset Management, LLC and Relief Defendant Caldera Investment Group, LLC (collectively, the "Receivership Defendants").

2.     Until further Order of this Court, Kevin B. Duff, of the firm Rachlis Duff Adler Peel & Kaplan, LLC Duff is hereby appointed to serve without bond as the federal equity receiver (the "Receiver") for the estates of the Receivership Defendants.

## I. Asset Freeze

3.     Except as otherwise specified herein, all assets of the Defendants and Relief Defendants (collectively, "Receivership Assets") are frozen until further order of this Court. Accordingly, all persons, institutions and entities with direct or indirect control over any Receivership Assets other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such Receivership Assets.  This freeze shall include, but not be limited to, Receivership Assets that are on deposit with any financial institutions or other entities, including, but not limited to, banks, brokerage firms and mutual funds.  In particular, the Court enjoins any disbursement of proceeds by the Defendants, their agents, representatives, employees and officers and all persons acting in concert or participation with them, whatever business name they may operate under, derived from the sales of interests in Receivership Defendants, or any of them.

2

## II. **General Powers and Duties of Receiver**

4.        The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners of the Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a federal equity receiver, including but not limited to those powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, Fed. R. Civ. P. 66, and this Order.

5.        The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted in writing by the Receiver.  This order, however, does not dismiss Defendant Goyal's personal attorneys.

6.        The Receiver may assume and control the operation of any of the Receivership Defendants and may pursue and preserve all of their claims or interests.  The Receiver may continue and conduct the business, if any, of the Receivership Defendants in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all.

7.        No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act for or on behalf of any of those Receivership Defendants, unless expressly authorized, in writing, by the Receiver.

8.        Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly (the foregoing collectively may be referred to as "Receivership Assets" or the "Receivership Estates");

B. To take exclusive custody, control and possession of all Receivership Assets and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Assets and records relevant thereto;

C. To manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Assets, pending further Order of this Court;

D. To take possession of all bank and investment accounts or securities accounts owned by or associated with the Receivership Estates or Receivership Defendants, whether in the name of the Receivership Defendants or their subsidiaries or affiliates, wherever located (collectively, the "Accounts"). The Receiver shall have the authority to open, close, transfer and change all bank, investment and securities Accounts.

E. To sign checks on, otherwise withdraw or transfer, trade or otherwise control the funds and/or securities contained in any Accounts owned or controlled by, or in the name of, the Receivership Defendants and Receivership Estate. The Receiver shall also be authorized to add or delete signers, including those currently authorized on the Account(s). The representatives of the Receiver initially designated with authority over these accounts shall be Kevin B. Duff.

F. To open and maintain new bank accounts in the name of the Receiver for the use in administering and preservation of the Receivership Estate, using the Federal Employer Identification Number of the Receivership Estate, at the Receiver's discretion.

G. To take control of, conserve, and liquidate any and all securities or commodities, owned by or for the benefit of the Receivership Estate, as the Receiver deems advisable or necessary.

H. To use Receivership Assets for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging

4

his duties as Receiver;

I.     To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, members, trustees, and agents of the Receivership Defendants;

J.     To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

K.     To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

L.     To issue subpoenas to compel testimony of persons or production of records consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provision of Fed. R. Civ. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order;

M.     To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

N.     To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates;

O.     To prepare a full accounting with regard to the activities of the Receivership Defendants for the period January 1, 2006 through the date of this Order;

P.     To take such other action as may be approved by this Court.

### III.  Defendants' Duties to Receiver

9.    The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, members, general and limited partners, trustees, attorneys, accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve, provide immediate access, and turn over to

the Receiver forthwith all paper and electronic information of, and/or relating to, the
Receivership Defendants and/or all Receivership Assets; such information shall include but not
be limited to books, records, documents, accounts, access codes, security codes, passwords, safe
deposit keys, combinations, and all other instruments, papers, and electronic data. This does not,
however, include documents and files of Defendant Goyal's personal attorneys that are protected
by the work-product doctrine and attorney-client privilege.

10.     Within ten (10) days of the entry of this Order, the Receivership Defendants shall
file with the Court and serve upon the Receiver and the Commission a sworn statement, listing:
(a) the identity, location and estimated value of all Receivership Property; (b) all employees (and
job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of
the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known
creditors of the Receivership Defendants. Defendant Goyal shall retain responsibility, and the
Receiver shall assume no responsibility, for preparing and filing Goyal's personal income tax
returns.

11.     Within thirty (30) days of the entry of this Order, the Receivership Defendants
shall file with the Court and serve upon the Receiver and the Commission a sworn statement and
accounting, with complete documentation, covering the period from January 1, 2006 to the
present:

    A.  Of all Receivership Property, wherever located, held by or in the name of
      the Receivership Defendants, or in which any of them, directly or
      indirectly, has or had any beneficial interest, or over which any of them
      maintained or maintains and/or exercised or exercises control, including,
      but not limited to: (a) all securities, investments, funds, real estate,
      automobiles, jewelry and other assets, stating the location of each; and (b)
      any and all accounts, including all funds held in such accounts, with any
      bank, brokerage or other financial institution held by, in the name of, or
      for the benefit of any of them, directly or indirectly, or over which any of
      them maintained or maintains and/or exercised or exercises any direct or

indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B.    Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.    Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.    Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.    Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.    Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.    Of all transfers of assets made by any of them.

12.    Within ten (10) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for 2006 through 2013 with all relevant and necessary underlying documentation. The Receivership Defendants shall also deliver all state licenses, tax identification numbers, and all other relevant tax information.

13.    The individual Receivership Defendants named in the Complaint and the Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, members, shareholders, employees, accountants, debtors, creditors, managers and general and

limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make his discovery requests in accordance with the Federal Rules of Civil Procedure. Nothing in this Order shall operate as or effectuate a waiver of the attorney-client privilege regarding communications between Defendant Goyal and his personal attorneys, and Goyal's personal attorneys shall not be compelled by this Order to divulge information that would otherwise be protected by the attorney-client privilege.

14. The Receivership Defendants are required to fully cooperate with and assist the Receiver in all respects in fulfilling his duties and obligations. As such, the Receivership Defendants must respond promptly and truthfully to all requests for information and documents from the Receiver.

### IV. Access to Books, Records and Accounts

15. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendants. All persons and entities receiving notice of this Order by personal service, facsimile or other electronic transmission, or otherwise, having control, custody or possession of any Receivership Assets are hereby directed to turn such property, including but not limited to all Accounts, over to the Receiver.

16. The Receivership Defendants, as well as their agents, servants, employees,

attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

17.     All banks, brokerage and securities firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants that receive actual notice of this Order by personal service, email, facsimile transmission, or otherwise shall:

    A.    Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;

    B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

    D.    Cooperate expeditiously in providing access to accounts, assets and funds, as well as information as well as transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. Access to Real and Personal Property

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and

accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, automobiles, and equipment.

