JOHN W. COTTON (SBN 54912)
Email: JCotton@gghslaw.com
GARTENBERG GELFAND & HAYTON LLP
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA 91403
(213) 542-2100
(818) 292-0898

Counsel to the Receiver
Michael A. Maidy

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN B. BIVONA; SADDLE RIVER ADVISERS, LLC; SRA MANAGEMENT ASSOCIATES, LLC; FRANK GREGORY MAZZOLA<br><br>Defendants. | Case No. 3:16-cv-1386<br><br>**NOTICE OF LODGING OF RECEIVER'S QUARTERLY REPORT TO THE COURT FOR THE QUARTER ENDED JUNE 30, 2017**<br><br>Date: N/A<br>Time: N/A<br>Judge: Edward M. Chen |

1 | The Receiver in the above matter, Sherwood Partners Inc. ("the
2 | Receiver") pursuant to this Court's Order of October 11, 2016, has been
3 | charged with the filing of quarterly reports advising the Court of the status of
4 | its work during the quarter then ended, as specified by Sec. XIII of the Order.
5 | Attached hereto as <u>Exhibit A</u> is Receiver's Third Quarterly Report to the Court,
6 | for the period April 1, 2017 to June 30, 2017, regarding specified activities
7 | undertaken during the quarter.

Dated: August 14, 2017

GARTENBERG GELFAND HAYTON LLP

By: /s/ *John W. Cotton*
John W. Cotton
Special Counsel to the Receiver

# Exhibit A



Sherwood Partners, Inc.   |   www.shrwood.com

Peter Hartheimer
Direct: (212) 333 0711
Email: p.hartheimer@shrwood.com

Hon. Edward M. Chen
United States District Court
Northern District of California
Courtroom 5
United States Courthouse
450 Golden Gate Ave.
San Francisco, California 94102

In re: Securities and Exchange Commission v. John V. Bivona, et al., Case No. 16-cv-01386-EMC

Hon. Edward M. Chen:

Attached please find the Third Quarterly Report of the Receiver in the matter of the Securities and Exchange Commission v. John V. Bivona, et al., Case No. 16-cv-01386-EMC.

Please note that portions of this Third Quarterly Report are based upon financial and other information provided to the Receiver by the Defendants of Saddle River Advisors, LLC, SRA Management Associates, LLC, SRA I, LLC, SRA II, LLC, SRA III, LLC, Clear Sailing Group IV, LLC, Clear Sailing Group V, LLC, Felix Multi Opportunity Fund I, LLC, and, Felix Multi Opportunity Fund II, LLC, LLC.

This Third Quarterly Report has been prepared pursuant to the terms of the Order Appointing the Receiver.

Sincerely,

*[signature]*

Peter Hartheimer
Sherwood Partners, Inc.
Representative of the Receiver
August 10, 2017

**Securities and Exchange Commission v. John V. Bivona, et al., Civil Action No. 3:16-cv-01386**
**Receiver's Third Quarterly Report, August 10, 2017**

The Receiver in the above matter, Sherwood Partners, Inc., ("the Receiver" or "Sherwood"), hereby provides its Third Quarterly Report to the Court on the progress of its administration of the Receivership Estates of the Defendants and the stipulating affiliated entities[1], for the period April 1, 2017 to June 30, 2017. As the Court is aware, the Receiver was appointed on October 11, 2016, pursuant to this Court's Order ("the Order"), which charged it with administering the Receivership Estates of Saddle River Advisors, LLC's holding companies, SRA I LLC, SRA II LLC, SRA III LLC, (The "SRA Funds") and Clear Sailing IV, and Clear Sailing V, (the "Clear Sailing Funds"), which are, collectively, the "Receivership Defendants." The stipulating, affiliated entities agreed as well to their administration by the Receiver. The Receiver began its work by familiarizing itself with background facts, relevant pleadings, and documentary information during the second and third week of October 2016, and began its tasks in earnest in early November 2016. This Third Quarterly Report, which the Court requested be provided quarterly, concerns the second quarter of 2017 (April 1, 2017 to June 30, 2017).