19.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this Order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

20.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the real property and premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.     The Receiver is authorized to open all mail, other than mail addressed to Defendant Goyal's spouse, directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.     Upon the request of the Receiver, the U.S. Marshals Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estates.  In addition, the Receiver is authorized to request similar

assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

## VI. <u>Notice to Third Parties</u>

23.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, members, and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone

other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Defendants, mail addressed to Defendant Goyal's spouse, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee or addressee's attorney by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

27.     Subject to payment for services provided, any entity or utility furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

28.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees, or trustees, and to take any and all appropriate steps in connection with such policies.

## VII.  Injunction Against Interference with Receiver

29.     The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile transmission, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express

written agreement of the Receiver, which would:

      A.      Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

      B.      Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

      C.      Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against any Receivership Assets or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Assets; or,

      D.      Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.      The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

31.      The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VIII.  Stay of Litigation

32.      As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy

13

proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature filed against or seeking relief from: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

34. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to any cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled until the earlier of two years following entry of this Order or such time as the Receiver has filed his accounting with this Court.

## IX. **Managing Assets**

35. For each of the Receivership Estates, the Receiver shall establish one or more accounts at a federally insured bank to receive and hold all cash and cash equivalent Receivership Assets (the "Receivership Funds").

36. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of **[Name of Receivership Defendant]**" together with the name of the action, or a title to that effect.

37. The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Assets, other than real estate, in the ordinary course of

14

business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

38.     Subject to Paragraph 39, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estates, and with due regard to the realization of the true and proper value of such real property.

39.     The Receiver is authorized to sell, and transfer clear title to, all real property in the Receivership Estates after first obtaining Court authorization.

40.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.     The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions.  The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local

tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2].

## X. <u>Investigate and Prosecute Claims</u>

42. Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Assets.

43. Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estates, as the Receiver deems necessary and appropriate. As part of his duty to investigate and report to this Court pursuant to Section XV, the Receiver is authorized to conduct a full accounting with regard to the activities of the Receivership Defendants. The Receiver shall advise the Court as to the anticipated scope and nature of the accounting in his initial report to this Court. The Receiver also may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other

16

relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to counsel for the Commission before commencing investigations and/or actions.

44.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

45.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

### XI.  Repatriation of Foreign Assets and Documents

46.     The Receiver shall take such steps as are necessary to repatriate to the territory of the United States of America all Receivership Assets that are located in a country other than the United States and are held by or for Defendants or are under Defendants' direct or indirect control, jointly, severally, or individually.

47.     To the extent he has not already done so, within three (3) business days following entry of this Order, Neal V. Goyal shall provide the Receiver and the Commission with a full accounting of all assets, including Receivership Assets, that are located outside of the United States that have been transferred to the United States and are held by or for any Defendant or are under any Defendants' direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic financial institution or other entity holding the assets, along with the account numbers and balances.

48.     Neal V. Goyal shall take all steps necessary and appropriate to prevent any transfer, disposition, or dissipation whatsoever of any assets, including Receivership Assets, located outside the United States.

17

49.     To the extent he has not already done so, within three (3) business days following entry of this Order, Neal V. Goyal shall provide the Receiver and the Commission access to Defendants' records and documents held by financial institutions or other entities outside the United States, by signing and delivering to the Receiver and Commission's counsel a Consent to Release of Financial Records.

## XII.  Interference with Repatriation

50.     **IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, including Receivership Assets, or in the hindrance of the repatriation required by the preceding Section XI of this Order, including but not limited to:

A.      Sending any statement, letter, facsimile, email or wire transmission, or telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that the assets have been fully repatriated pursuant to the preceding Section XI of this Order; and

B.      Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order or the fact that repatriation is required pursuant to a Court Order, until such time as assets, including Receivership Assets, have been fully repatriated pursuant the preceding Section XI of this Order.

## XIII.  Bankruptcy Filing

51.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants, or any of them.  If a Receivership Defendant is placed in Chapter 11 bankruptcy

proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor-in-possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor-in-possession under the Bankruptcy Code to the exclusion of any other person or entity.

52.     The provisions of Section VII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XIV.  Liability of Receiver

53.     The Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

54.     The Receiver and his attorneys and agents, acting within the scope of such agency (collectively, "Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their actions or omissions except upon an express finding by this Court that they acted as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

55.     No action shall be filed or proceeding commenced against the Receiver or the Retained Personnel arising out of or in any way related to this receivership or their duties or work performed in connection with the receivership without obtaining an order from the Court based upon a showing of good cause.

56.     This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

57.     In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor receiver. The Receiver shall then follow such instructions as the Court may provide.

## XV.  Insurance

58.     Given the urgency to appoint a Receiver, the Court recognizes that the Receiver accepts this appointment without time for independent verification that appropriate insurance is in place on the property or that appropriate liability or other insurance is in place to protect the Receivership Assets and the Receivership Estate. Accordingly, the Court acknowledges that the Receiver has no responsibility or liability until such time as he can confirm that such insurance is in place or acquire the appropriate insurance. The Receiver shall make it a priority to verify or obtain insurance coverage immediately upon this Order Appointing Receiver being entered; however, the Plaintiff, Receivership Defendants, and Court acknowledge there may be a gap of time before such insurance may be in place to properly protect the assets of the estate and any employees of the estate, and that the Receiver has no responsibility or liability until such time as he/it has notified the Court by filing a notice that insurance is in place.

59.     Neal V. Goyal is ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies. This includes all applications, policies, riders, correspondence, endorsements, claims and other information. Neal V. Goyal is ordered:  (1) to advise the insurance agent(s) of this Order in writing, (2) designate all authority over the policies to the Receiver, and (3) take no action with regard to terminating or modifying existing insurance policies.

60.     Any insurance broker, agent, carrier, or underwriter is specifically ordered by the Court to cooperate with the Receiver by timely furnishing the following:  (1) copies of all insurance policies including any riders, endorsements and applications with respect to policies

20

related to the Receivership Estates, (2) loss history for five consecutive years or for as long as insurance has been in force if less than five years, (3) premium payment history including current status, and (4) any correspondence with insurance agents, brokers and companies. Policies shall be endorsed by the Defendants naming the Receiver as Named Insured and Loss Payee effective the date of this Order as appropriate to the type of coverage, and evidence of this policy endorsement shall be promptly supplied to the Receiver.

61. The Receiver is hereby authorized to engage insurance brokers and consultants as necessary to properly insure the Receivership Assets.

## XVI. **Recommendations and Reports**

62. The Receiver is authorized and empowered, in the Receiver's sole discretion, to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Assets (the "Liquidation Plan").

63. Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

64. Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value (if known), and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

65. The Quarterly Status Report shall contain the following:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the

21

estate;

C.     A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.     A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.     A description of liquidated and unliquidated claims held by each Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.     A list of all known creditors with their addresses and the amounts of their claims;

G.     The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

66.     On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

## XVII.  Fees, Expenses and Accountings

67.     Subject to Paragraphs 68 – 74 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

68.     As provided in Section II above, and subject to Paragraph 59 below, the Receiver

22

is authorized to engage persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.

69.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

70.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

71.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

72.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

73.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

23

     B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

74.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED, this 6th day of June, 2014, at Chicago, Illinois**

**Rebecca R. Pallmeyer**
**UNITED STATES DISTRICT JUDGE**

24

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

_____

| | |
|---|---|
| **UNITED STATES SECURITIES** ) | |
| **AND EXCHANGE COMMISSION,** ) | |
| ) | **Civil Action No. 1:14-cv-03900** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Hon. Rebecca R. Pallmeyer** |
| **NEAL V. GOYAL, CALDERA** ) | |
| **ADVISORS, LLC, and BLUE HORIZON** ) | **Magistrate Judge Jeffery Cole** |
| **ASSET MANAGEMENT, LLC** ) | |
| ) | |
| **Defendants,** ) | |
| **and** ) | |
| ) | |
| **CALDERA INVESTMENT GROUP, INC.** ) | |
| ) | |
| **Relief Defendant.** ) | |

_____)

### NOTICE OF MOTION and CERTIFICATE OF SERVICE

TO:     See attached Service List

Please take notice that on Wednesday, June 15, 2016, at 8:45 a.m., the undersigned will appear before the Honorable Rebecca R. Pallmeyer, or any judge sitting in her stead, in Courtroom 2144, and present **Receiver's Motion for Court Approval of the Sale and Liquidation of Private Equity Investments.**

Dated:  June 7, 2016                                Kevin B. Duff, Receiver

By:      /s/ Nicole Mirjanich

Daniel S. Kaplan
Nicole Mirjanich
Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax      (312) 733-3952
dkaplan@rdaplaw.net
nm@rdaplaw.net

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2016, I electronically filed the foregoing **Notice** and **Receiver's Motion for Court Approval of the Sale and Liquidation of Private Equity Investments** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the Notice and the Motion were served via the CM/ECF system upon counsel for the parties as identified on the attached Service List.

  /s/ Nicole Mirjanich

Daniel S. Kaplan
Nicole Mirjanich
Rachlis Duff Adler Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3390
Fax     (312) 733-3952
dkaplan@rdaplaw.net
nm@rdaplaw.net

*SEC v. NEAL V. GOYAL, et al.*
**Case No. 14-cv-3900**

**<u>SERVICE LIST</u>**

Benjamin J. Hanauer
Richard Gregory Stoltz
Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL  60604
312-353-8642
312-353-7398 (fax)
hanauerb@sec.gov
stoltzr@sec.gov

*Attorneys for Plaintiff Securities and Exchange Commission*

Howard J. Rosenburg
James L. Kopecky
Kopecky, Schumacher & Bleakley, P.C.
203 North LaSalle Street
Suite 1620
Chicago, IL 60601
312-527-3966
312-268-5031 (fax)
hrosenburg@ksblegal.com
jkopecky@ksblegal.com

*Attorneys for Defendants Neal V. Goyal, Caldera Advisors, LLC,*
*Blue Horizon Asset Management, LLC, and*
*Relief Defendant Caldera Investment Group, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:14-cv-03900 |
| v. | ) ) | Hon. Rebecca R. Pallmeyer |
| NEAL V. GOYAL, CALDERA ADVISORS, LLC, and BLUE HORIZON ASSET MANAGEMENT, LLC | ) ) ) ) | Magistrate Judge Jeffery Cole |
| Defendants, and | ) ) ) | |
| CALDERA INVESTMENT GROUP, INC. | ) ) ) | |
| Relief Defendant. | ) | |

**ORDER APPROVING RECEIVER'S MOTION FOR COURT APPROVAL
OF THE SALE AND LIQUIDATION OF PRIVATE EQUITY INVESTMENTS**

The Court, after due notice has been given, and having conducted a hearing on the

Receiver's Motion for Court Approval of the Sale and Liquidation of Private Equity Investments,

being fully advised of the premises and for good cause shown, HEREBY ORDERS:

1. The Receiver's Motion is granted.

2. The Court approves the sale of the Receivership Estate's investment in Dryv, LLC to

   the identified buyer for a price of $12,500.

3. The Court approves the liquidation of the Square, Inc. shares of stock by the

   Receiver at the market price as soon as reasonably practical.

Entered:

Honorable Rebecca R. Pallmeyer

Date: _____June 15, 2016_____

**Enclosure 10**

**From:** Kevin Duff kduff@rdaplaw.net
**Subject:** Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC
**Date:** June 15, 2016 at 9:39 AM
**To:** Diamond, Sue sdiamond@saddleriveradv.com
**Cc:** Stoltz, Richard StoltzR@SEC.GOV

Sue,

This morning, the Court approved liquidation of the Receivership's Square shares.  Please liquidate all 1,250 shares as soon as possible.  The check should be made out to: "Estate of Caldera Advisors, LLC".  Send the payment to me using the contact information below.

Thank you,

Kevin


Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

> On Jun 9, 2016, at 2:34 PM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:
>
> Thank you for keeping informed as to your progress.
> S
>
> **From:** Kevin Duff [mailto:kduff@rdaplaw.net]
> **Sent:** Thursday, June 09, 2016 3:32 PM
> **To:** Diamond, Sue
> **Cc:** Stoltz, Richard
> **Subject:** Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC
> **Importance:** High
>
> Sue,
>
> I am following up to let you know that we have filed a motion for approval of the sale of the Square shares.  The motion is being presented to the Court on Wednesday, June 15. Assuming it is approved, I intend to sell the shares as soon as possible.  I will follow up with you after the hearing.
>
> Kevin
>
>
> Kevin B. Duff, Receiver
> Caldera Advisors, LLC and
> Blue Horizon Asset Management, LLC
> c/o Rachlis Duff Adler Peel & Kaplan, LLC
> 542 S. Dearborn Street, Suite 900
> Chicago, IL 60605
> 312-733-3390 (o)

**Enclosure 11**

On May 27, 2016, at 11:31 AM, Diamond, Sue
<sdiamond@saddleriveradv.com> wrote:

Gentlemen:

The 180-day lockup period has expired for Square, Inc. and the Fund will begin either distributing the shares or selling the shares next week. The decision to either distribute or sell is up to the Manager of the Fund. Caldera Venture Partners, LLC originally purchased 125 underlying shares of Square, Inc. at a cost of $200 per underlying share. After the 10-1 split they had 1,250 underlying shares of Square, Inc. with a $20 per share price.

Please advise us how we should proceed with the liquidation of the Square, Inc. shares.