Pursuant to the Order, Sec. XIII, the Receiver is to provide the following information on a quarterly basis:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the Receivership Estate;

C. A schedule of the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the Receivership;

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims, including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments;

F. A list of all known creditors with their addresses and the amounts of their claims;

G. The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the basis for the recommendations.

---

[1] The stipulating affiliated entities include FMOF I, FMOF II, FMOF Management, NYPA I, NYPA II, and NYPA III, each as defined by this Court in its Order of October 11, 2016.

A. Summary of Operations of the Receiver

Since the submission of the Second Quarterly Report on May 15, 2017, the Receiver continued to fulfill the requirements of the Order. The following is what has been completed between April 1, 2017 and June 30, 2017.

**ASSET MANAGEMENT**

At the date of Sherwood's appointment, the Receivership Defendants' assets consisted of investments in twenty-one (21) companies that are or were pre-IPO and two (2) companies that had already experienced a liquidity event resulting from their IPOs.

The Receiver has requested and received assistance from former officers and employees of the Receivership Defendants, including, but not limited to John V. Bivona and Susan Diamond, in order to better understand the status and quantity of investments held by the Receivership Defendant entities and stock distributions made to investors after a stock went public.

The specific investments that the Receiver has devoted time to during this reporting period are as follows:

- **Palantir Technologies, Inc. ("Palantir")** - Palantir is the largest holding of the Receivership. Palantir has not gone public yet. The Receiver has met with the Securities and Exchange Commission ("SEC") regarding the Palantir holdings of the Receivership Estate and to discuss analyses performed by the SEC's forensic accounting consultants in order to confer regarding the population of investors and investment amounts in Palantir, including potential shortfalls. The Receiver has addressed with Palantir's counsel potential restrictions imposed by Palantir in a potential sale of the shares.

- **Flurry, Inc. ("Flurry")** - Flurry was a pre-IPO investment made through the NYPA Funds I & II, and SRA I. The investment was similar to Square, Inc. ("Square"), in that there was a liquidity event prior to Sherwood's appointment when Yahoo, Inc. ("Yahoo") purchased Flurry in a private sale. Liquidity was created when investor's shares were redeemed by Yahoo. The funds created by this transaction, similar to Square, were partially distributed to investors. According to the records of the Defendants, 12 of 50 investors have yet to receive a distribution. These funds are frozen in the SRA TD Bank accounts pending relief upon the Order appointing Sherwood. As of the date of this Third Quarterly Report, the Receiver together with the SEC are conducting an analysis of the cash distributions made to investors subsequent to Yahoo purchasing the Flurry shares in a private sale.

- **Box, Inc. ("Box")** - Box is a publicly traded company that issued an IPO on January 23, 2015. The pre-IPO investment in Box was made through the SRA I and SRA II funds. At the end of the "lock-up" period, prior to Sherwood's appointment, there were Box shares distributed to investors. As of the date of this Third Quarterly Report, the Receiver is conducting a review of the Box shares distributions made to investors.

- **Snap, Inc. ("Snap")** - Snap issued an IPO on March 2, 2017 and started trading on the New York Stock Exchange. The "lock-up" period will expire on August 29, 2017, hence, the Receiver will no longer be restricted from recovering the value of the Snap asset. Further details are below:
    - There are 15,586 Snap shares in the Receiver's portfolio

- Per the confirmation process performed during the Monitorship, Clear Sailing Group IV does not have records of Snap ownership
- It seems that the purchase of the Snap shares is under a forward contract
- During the Monitorship, the Monitor sent a confirmation to the seller of the Snap shares to verify the holdings of the shares, but a response was never received

- **Cloudera, Inc. ("Cloudera")** - Cloudera issued an IPO on April 28, 2017 with the "lock-up" period expiring on October 25, 2017. At the end of the "lock-up" period, the Receiver will no longer be restricted from recovering the value of the asset.

**Investment Banker Selection Process:** The Receiver has engaged in a selection process of an investment banker, whose role would be to assist the Receiver with the most profitable sale of the asset portfolio of the Receivership Estate.

The decisive factors in the selection of an Investment Banker for the Receivership Estate are the knowledge and resources availability in the secondary markets, the approach taken to liquidate the portfolio and the ability to testify as valuation experts from similar matters.