Thank you.
Susan M. Diamond
on behalf of John V. Bivona, Manager
Saddle River Advisors LLC

**From:** Kevin Duff [mailto:kduff@rdaplaw.net]
**Sent:** Monday, May 16, 2016 9:54 AM
**To:** Diamond, Sue
**Subject:** Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC

Sue,

I still have not received anything from you. Please forward the information I requested in December as soon as possible.

Please also send me without delay all information needed so that I can determine how and when to liquidate the shares.

Thank you,

Kevin


Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

On Jan 14, 2016, at 10:54 AM, Diamond, Sue

<sdiamond@saddleriveradv.com> wrote:

As soon as I receive the documentation I will forward same to you.

S

**From:** Kevin Duff [mailto:kduff@rdaplaw.net]
**Sent:** Tuesday, January 12, 2016 11:45 AM
**To:** Diamond, Sue
**Subject:** Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC

Ms. Diamond,

I am following up on our exchange below.

Thank you,

Kevin

> On Dec 18, 2015, at 2:18 PM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:
>
> Will provide them to you after the new year as I will be on holiday beginning Monday December 21st
>
> Susan M. Diamond
>
> Sent from my T-Mobile 4G LTE Device
>
> -------- Original message --------
> From: Kevin Duff <kduff@rdaplaw.net>
> Date:12/18/2015 3:11 PM (GMT-05:00)
> To: "Diamond, Sue" <sdiamond@saddleriveradv.com>
> Cc: johnv@bivonalaw.com, Ania Watychowicz <aw@rdaplaw.net>
> Subject: Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC
>
> Ms. Diamond,
>
> Thank you for your email and the information. I would appreciate it if you would send me the formal documentation that describes the lock-up period, the

10-1 split, and the per share price. PDFs attached to an email is fine.

Regards,

Kevin


Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

> On Dec 17, 2015, at 11:56 AM,
> Diamond, Sue
> <sdiamond@saddleriveradv.com>
> wrote:
>
> Dear Mr. Duff,
>
> I am in receipt of your letter dated
> December 3, 2015. Regarding the
> $25,000 investment in our SRA Fund I
> LLC Series CC-3 (SA) made by
> Caldera Venture Partners, LLC with the
> underlying shares of Square, Inc.
> please be advised that the Fund is
> subject to a 180 day lock-up and
> therefore the Fund nor its Managers
> can do anything with those shares until
> after the lock-up expires which is
> approximately the 2nd week in May
> 2016.
>
> The underlying share position in
> Square, Inc. has been adjusted for a
> 10-1 split therefore they are entitled to
> 1,250 shares of Square, Inc. with a per
> share price of $20.
>
> Please let me know if you require any
> additional information and as it gets
> closer to the expiration date we will be
> in further contact with you.

Thank you.

Susan M. Diamond
Chief Compliance Officer
Saddle River Advisors LLC

From: **Diamond, Sue** sdiamond@saddleriveradv.com
Subject: RE: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC
Date: August 31, 2016 at 7:38 AM
To: Kevin Duff kduff@rdaplaw.net
Cc: Stoltz, Richard StoltzR@SEC.GOV, Vito Fredella vfredella@saddleriveradv.com, Nicole Mirjanich nm@rdaplaw.net

Pursuant to my email to you yesterday, please find attached a copy of the latest statement from American Stock Transfer reflecting the shares for Square, Inc. If you have any questions, please do not hesitate to contact me.

Thank you,

s

From: Kevin Duff [mailto:kduff@rdaplaw.net]
Sent: Tuesday, August 30, 2016 6:04 PM
To: Diamond, Sue
Cc: Stoltz, Richard; Vito Fredella; Nicole Mirjanich
Subject: Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC

I look forward to receiving the statement, which I need to set up the brokerage account.

Kevin

On Aug 30, 2016, at 4:16 PM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:

Caldera holds 1,250 shares -- under separate email I will send you a copy of the latest statement from American Stock Transfer

s

From: Kevin Duff [mailto:kduff@rdaplaw.net]
Sent: Tuesday, August 30, 2016 4:11 PM
To: Diamond, Sue
Cc: Stoltz, Richard; Vito Fredella; Nicole Mirjanich
Subject: Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC

Sue,

To faciliate my setting up a brokerage account, please send me a statement that reflects the number of shares and how they are currently being held.

Thank you,

Kevin

On Aug 30, 2016, at 12:10 PM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:

Unfortunately, we are unable to sell the Square, Inc. shares. You will have to open a brokerage account and we will DWAC the shares to you and you can sell them there. Please let me know when you have opened a brokerage account and I will send you another email with the information that we need in order to have the instructions stamped with a Medallion Guarantee and then sent to American Stock Transfer to be sent to the brokerage account via the DWAC system. American Stock Transfer charges $100 to process a DWAC.

Thank you,

s

From: Kevin Duff [mailto:kduff@rdaplaw.net]
Sent: Friday, August 26, 2016 10:35 AM
To: Diamond, Sue
Cc: Stoltz, Richard; Vito Fredella; Nicole Mirjanich
Subject: Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC

Sue,

I have not heard from you and have not received the proceeds from the sale of Square shares that belong to the Receivership. I plan to report to the Court where matters stand as to Square. Please advise without further delay.

Kevin

On Aug 2, 2016, at 3:41 PM, Kevin Duff <kduff@rdaplaw.net> wrote:

Sue,

Any update?

Thank you,

Kevin

Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

**Enclosure 12**

On Jul 21, 2016, at 3:02 PM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:

Sorry that it took so long but I just got back from a long, 3 weeks, vacation and playing catch-up!
s

**From:** Kevin Duff [mailto:kduff@rdaplaw.net]
**Sent:** Thursday, July 21, 2016 4:02 PM
**To:** Diamond, Sue
**Cc:** Stoltz, Richard; Vito Fredella; Nicole Mirjanich
**Subject:** Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC

Thank you for the update.

Sent from my iPhone

On Jul 21, 2016, at 2:55 PM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:

> Kevin,
>
> We have not distributed the Square shares as of this writing. We have been working with American Stock Transfer the transfer agent for Square, Inc. and are hopeful that the distributions will begin next week and we will sell the appropriate number of Square shares at the transfer agent and send you the funds.
>
> Thank you.
> S

**From:** Kevin Duff [mailto:kduff@rdaplaw.net]
**Sent:** Tuesday, July 19, 2016 5:04 PM
**To:** Diamond, Sue
**Cc:** Stoltz, Richard
**Subject:** Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC

Sue,

I am following up. I have not heard from you and have not received the funds from the sale of these shares.