To that extent, the Receiver has entered into Non-Disclosure Agreements and has held introductory calls with four investment banking firms. The Receiver has set up a confidential data room with documents for investment bankers to aid them in the preparation of their proposals. Subsequent to that, the Receiver received three proposals and together with the SEC, interviewed the three investment banker candidates. One investment banker of the four decided not to proceed with the interview process. As of the date of this Third Quarterly Report, an additional investment banker candidate is being considered and the Receiver in consultation with the SEC will make a selection shortly.

**Plan of Liquidation and Distribution:** Pursuant to section XIII of the Order appointing the Receiver, Sherwood was to submit a Plan of Liquidation and Distribution (the "POL") by June 12, 2017[2]. As Sherwood further investigated the history of the Receivership Defendant entities, questions have arisen regarding the most efficient and equitable manner by which the Receiver should fairly monetize and distribute SRA assets. The language in the Order implied a specific method, best described as an asset-by-asset distribution to specific SRA Fund series holders. This implied method appeared problematic for several reasons.[3] Thus, the Receiver explored an alternative POL, which may be a more equitable and fair method of distribution. On June 29, 2017, the Receiver filed a Motion for Approval of a Joint Distribution Plan with the SEC. The Receiver together with the SEC submitted to the Court a proposed Joint Plan of Distribution, outlining the steps envisioned by both the Receiver and the SEC to liquidate the assets and distribute funds to investors and creditors of the Defendant entities. The Court has scheduled a Hearing on the approval of the POL for August 31, 2017 with responses to the Receiver's and SEC's Motions due by July 27, 2017. The Receiver and SEC must respond to any objections or oppositions to consolidation by August 17, 2017. By August 24, 2017 the Receiver and the SEC must respond to any opposition papers, objections, alternative distribution plans or proposed amendments to the filed POL.

---

[2] The Order originally called to produce this POL within 90 days of the Order; it was subsequently been moved by Court approved amendment of the Order to June 12, 2017.

[3] Among those reasons were (i) the inherent time delay and attendant cost of waiting for unknown liquidity events; (ii) the poor state of record-keeping resulting in, among other things, shortfalls in distributable company shares; and (iii) the cost of audit.

4

**Proof of Claims:** As of the date of this Third Quarterly Report, the Receiver is in the process of determining the nature and amounts due investors and creditors. The Receiver will conduct a comprehensive proof of claims process upon the Court's approval of the POL. Each creditor will have the opportunity to file a claim together with supporting documentation on or before a certain set bar date. The Receiver wants to ensure the capturing and understanding of all potential creditors. The Receiver will subsequently conduct an analysis and reconciliation of the claims, followed by a distribution process according to the terms of the Court-approved POL.

## INVESTOR RELATIONS AND CREDITORS

The Receiver continues to conduct regular communications with the Defendants' investors. Sherwood maintains a log of these communications along with any additional information investors choose to share with the Receiver. Sherwood has made every effort to provide accurate and concise information on the case status and its progress. The Receiver set up a website reflecting the most up-to-date information and Court filings in the matter: http://www.shrwood.com/saddleriver. In certain cases, Sherwood has been asked to conduct meetings with investors regarding their perceived unique circumstances surrounding investments.

- **Intervening Creditors Group:** This group is represented by Pritzker Levine LLP. On June 30, 2017, a day after the Receiver filed a motion for approval of a POL with the SEC, the Receiver and the SEC conducted a telephonic meeting at the request of Counsel Jonathan Levine of Pritzker Levine LLP. The purpose of the call was to discuss the Joint Distribution Plan just filed with the Court and to understand the concerns and objecting position of this group.

- **Telesoft:** On January 13, 2017 Sherwood's representatives and counsel met with the principals of Telesoft and their counsel to discuss their investment in Palantir, an illiquid asset of the Receivership Estate. It is Telesoft's assertion that they are an investor of 227,000 shares of Palantir, held in a specific series (Series G) of Defendant Clear Sailing V. The principals of Telesoft have expressed to the Receiver that their investment was structured to segregate it from all other investments in Palantir, and that as such, it should not suffer any dilution in any plan of liquidation. Instead, Telesoft investors should rather receive its 227,000 shares without any reduction. Sherwood has documented its review of this claim and is currently discussing it further with the SEC.