Kevin

Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

> On Jun 29, 2016, at 10:06 PM, Kevin Duff <kduff@rdaplaw.net> wrote:
>
> Sue,
>
> I have not heard from you. Nor have I received the funds. Please advise.
>
> Kevin
>
>
>
> Kevin B. Duff, Receiver
> Caldera Advisors, LLC and
> Blue Horizon Asset Management, LLC
> c/o Rachlis Duff Adler Peel & Kaplan, LLC
> 542 S. Dearborn Street, Suite 900
> Chicago, IL 60605
> 312-733-3390 (o)
>
> > On Jun 17, 2016, at 10:23 AM, Kevin Duff <kduff@rdaplaw.net> wrote:
> >
> > Sue,
> >
> > A copy of the Court's Order approving the sale of shares is attached. Please let me know how soon I can expect to receive the funds.
> >
> > Thank you,
> >
> > Kevin
> > <Order 6-15-16 re sale of private equity inv..pdf>
> >
> > > On Jun 15, 2016, at 9:52 AM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:
> > >
> > > Kevin,
> > >
> > > Once the shares are in our account at the transfer agent I will let you know. Could you please send me the court documents for our files.

Thanks!

s

Sue,

This morning, the Court approved liquidation of the Receivership's Square shares. Please liquidate all 1,250 shares as soon as possible. The check should be made out to: "Estate of Caldera Advisors, LLC". Send the payment to me using the contact information below.

Thank you,

Kevin


Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

> On Jun 9, 2016, at 2:34 PM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:
>
> Thank you for keeping informed as to your progress.
>
> s

**From:** Kevin Duff [mailto:kduff@rdaplaw.net]
**Sent:** Thursday, June 09, 2016 3:32 PM
**To:** Diamond, Sue
**Cc:** Stoltz, Richard
**Subject:** Re: Caldera Advisors, LLC & Blue Horizon Asset Management, LLC
**Importance:** High

Sue,

I am following up to let you know that we have filed a motion for approval of the sale of the Square shares. The motion is being presented to the Court on Wednesday, June 15. Assuming it is approved, I intend to sell the shares as soon as possible. I will follow up with you after the hearing.

Kevin


Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

> On May 27, 2016, at 11:31 AM, Diamond, Sue <sdiamond@saddleriveradv.com> wrote:
>
> Gentlemen:
>
> The 180-day lockup period has expired for Square, Inc. and the Fund will begin either distributing the shares or selling the shares next week. The decision to either distribute or sell is up to the Manager of the Fund. Caldera Venture Partners, LLC originally purchased 125 underlying shares of Square, Inc. at a cost of $200 per underlying share. After the 10-1 split they had 1,250 underlying shares of Square, Inc. with a $20 per share price.
>
> Please advise us how we should proceed with the liquidation of the Square, Inc. shares.
>
> Thank you,
> Susan M. Diamond

on behalf of John V. Bivona, Manager
Saddle River Advisors LLC

**From:** Kevin Duff [mailto:kduff@rdaplaw.net]
**Sent:** Monday, May 16, 2016 9:54 AM
**To:** Diamond, Sue
**Subject:** Re: Caldera Advisors, LLC & Blue
Horizon Asset Management, LLC

Sue,

I still have not received anything from you.
Please forward the information I requested
in December as soon as possible.

Please also send me without delay all
information needed so that I can determine
how and when to liquidate the shares.

Thank you,

Kevin


Kevin B. Duff, Receiver
Caldera Advisors, LLC and
Blue Horizon Asset Management, LLC
c/o Rachlis Duff Adler Peel & Kaplan,
LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
312-733-3390 (o)

> On Jan 14, 2016, at 10:54 AM,
> Diamond, Sue
> <sdiamond@saddleriverady.co
> m> wrote:
>
> As soon as I receive the
> documentation I will forward
> same to you.
>
> S
>
> **From:** Kevin Duff
> [mailto:kduff@rdaplaw.net]
> **Sent:** Tuesday, January 12, 2016
> 11:45 AM
> **To:** Diamond, Sue
> **Subject:** Re: Caldera Advisors,
> LLC & Blue Horizon Asset
> Management, LLC
>
> Ms. Diamond,
>
> I am following up on our
> exchange below.
>
> Thank you,
>
> Kevin
>
> > On Dec 18, 2015,
> > at 2:18 PM,
> > Diamond, Sue
> > <sdiamond@sadd
> > leriverady.com>
> > wrote:
> >
> > Will provide them
> > to you after the
> > new year as I will
> > be on holiday
> > beginning
> > Monday
> > December 21st
> >
> > Susan M.
> > Diamond
> >
> > Sent from my T-Mobile 4G LTE
> > Device
> >
> > -------- Original
> > message --------
> > From: Kevin Duff
> > <kduff@rdaplaw

net>
Date:12/18/2015
3:11 PM (GMT-
05:00)
To: "Diamond,
Sue"
<sdiamond@sadd
leriveradv.com>
Cc: johnv@bivon
alaw.com, Ania
Watychowicz
<aw@rdaplaw.net
>
Subject: Re:
Caldera Advisors,
LLC & Blue
Horizon Asset
Management,
LLC

Ms. Diamond,

Thank you for
your email and
the information.  I
would appreciate
it if you would
send me the
formal
documentation
that describes the
look-up period,
the 10-1 split, and
the per share
price.  PDFs
attached to an
email is fine.

Regards,

Kevin


Kevin B. Duff,
Receiver
Caldera Advisors,
LLC and
Blue Horizon
Asset
Management,
LLC
c/o Rachlis Duff
Adler Peel &
Kaplan, LLC
542 S. Dearborn
Street, Suite 900
Chicago, IL
60605
312-733-3390 (o)


On
Dec
17,
2015,
at
11:56
AM,
Diam
ond,
Sue
<sdia
mond
@sad
dleriv
eradv.
com>
wrote
:

Dear
Mr.
Duff,

I am
in
receip

t of your letter dated December 3, 2015. Regarding the $25,000 investment in our SRA Fund I LLC Series CC-3 (SA) made by Caldera Venture Partners, LLC with the underlying shares of Square, Inc. please be advised that the Fund is subject to a 180 day lock-up and therefore the Fund nor its Managers can do anything with those shares until after the lock-up expires which is approximately the 2nd week in May 2016.

The underlying share position in Squar

e, Inc. has been adjusted for a 10-1 split therefore they are entitled to 1,250 shares of Square, Inc. with a per share price of $20.

Please let me know if you require any additional information and as it gets closer to the expiration date we will be in further contact with you.

Thank you.