- **SEC v. Neal V. Goyal, et al ("Goyal Receivership"):** The Goyal Receivership is a receivership in a SEC sister matter arising in the Northern District of Illinois[4], in which the Court-appointed Receiver in that matter, Mr. Kevin Duff ("Duff"), made a claim to 1,250 shares of the undistributed Square shares held by the Receivership Estate. Goyal, the Defendant in the Northern District of Illinois matter, was an investor in the SRA I entity. The Goyal Receivership had acquired 1,250 shares of Square in 2015. Duff believed that the Goyal Receivership was entitled to the full allocation of these shares due to his priority of the Goyal Receivership and should not be subject to any shortfall offset or other equitable reduction in value. Duff's understanding was that upon a liquidity event in the shares of Square, the 1,250 shares would be distributed to the Goyal Receivership. Sherwood, pursuant to the Order, is entitled to four percent (4%) of all assets of the SRA estate. In addition, there is a shortfall of Square shares available for distribution, as mentioned in the Second Quarterly Report filed on May 15, 2017.

---

[4] **SEC v. Neal V. Goyal, et al,** Case No. 1:14-cv-3900, N.D. Illinois (2015)

5

After Sherwood and its counsel conducted several conversations with Duff to determine the appropriate administration of the Goyal Receivership's claim, a mutual agreement was reached and on May 18, 2017. Hon. Rebecca R. Pallmeyer of the U.S. District Court in the Northern District of Illinois, Eastern Division, approved the settlement. The settlement reflected that Sherwood would distribute the 1,250 Square shares at a price per share of $17, which was the price per Square share at the time Sherwood sold the Square shares portfolio in March 2017. Sherwood and Duff agreed to settle the claim for $20,000, which takes into account a 4% "set aside fund" amount ($860) and a remainder amount ($390) to satisfy a possible share shortfall in any as yet undistributed Square shares going to SRA investors. In June 2017 a wire in the amount of $20,000 was sent by Sherwood to the Duff, pursuant to a settlement which was approved by both Courts in the Northern District of California and the Northern District of Illinois.

- **Mandatory Tax Filings:** In performing its Receiver's duties, Sherwood is in the process of engaging an accounting firm to prepare the Receivership entities' tax returns for the years 2015 and 2016, since the last prepared tax returns were for the tax year 2014.

**RECORDS MANAGEMENT**

In order to administer the Receivership Estate in the most cost-effective and efficient manner, the Receiver relocated all Defendants' records to its warehouse in Mountain View, CA. At that time of the relocation, the Receiver conducted an inventory of records. However, many of the Receivership entities' records are incomplete and have required considerable effort to locate, identify or recreate. Sherwood has recovered missing tax documents, emails and computer data required to administer the Receivership Estate, and defend and pursue claims on behalf of its investors and creditors.

**CASE SUPPORT AND ADMINISTRATION**

The Receiver has spent time administering the matter to ensure compliance with the Order. The Receiver's work during this period has included (a) the preparation of the Second Quarterly Report of the Receiver dated May 15, 2017 and (b) the preparation of the first fee application of the Receiver for the period October 11, 2016 to March 31, 2017.

**SUPPORT OF AND REPORTING TO THE SECURITIES AND EXCHANGE COMMISSION ("SEC")**

As part of the administrative obligations to the Receivership Estate, Sherwood has had regular dialog with the SEC. Sherwood has conducted regular meetings with the SEC and has assisted and received support with the following activities:

- (i) Conferring and meeting regarding the Palantir stock portfolio of the Receivership Estate, exchanging known facts regarding the flow of funds to purchase the Palantir stock and the number and identity of the Palantir investors

- (ii) Receiving support from the SEC in the process of obtaining proposals and subsequently interviewing the investment bankers candidates for the Receivership and conducting joint interviews of the investment bankers candidates at the SEC offices

**CLAIMS AND LITIGATION FOR THE BENEFIT OF THE ESTATE**

In addition to the monetization and recovery of assets, the Receiver will need to pursue remedies, consensual and legal, to recover funds. These funds are compensation due to the Receivership Estate by misappropriation. Early in the Receivership, the principal of the Receivership Defendant entities, John V. Bivona filed for bankruptcy in the Southern District of New York, Case 16-12961-scc. The Receiver analyzed and addressed issues concerning the impact of his personal Chapter 7 bankruptcy, as well as issues pertaining to the preservation of claims and assets of the Receiver's estate by working with local counsel. This includes, but is not limited to:

- Stipulating to the extension of time to object to the discharge and dischargability of debt
- Efforts to recover funds held in Defendants' frozen banks accounts (refer to the First Quarterly Report of the Receiver filed on January 31, 2017)

**B. The amount of cash on hand, the amount and nature of accrued administrative expenses and the amount of unencumbered funds in the estate:**

As of the date of this Third Quarterly Report, the Receiver holds $1,645,219.77, which represents proceeds from the sale of all 97,505 Square shares in March 2017 and accounting for the $20,000 distribution made, representing the settlement with Duff in the Northern District of Illinois.

As of June 30, 2017, the accrued administrative expenses of the Defendant entities are as follows:

| Pre-Appointment Accrued Administrative Expenses | |
| --- | --- |
| | |
| Office Expenses | $61,528.60 |
| Salaries-SRA Management | $64,927.31 |
| Expenses - John Bivona | $10,180.37 |
| Expenses - Nina Dazzo | $3,018.15 |
| Expenses - Vito Fredella | $1,555.41 |
| Expenses - Susan Diamond | $2,540.72 |
| Registered Agent- National Corporate Research | $2,036.00 |
| State of NJ Annual Report | $105.00 |
| Delaware delinquent LLC taxes | $6,360.00 |
| | $152,251.56 |
| | |
| Post-Appointment Accrued Administrative Expenses | |
| Temporary Administrative Labor | $2,746.08 |

The Receiver has been bearing the burden of expenses associated with carrying out its duties, and the Receiver's retained professionals have incurred expenses as reflected in this Third Quarterly Report.

Additionally, both Sherwood as Monitor and John Cotton, Esq. as counsel for the Monitor have accrued administrative professional fees and expenses dating back to March 2016, which as of the date of this Third Quarterly Report, remain unpaid.

Sherwood as Monitor has three approved unpaid fee applications totaling $203,925.50 incurred during the period March 22, 2016 to October 11, 2016. For the same period, John Cotton, Esq. of the law firm

7

Gartenberg, Gelfand and Hayton LLP has accrued professional fees in the amount of $24,522, which remain unpaid. For the period October 11, 2016 to March 31, 2017, Sherwood Partners, Inc. in its role as Receiver has accrued professional fees and expenses totaling $221,120.67, which have been approved by the Court and remain unpaid. For the same period, John Cotton, Esq. has accrued professional fees and expenses totaling $39,369, approved by the Court and which remain unpaid.

### C. A schedule of all the Receiver's Receipts and Disbursements:

As of the date of this Third Quarterly Report, the Receiver has made one disbursement in the amount of $20,000 to Duff in the Northern District of Illinois, pursuant to a settlement approved by both Courts in the Northern District of California and the Northern District of Illinois. Future disbursements will be made only pursuant to the terms of a Court-approved POL.

### D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended:

**1.** All Defendant Entities' assets subject to the SEC's stipulated Order for Appointment of Receiver. These assets would be those of the Defendant and stipulated affiliated entities. They are as follows:

- SRA I, LLC
- SRA II, LLC
- SRA III, LLC
- Saddle River Advisors, LLC
- SRA Management, LLC
- Clear Sailing Group IV, LLC
- Clear Sailing Group V, LLC
- Felix Multi-Opportunity Fund I, LLC
- Felix Multi-Opportunity Fund II, LLC
- Felix Management Associates, LLC
- NYPA Fund I, LLC
- NYPA Fund II, LLC
- NYPA Management Associates, LLC

**2.** All known investments of the Receivership Entities to the best of the Receiver's knowledge and belief. These investments, all but Addepar, are held with the so-called "Purchase Funds" (Clear Sailing IV, Clear Sailing V, and Equity Acquisition Corp. ("EAC"). They are as follows:

- Addepar, Inc.
- Airbnb, Inc.
- Badgeville, Inc.
- Bloom Energy, Inc.
- Candi Controls, Inc.
- Cloudera, Inc.
- Dropbox, Inc.
- Evernote, Inc.
- Flurry, Inc.
- Glam, Inc.
- Jawbone, Inc.
- Lookout, Inc.
- Lyft, Inc.
- Mongo DB, Inc.
- Palantir, Inc.
- Pinterest, Inc.
- Practice Fusion, Inc.
- Snapchat, Inc.
- Square, Inc.
- Uber, Inc.
- Big Ten
- Series X

**3.** All known bank accounts of the Defendant Entities to the best of the Receiver's knowledge and belief:

|   | ACCOUNT NAME | ACCOUNT # | BALANCE |
|---|---|---|---|
| 1 | SRA Management Associates LLC | TD Bank-8771 | $ 147.72 |
| 2 | SRA I LLC | TD Bank-8804 | $ 37,109.51 |
| 3 | SRA II LLC | TD Bank-8797 | $ 174.11 |
| 4 | SRA III LLC | TD Bank-8789 | $ 135.82 |
| 5 | Saddle River General Account LLC | TD Bank-8846 | $ 4,029.64 |
| 6 | Clear Sailing Group V LLC | TD Bank-2096 | $ - |
| 7 | Clear Sailing Group IV LLC | TD Bank-9076 | $ 38,080.53 |
| 8 | NYPA Fund I LLC | TD Bank-7543 | $ 58.10 |
| 9 | NYPA Fund II LLC | TD Bank-7551 | $ 75.00 |
|   |   |   | $ 79,810.43 |

**E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments):**

To the best of its knowledge and belief, the Receiver is unaware of any liquidated or unliquidated claims held by the Receivership Estate as of the date of this Third Quarterly Report.

**F. A list of all known creditors that includes their addresses and the amounts of each claim:**

As of the date of this Third Quarterly Report, the Receiver is in the process of determining the nature and amounts due investors and creditors. The Receiver will conduct a comprehensive proof of claims process upon the Court's approval of the POL. Each creditor will have the opportunity to file a claim together with supporting documentation by a certain specified bar date. The Receiver wants to ensure it encompasses all potential investors and creditors. The Receiver will subsequently conduct an analysis and reconciliation of the proof of claims followed by a distribution process pursuant to the terms of a Court-approved POL.

**G. The status of Creditor Claims Proceedings, after such proceedings have commenced:**

The Receiver has not engaged in a claims process as of the date of this Third Quarterly Report. Please refer to Section F for further details.

**H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the reasons for the recommendations:**

The Receiver, working closely with the SEC, has made significant progress in administering the Receivership Estate, analyzing and understanding the issues at hand. The Receiver is in the midst of carrying out its duties. On June 29, 2017, the Receiver filed with the Court a Joint POL with the SEC. The

Receiver's recommendation is to continue the Receivership so that it can thoroughly complete its duties as outlined in the Court Order entered on October 11, 2016. Additionally, since at this time there is no recommendation for a bankruptcy filing or a distribution of assets to investors other than pursuant to a Court-approved POL, there is no other course than to continue the Receivership.

## UPCOMING WORK OF THE RECEIVERSHIP

The primary upcoming task of the Receiver is to address any questions by investors and creditors of the Defendants and together with the SEC to address objections and oppositions to the POL jointly filed by the Receiver and the SEC, as well as prepare for the Court Hearing on the Joint POL set for August 31, 2017. Furthermore, the Receiver continues to engage in the recovery process of assets (i.e. Forward Contracts of Snap shares).

In addition to the above, the Receiver, together with the SEC, will soon make a selection of an investment banker to be retained by the Receivership.

As soon as the Joint POL is approved by the Court, the Receiver will commence the Proof of Claim process setting a bar date for the submission of proof of claims.

In the John V. Bivona individual bankruptcy filed in the Southern District of New York, the Receiver has until September 26, 2017 to decide whether to commence an action objecting to the discharge or dischargeability of debt.

Exhibit A

|  | For quarter ended June 30, 2017 | Cumulative since October 11, 2016 |
|---|---|---|
| **Receiver's Receipts** | - | $1,665,219.77 |
| **Receiver's Disbursements** | ($20,000) | ($20,000) |
| **TOTAL** | ($20,000) | $1,645,219.77 |
|  |  |  |