Susan M. Diamond
Chief Compliance Officer
Saddle River Advisors LLC



**DIRECT REGISTRATION BOOK-ENTRY ADVICE**

AMERICAN STOCK TRANSFER & TRUST CO., LLC
OPERATIONS CENTER
6201 15TH AVENUE
BROOKLYN, NY 11219
Phone: 800-937-5449
www.amstock.com

SQUARE INC - CLASS A COMMON

| STATEMENT DATE | 06/23/2016 |
| COMPANY NUMBER | 2060 |
| COMPANY NAME | SQUARE INC - CLASS A COMMON |
| CUSIP NUMBER | 852234103 |
| SHAREHOLDER'S ACCOUNT NUMBER | 0000916334 |

CLEAR SAILING GROUP IV LLC
ATTN JOHN V SYKORA
566 EAST CRESCENT AVENUE STE 201
UPPER SADDLE RIVER NJ 07458

### DIRECT REGISTRATION TRANSACTION INFORMATION

| TRANSACTION TYPE | BOOK SHARES ISSUED | BROKER DEALER PARTICIPANT NUMBER (DTC) | |
| --- | --- | --- | --- |
| NUMBER OF SHARES | 1,250.00 | REGISTRATION OF SHARES AT NUMBER PER ASTREF | |
| TRANSACTION NUMBER | 02/18/2016 | SHARES WILL BE ISSUED IN FULL OR IN PART, WHOLE OR FULL | |

### ACCOUNT SUMMARY

| CURRENT BALANCES | | |
| --- | --- | --- |
| TOTAL ISSUED ENTRY SHARES | 282,273,008 | |
| COMPANY LOSS NUMBER | 0.000 | |

| (table row) | X.XXX |
| (table row) | XXX,XXX,XXX |

This statement is your record of book-entry share delivery at American Stock Transfer & Trust Company, LLC ("AST"), the transfer agent for this issue.

Physical certificates may not be requested for this issue.

If you wish to open a brokerage account and transfer your shares you can do this through AST Investor Services, an affiliate of American Stock Transfer. AST Investor Services is a participant in the DRS profile system. To learn more, please visit www.amerinvestor.com or contact an AST Investor Services representative via email at customerservices@amerinvestor.com.

If you currently have a brokerage account and wish to transfer your book-entry shares to that account, the following options are available to you:

If your broker is a participant in the DRS Profile system, your broker may request your shares from AST utilizing the automated Profile system. You must provide and share with the Company's CUSIP number, your shareholder account number, your taxpayer identification number, and the name in which the shares are registered. You must also provide your broker with the number of shares that you wish to transfer. Please be advised that your broker may request that you send him/her a copy of this Direct Registration Statement.

If your broker is not a participant in the DRS Profile system, please write to AST at the address listed above, instructing AST to credit your brokerage account. You must include your AST account number, the name of your brokerage institution, your brokerage account number and the number of shares that you wish to transfer. Your letter of instruction must be signed by all owners listed in the account registration and the signatures must be guaranteed by a bank, broker or other financial institution that is a member of a Securities Transfer Association-approved medallion program such as STAMP, SEMP or MSP. A wrong speed processing if you would include a copy of this Direct Registration Statement. Please coordinate with your broker to ensure that they will accept share delivery via the Direct Registration system.

The Issuer will furnish, without charge, to each holder who so requests, the powers, designations, preferences and relative participating, optional or other special rights of each class of security or series thereof, and the qualifications, limitations or restrictions of such preferences and/or rights.



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:14-cv-03900 |
| v. | ) ) | |
| NEAL V. GOYAL, CALDERA ADVISORS, LLC, and BLUE HORIZON ASSET MANAGEMENT, LLC | ) ) ) ) | Hon. Judge Rebecca R. Pallmeyer |
| Defendants, | ) ) | |
| and | ) ) | |
| CALDERA INVESTMENT GROUP, INC. | ) ) | |
| Relief Defendant. | ) | |

**RS**

CV 14 80 182MISC

## ORDER APPOINTING RECEIVER

**WHEREAS** this matter has come before this Court upon motion of the Plaintiff U.S. Securities and Exchange Commission ("SEC", "Commission" or "Plaintiff") to appoint a receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Defendants and those assets of the Relief Defendant that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets"); and,

**WHEREAS** this Court has subject matter jurisdiction over this action and personal

1

**Enclosure 13**

jurisdiction over the Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

    1.     This Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following Defendants and Relief Defendant: Neal V. Goyal, Caldera Advisors, LLC, Blue Horizon Asset Management, LLC and Relief Defendant Caldera Investment Group, LLC (collectively, the "Receivership Defendants").

    2.     Until further Order of this Court, Kevin B. Duff, of the firm Rachlis Duff Adler Peel & Kaplan, LLC Duff is hereby appointed to serve without bond as the federal equity receiver (the "Receiver") for the estates of the Receivership Defendants.

### I. Asset Freeze

    3.     Except as otherwise specified herein, all assets of the Defendants and Relief Defendants (collectively, "Receivership Assets") are frozen until further order of this Court. Accordingly, all persons, institutions and entities with direct or indirect control over any Receivership Assets other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such Receivership Assets. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with any financial institutions or other entities, including, but not limited to, banks, brokerage firms and mutual funds. In particular, the Court enjoins any disbursement of proceeds by the Defendants, their agents, representatives, employees and officers and all persons acting in concert or participation with them, whatever business name they may operate under, derived from the sales of interests in Receivership Defendants, or any of them.

## II. General Powers and Duties of Receiver

4.    The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners of the Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a federal equity receiver, including but not limited to those powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, Fed. R. Civ. P. 66, and this Order.

5.    The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted in writing by the Receiver.  This order, however, does not dismiss Defendant Goyal's personal attorneys.

6.    The Receiver may assume and control the operation of any of the Receivership Defendants and may pursue and preserve all of their claims or interests.  The Receiver may continue and conduct the business, if any, of the Receivership Defendants in such manner, to such extent and for such duration as the Receiver may deem to be necessary or appropriate, if at all.

7.    No person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act for or on behalf of any of those Receivership Defendants, unless expressly authorized, in writing, by the Receiver.

8.    Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly (the foregoing collectively may be referred to as "Receivership Assets" or the "Receivership Estates");

B. To take exclusive custody, control and possession of all Receivership Assets and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Assets and records relevant thereto;

C. To manage, control, operate and maintain the Receivership Estates and hold in his possession, custody and control all Receivership Assets, pending further Order of this Court;

D. To take possession of all bank and investment accounts or securities accounts owned by or associated with the Receivership Estates or Receivership Defendants, whether in the name of the Receivership Defendants or their subsidiaries or affiliates, wherever located (collectively, the "Accounts"). The Receiver shall have the authority to open, close, transfer and change all bank, investment and securities Accounts.

E. To sign checks on, otherwise withdraw or transfer, trade or otherwise control the funds and/or securities contained in any Accounts owned or controlled by, or in the name of, the Receivership Defendants and Receivership Estate. The Receiver shall also be authorized to add or delete signers, including those currently authorized on the Account(s). The representatives of the Receiver initially designated with authority over these accounts shall be Kevin B. Duff.

F. To open and maintain new bank accounts in the name of the Receiver for the use in administering and preservation of the Receivership Estate, using the Federal Employer Identification Number of the Receivership Estate, at the Receiver's discretion.

G. To take control of, conserve, and liquidate any and all securities or commodities, owned by or for the benefit of the Receivership Estate, as the Receiver deems advisable or necessary.

H. To use Receivership Assets for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging

4

his duties as Receiver;

I.    To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, members, trustees, and agents of the Receivership Defendants;

J.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

K.    To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

L.    To issue subpoenas to compel testimony of persons or production of records consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provision of Fed. R. Civ. P. 26(d)(1), concerning any subject matter within the powers and duties granted by this Order;

M.    To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

N.    To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estates;

O.    To prepare a full accounting with regard to the activities of the Receivership Defendants for the period January 1, 2006 through the date of this Order;

P.    To take such other action as may be approved by this Court.

### III. Defendants' Duties to Receiver

9.    The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, members, general and limited partners, trustees, attorneys, accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve, provide immediate access, and turn over to

the Receiver forthwith all paper and electronic information of, and/or relating to, the

Receivership Defendants and/or all Receivership Assets; such information shall include but not

be limited to books, records, documents, accounts, access codes, security codes, passwords, safe

deposit keys, combinations, and all other instruments, papers, and electronic data. This does not,

however, include documents and files of Defendant Goyal's personal attorneys that are protected

by the work-product doctrine and attorney-client privilege.

10.     Within ten (10) days of the entry of this Order, the Receivership Defendants shall

file with the Court and serve upon the Receiver and the Commission a sworn statement, listing:

(a) the identity, location and estimated value of all Receivership Property; (b) all employees (and

job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of

the Receivership Defendants; and, (c) the names, addresses and amounts of claims of all known

creditors of the Receivership Defendants. Defendant Goyal shall retain responsibility, and the

Receiver shall assume no responsibility, for preparing and filing Goyal's personal income tax

returns.

11.     Within thirty (30) days of the entry of this Order, the Receivership Defendants

shall file with the Court and serve upon the Receiver and the Commission a sworn statement and

accounting, with complete documentation, covering the period from January 1, 2006 to the

present:

        A.      Of all Receivership Property, wherever located, held by or in the name of
the Receivership Defendants, or in which any of them, directly or
indirectly, has or had any beneficial interest, or over which any of them
maintained or maintains and/or exercised or exercises control, including,
but not limited to: (a) all securities, investments, funds, real estate,
automobiles, jewelry and other assets, stating the location of each; and (b)
any and all accounts, including all funds held in such accounts, with any
bank, brokerage or other financial institution held by, in the name of, or
for the benefit of any of them, directly or indirectly, or over which any of
them maintained or maintains and/or exercised or exercises any direct or

indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B.    Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.    Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

D.    Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.    Of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.    Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.    Of all transfers of assets made by any of them.

12.    Within ten (10) days of the entry of this Order, the Receivership Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' federal income tax returns for 2006 through 2013 with all relevant and necessary underlying documentation. The Receivership Defendants shall also deliver all state licenses, tax identification numbers, and all other relevant tax information.

13.    The individual Receivership Defendants named in the Complaint and the Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, members, shareholders, employees, accountants, debtors, creditors, managers and general and

limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make his discovery requests in accordance with the Federal Rules of Civil Procedure. Nothing in this Order shall operate as or effectuate a waiver of the attorney-client privilege regarding communications between Defendant Goyal and his personal attorneys, and Goyal's personal attorneys shall not be compelled by this Order to divulge information that would otherwise be protected by the attorney-client privilege.

14.     The Receivership Defendants are required to fully cooperate with and assist the Receiver in all respects in fulfilling his duties and obligations. As such, the Receivership Defendants must respond promptly and truthfully to all requests for information and documents from the Receiver.

## IV. <u>Access to Books, Records and Accounts</u>

15.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendants. All persons and entities receiving notice of this Order by personal service, facsimile or other electronic transmission, or otherwise, having control, custody or possession of any Receivership Assets are hereby directed to turn such property, including but not limited to all Accounts, over to the Receiver.

16.     The Receivership Defendants, as well as their agents, servants, employees,

attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

17.     All banks, brokerage and securities firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants that receive actual notice of this Order by personal service, email, facsimile transmission, or otherwise shall:

   A.    Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;

   B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

   C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

   D.    Cooperate expeditiously in providing access to accounts, assets and funds, as well as information as well as transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V. Access to Real and Personal Property

18.     The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and

accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, automobiles, and equipment.

19.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

20.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the real property and premises described above. The Receiver shall have exclusive control of the keys. The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

21.     The Receiver is authorized to open all mail, other than mail addressed to Defendant Goyal's spouse, directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

22.     Upon the request of the Receiver, the U.S. Marshals Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estates. In addition, the Receiver is authorized to request similar

assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction.

## VI. **Notice to Third Parties**

23.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, members, and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants.  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone

other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Defendants, mail addressed to Defendant Goyal's spouse, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee or addressee's attorney by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

27.     Subject to payment for services provided, any entity or utility furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

28.     The Receiver is authorized to assert, prosecute and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees, or trustees, and to take any and all appropriate steps in connection with such policies.

## VII. Injunction Against Interference with Receiver

29.     The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile transmission, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express

written agreement of the Receiver, which would:

      A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

      B.    Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

      C.    Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against any Receivership Assets or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Assets; or,

      D.    Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

30.    The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

31.    The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VIII. Stay of Litigation

32.    As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy

proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature filed against or seeking relief from: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

34.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to any cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled until the earlier of two years following entry of this Order or such time as the Receiver has filed his accounting with this Court.

### IX.  Managing Assets

35.     For each of the Receivership Estates, the Receiver shall establish one or more accounts at a federally insured bank to receive and hold all cash and cash equivalent Receivership Assets (the "Receivership Funds").

36.     The Receiver's deposit account shall be entitled "Receiver's Account, Estate of **[Name of Receivership Defendant]**" together with the name of the action, or a title to that effect.

37.     The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Assets, other than real estate, in the ordinary course of

business, on terms and in the manner the Receiver deems most beneficial to the Receivership
Estate, and with due regard to the realization of the true and proper value of such Receivership
Property.

38.     Subject to Paragraph 39, immediately below, the Receiver is authorized to locate,
list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all
necessary and reasonable actions to cause the sale or lease of all real property in the Receivership
Estates, either at public or private sale, on terms and in the manner the Receiver deems most
beneficial to the Receivership Estates, and with due regard to the realization of the true and
proper value of such real property.

39.     The Receiver is authorized to sell, and transfer clear title to, all real property in
the Receivership Estates after first obtaining Court authorization.

40.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-
down business operations of the Receivership Estates, including making legally required
payments to creditors, employees, and agents of the Receivership Estates and communicating
with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.     The Receiver shall take all necessary steps to enable the Receivership Funds to
obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section
468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed,
temporary or final, or pronouncements thereunder, including the filing of the elections and
statements contemplated by those provisions.  The Receiver shall be designated the administrator
of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the
administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a)
obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local

15

tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2].

## X. Investigate and Prosecute Claims

42. Subject to the requirement, in Section VII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Assets.

43. Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estates, as the Receiver deems necessary and appropriate. As part of his duty to investigate and report to this Court pursuant to Section XV, the Receiver is authorized to conduct a full accounting with regard to the activities of the Receivership Defendants. The Receiver shall advise the Court as to the anticipated scope and nature of the accounting in his initial report to this Court. The Receiver also may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other

16

relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to counsel for the Commission before commencing investigations and/or actions.

44. The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

45. The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XI. Repatriation of Foreign Assets and Documents

46. The Receiver shall take such steps as are necessary to repatriate to the territory of the United States of America all Receivership Assets that are located in a country other than the United States and are held by or for Defendants or are under Defendants' direct or indirect control, jointly, severally, or individually.

47. To the extent he has not already done so, within three (3) business days following entry of this Order, Neal V. Goyal shall provide the Receiver and the Commission with a full accounting of all assets, including Receivership Assets, that are located outside of the United States that have been transferred to the United States and are held by or for any Defendant or are under any Defendants' direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic financial institution or other entity holding the assets, along with the account numbers and balances.

48. Neal V. Goyal shall take all steps necessary and appropriate to prevent any transfer, disposition, or dissipation whatsoever of any assets, including Receivership Assets, located outside the United States.

49.     To the extent he has not already done so, within three (3) business days following entry of this Order, Neal V. Goyal shall provide the Receiver and the Commission access to Defendants' records and documents held by financial institutions or other entities outside the United States, by signing and delivering to the Receiver and Commission's counsel a Consent to Release of Financial Records.

## XII.  Interference with Repatriation

50.     **IT IS FURTHER ORDERED** that Defendants are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, including Receivership Assets, or in the hindrance of the. repatriation required by the preceding Section XI of this Order, including but not limited to:

A.      Sending any statement, letter, facsimile, email or wire transmission, or telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that the assets have been fully repatriated pursuant to the preceding Section XI of this Order; and

B.      Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order or the fact that repatriation is required pursuant to a Court Order, until such time as assets, including Receivership Assets, have been fully repatriated pursuant the preceding Section XI of this Order.

## XIII.  Bankruptcy Filing

51.     The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Receivership Defendants, or any of them.  If a Receivership Defendant is placed in Chapter 11 bankruptcy

18

proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor-in-possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor-in-possession under the Bankruptcy Code to the exclusion of any other person or entity.

52. The provisions of Section VII above bar any person or entity, other than the Receiver, from placing any of the Receivership Defendants in bankruptcy proceedings.

## XIV. **Liability of Receiver**

53. The Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

54. The Receiver and his attorneys and agents, acting within the scope of such agency (collectively, "Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their actions or omissions except upon an express finding by this Court that they acted as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

55. No action shall be filed or proceeding commenced against the Receiver or the Retained Personnel arising out of or in any way related to this receivership or their duties or work performed in connection with the receivership without obtaining an order from the Court based upon a showing of good cause.

56. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

57. In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor receiver. The Receiver shall then follow such instructions as the Court may provide.

## XV. Insurance

58.     Given the urgency to appoint a Receiver, the Court recognizes that the Receiver accepts this appointment without time for independent verification that appropriate insurance is in place on the property or that appropriate liability or other insurance is in place to protect the Receivership Assets and the Receivership Estate. Accordingly, the Court acknowledges that the Receiver has no responsibility or liability until such time as he can confirm that such insurance is in place or acquire the appropriate insurance. The Receiver shall make it a priority to verify or obtain insurance coverage immediately upon this Order Appointing Receiver being entered; however, the Plaintiff, Receivership Defendants, and Court acknowledge there may be a gap of time before such insurance may be in place to properly protect the assets of the estate and any employees of the estate, and that the Receiver has no responsibility or liability until such time as he/it has notified the Court by filing a notice that insurance is in place.

59.     Neal V. Goyal is ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies. This includes all applications, policies, riders, correspondence, endorsements, claims and other information. Neal V. Goyal is ordered: (1) to advise the insurance agent(s) of this Order in writing, (2) designate all authority over the policies to the Receiver, and (3) take no action with regard to terminating or modifying existing insurance policies.

60.     Any insurance broker, agent, carrier, or underwriter is specifically ordered by the Court to cooperate with the Receiver by timely furnishing the following: (1) copies of all insurance policies including any riders, endorsements and applications with respect to policies

related to the Receivership Estates, (2) loss history for five consecutive years or for as long as insurance has been in force if less than five years, (3) premium payment history including current status, and (4) any correspondence with insurance agents, brokers and companies. Policies shall be endorsed by the Defendants naming the Receiver as Named Insured and Loss Payee effective the date of this Order as appropriate to the type of coverage, and evidence of this policy endorsement shall be promptly supplied to the Receiver.

61.     The Receiver is hereby authorized to engage insurance brokers and consultants as necessary to properly insure the Receivership Assets.

## XVI. Recommendations and Reports

62.     The Receiver is authorized and empowered, in the Receiver's sole discretion, to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Assets (the "Liquidation Plan").

63.     Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

64.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value (if known), and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

65.     The Quarterly Status Report shall contain the following:

      A.     A summary of the operations of the Receiver;

      B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the

estate;

C.   A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.   A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.   A description of liquidated and unliquidated claims held by each Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.   A list of all known creditors with their addresses and the amounts of their claims;

G.   The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H.   The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

66.   On the request of the Commission, the Receiver shall provide the Commission with any documentation that the Commission deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's mission.

### XVII. Fees, Expenses and Accountings

67.   Subject to Paragraphs 68 – 74 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

68.   As provided in Section II above, and subject to Paragraph 59 below, the Receiver

is authorized to engage persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.

69.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

70.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

71.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

72.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

73.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

23

B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

74.    At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED, this 6th day of June, 2014, at Chicago, Illinois**

Rebecca R. Pallmeyer
**UNITED STATES DISTRICT JUDGE**

Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:14-cv-03900 |
| | ) | |
| v. | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| NEAL V. GOYAL, CALDERA<br>ADVISORS, LLC, and BLUE HORIZON<br>ASSET MANAGEMENT, LLC | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| CALDERA INVESTMENT GROUP, INC. | ) | |
| | ) | |
| Relief Defendant. | ) | |
| | ) | |

ORDER APPROVING RECEIVER'S
MOTION FOR COURT APPROVAL OF SETTLEMENT

This Court, after due notice having been given, and having conducted a hearing on the

Receiver's Motion For Court Approval Of Settlement, being full advised in the premises and for

good cause shown: HEREBY ORDERS:

1.     The Receiver's Motion is granted.

2.     The Court approves the settlement with Sherwood Partners Inc., the Court

appointed Receiver in the matter titled *SEC v. John B. Bivona, et al.,* Case No. 3:16-cv-1386

(N.D. Cal. 2016), relating to the Receivership's interest corresponding to Square, Inc. pursuant to

which Sherwood will distribute or otherwise pay $20,000 to the Receivership Estate.

Entered:

_____
Honorable Rebecca R. Pallmeyer

Date:    May 18, 2017