JOHN W. COTTON (SBN 54912)
Email: JCotton@gghslaw.com
GARTENBERG GELFAND & HAYTON LLP
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA 91403
(213) 542-2100
(818) 292-0898

Counsel to Receiver Sherwood Partners Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JOHN V. BIVONA; SADDLE RIVER ADVISERS, LLC; SRA MANAGEMENT ASSOCIATES, LLC; FRANK GREGORY MAZZOLA<br><br>Defendants, and<br><br>SRA I LLC; SRA II LLC; SRA III LLC; FELIX INVESTMENTS, LLC; MICHELE J. MAZZOLA; ANNE BIVONA; CLEAR SAILING GROUP IV LLC; CLEAR SAILING GROUP V LLC,<br><br>Relief Defendants. | Case No. 3:16-cv-1386<br><br>**NOTICE OF LODGING OF RECEIVER'S QUARTERLY REPORT TO THE COURT FOR THE QUARTER ENDED SEPTEMBER 30, 2017**<br><br>Date: No Date<br>Time: No Time<br>Judge: Edward M. Chen |

1

NOTICE OF LODGING OF THE RECEIVER'S REPORT FOR THE QUARTER ENEDED 9/30/2017

1  The Receiver in the above matter, Sherwood Partners, Inc. ("the
2  Receiver") pursuant to this Court's Order of October 11, 2016, has been
3  charged with the filing of quarterly reports advising the Court of the status of
4  its work for the most recently ended quarter, as specified by Sec. XIII of the
5  Order. Attached hereto as <u>Exhibit A</u> is the Receiver's Fourth Quarterly Report
6  to the Court for the period July 1, 2017 to September 30, 2017, regarding
7  specified activities undertaken during that quarter.

GARTENBERG, GELFAND & HAYTON LLP

November 9, 2017

/s/ John W. Cotton
John W. Cotton
Counsel to the Receiver

# Exhibit A



Sherwood Partners, Inc. | www.shrwood.com

Peter Hartheimer
Direct: (212) 333 0711
Email: p.hartheimer@shrwood.com

Hon. Edward M. Chen
United States District Court
Northern District of California
Courtroom 5
United States Courthouse
450 Golden Gate Ave.
San Francisco, California 94102

Re: <u>Securities and Exchange Commission v. John V. Bivona, et al., Case No. 16-cv-01386-EMC</u>

Hon. Edward M. Chen:

Attached please find the Fourth Quarterly Report of the Receiver in the matter of the Securities and Exchange Commission v. John V. Bivona, et al., Case No. 16-cv-01386-EMC.

Please note that portions of this Fourth Quarterly Report are based upon financial and other information provided to the Receiver by the Defendants of Saddle River Advisors, LLC, SRA Management Associates, LLC, SRA I, LLC, SRA II, LLC, SRA III, LLC, Clear Sailing Group IV, LLC, Clear Sailing Group V, LLC, Felix Multi Opportunity Fund I, LLC, and, Felix Multi Opportunity Fund II, LLC.

This Fourth Quarterly Report has been prepared pursuant to the terms of the Order Appointing the Receiver.

Sincerely,

*[signature]*

Peter Hartheimer
Sherwood Partners, Inc.
Representative of the Receiver
November 9, 2017

**Securities and Exchange Commission v. John V. Bivona, et al., Civil Action No. 3:16-cv-01386**
**Receiver's Fourth Quarterly Report, November 9, 2017**

The Receiver in the above matter, Sherwood Partners, Inc. ("Receiver" or "Sherwood"), hereby provides its Fourth Quarterly Report ("the Report") to the Court on the progress of its administration of the Receivership Estates of the Defendants and the stipulating affiliated entities[1], for the period July 1, 2017 to September 30, 2017. As the Court is aware, the Receiver was appointed on October 11, 2016, pursuant to this Court's Order ("the Order"), which charged it with administering the Receivership Estates of Saddle River Advisors, LLC's holding companies, SRA I, LLC, SRA II, LLC, SRA III, LLC, (the "SRA Funds") and Clear Sailing Group IV, LLC and Clear Sailing Group V, LLC (the "Clear Sailing Funds"), which are, collectively, the "Receivership Defendants." The stipulating, affiliated entities agreed as well to their administration by the Receiver. The Receiver began its work by familiarizing itself with background facts, relevant pleadings, and documentary information during the second and third weeks of October 2016, and began its tasks in earnest in early November 2016. This fourth installment of the quarterly reports requested by the Court concerns the third quarter of 2017 (July 1, 2017 to September 30, 2017).

Pursuant to the Order, Sec. XIII, the Receiver is to provide the following information on a quarterly basis:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the Receivership Estate;

C. A schedule of the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Report), with one column for the quarterly period covered and a second column for the entire duration of the Receivership;

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims, including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments. Note: Please refer to Section A of this Report, specifically to the "Stock Redemptions" paragraph, for additional information;

F. A list of all known creditors with their addresses and the amounts of their claims;

G. The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the basis for the recommendations.

---

[1] The stipulating affiliated entities include FMOF I, FMOF II, FMOF Management, NYPA I, NYPA II, and NYPA III, each as defined by this Court in its Order on October 11, 2016.

### A. Summary of Operations of the Receiver

Since the submission of the Third Quarterly Report on August 14, 2017, the Receiver continued to fulfill the requirements of the Order. The following is what has transpired between July 1, 2107 and September 30, 2017.

### ASSET MANAGEMENT

**Stock Redemptions:** At the date of Sherwood's appointment, the Defendants' assets consisted of investments in 21 companies that are or were pre-IPO and two companies that had already experienced a liquidity event resulting from their IPOs. No known liquidity events occurred during the period of this report. However, two of the subject pre-IPO companies, which previously had initial public offerings, completed their "lockup" periods during or shortly after the dates of this report : Snap, Inc. and Cloudera, Inc.

- **Snap, Inc. ("Snap")** - Snap issued an IPO on the New York Stock Exchange on March 2, 2017. The "lock-up" period expired on August 29, 2017, hence, the Receiver is no longer restricted from recovering the value of the Snap asset. Further details are below:
  - There are 15,586 Snap shares in the Receiver's portfolio.
  - Per the confirmation process performed during the Monitorship, Clear Sailing Group IV, LLC, has no records of Snap ownership.
  - The Receiver has been in communication with the owner of the pledged assets and is working with him to transfer the shares to the Receiver's account.

- **Cloudera, Inc. ("Cloudera")** - Cloudera issued an IPO on April 28, 2017 and the "lock-up" period expired on October 25, 2017. The Receiver is no longer restricted from recovering the value of the Cloudera asset.

**Square, Inc. ("Square")** – The Receiver continues to examine the shortfall found in the Square investments. In the Receiver's original analysis, the Receivership Estate ("the Estate") appeared to have a net shortfall 9,799 shares, as described in the Declaration of G. Nertea re Motion for Approval. During the third quarter, the Receiver identified additional Square share distributions according to American Stock Transfer ("AST") that were previously unknown to the Receiver. The additional distributions reduced the net shortfall to 5,987 shares. This net shortfall is calculated by taking into account the 16,807 mis-distributed excess shares by the SRA Defendants before the appointment of the Receiver. The resulting total gross shortfall is 22,795 shares. The Receiver will follow the direction of the Court and craft a plan to address the excess distribution of Square shares and any associated shortfall. Please refer to the section below regarding the Plan of Liquidation and Distribution. Immedialy following the September 28th hearing, the Receiver initiated the preparation of demand letters to the investors who incorrectly received distributions in an attempt to claw back the mis-distributed Square shares.

**Plan of Liquidation and Distribution ("POL"):** Pursuant to section XIII of the Order appointing the Receiver, Sherwood was to submit a Plan of Liquidation and Distribution (the "POL") by June 12, 2017[2].

---

[2] The Order originally called to produce this POL within 90 days of the Order; it was subsequently been moved by Court approved amendment of the Order to June 12, 2017.

On June 29, 2017, the Receiver filed a Motion for Approval of a Joint Distribution Plan with the SEC that outlines the steps envisioned by both the Receiver and the SEC to liquidate the assets and distribute funds to investors and creditors of the Defendant entities.

On August 24, 2017, opposition papers were due with Objections, alternative Distribution Plans, or proposed amendments to the POL. The following documents and oppositions were filed with the Court: the Investors' Group ("IG") Objection; the Bivona Objection; the Telesoft Objection; and the Global Generation Group Objection. Each of these have been posted on the Receiver's website at http://www.shrwood.com/saddleriver.

These objections, for simplicity's sake, can be bifurcated into two separate categories: Objections to the consolidation of the Estate and objections to the liquidation of the assets. The Objections to the consolidation can be found in the Telesoft Objection (please refer to this Report's "Investor Relations and Creditors" section below) and the Bivona Objection. The Objections to liquidation are principally voiced in the IG Objection.

A hearing was held on August 31, 2017 to hear the Telesoft and Bivona Objections (please refer to page 7 of this Report). At that Hearing, the Court overruled Telesoft's Objection. A ruling was not made regarding Bivona's objection. A further Hearing on the Receiver's Approval of a Joint Distribution Plan and other issues, was scheduled, and held on September 28, 2017.

The Hearing held on September 28, 2017, was, among other things, to consider the Objections of the IG. The results of that Hearing can be found on the Receivers website[3] at http://www.shrwood.com/saddleriver and that of the SEC. The Court ordered that the IG, Global Generation, Benchmark Capital, and the Receiver shall meet and confer on various issues including:

> (1) A fair and effective claims and noticing process;
> (2) How pooling of the Funds would work in practice if it were to be ordered, including the management structure, alternatives to pooling into one consolidated entity, and the costs and benefits associated with each option;
> (3) The selection and retention of a third-party investment banker to offer analysis of different market options as discussed in Court;
> (4) A stipulated protective Order enabling the interested parties to exchange information regarding a third-party investment banker on an attorneys' eyes-only basis, if necessary;
> (5) A fair method for dealing with possible creditors including Global Generation's claim (if Global Generation is ultimately treated as a creditor), including financing options;
> (6) Deriving a common figure regarding the total amounts invested in the relevant Funds by investors with current claims;
> (7) A plan for addressing the over-distribution of Square shares and any associated shortfall; and
> (8) Possible distribution options in light of the Court's comments at the Hearing

A status Hearing is currently scheduled for November 16, 2017, at 9:30 a.m. Pacific Time to hear from the parties about the their attempts at resolution of the Order.

---

[3] Docket # [256] Minutes of Hearing and Resulting Order

**Investment Banker Selection Process:** The Receiver's efforts to engage an investment banker whose role would be to assist the Receiver with the most profitable sale of the asset portfolio of the Receivership Estate. The Court has approved of the concept of hiring an investment banker. Moreoever, per the instructions of the Court, the IG will now be part of the selection process of an IB and the scope of the IB engagement has changed. The IB is to first offer an analysis of different market options and provide this in a report to the Court. This opinion will be separate and apart from the monetization of any securities. Should the Court elect to proceed with the sale of securities, the selected IB will also undertake that task.

**Proofs of Claim Process:** As of the date of this Fourth Quarterly Report, the Receiver is in the process of determining the nature of and amounts due to investors and creditors. In response to the Order of September 28, 2017, the Receiver is implementing a fair and effective claims and noticing process. On November 1, 2017 the Receiver lodged with the Court a proposed Claim and Notice Form, approved by all parties. On November 16, 2017, the Receiver will submit to the Court the recommendation for a Claims agent.

## INVESTOR RELATIONS AND CREDITORS

The Receiver continues to conduct regular communications with the Defendants' investors. Sherwood maintains a log of these communications along with any additional information investors choose to share with the Receiver. Sherwood has made every effort to provide accurate and concise information on the case status and its progress. The Receiver set up a website reflecting the most up-to-date information and Court filings in the matter: http://www.shrwood.com/saddleriver. In certain cases, Sherwood has been asked to conduct meetings with investors regarding their perceived unique circumstances surrounding investments.

**Investors and Creditors Telephone Meeting with the Receiver:** On Tuesday, July 20, 2017, the Receiver conducted a telephone meeting with several investors to answer questions the investors or creditors had regarding the POL filed on June 27, 2017. The meeting lasted one hour and the Receiver responded to questions provided by email prior to the meeting. There were a total of 34 submitted questions, some of which had multiple parts. 43 parties registered for the meeting and there were approximately 37 to 39 callers participating at any given time.

**IG (Formerly known as the Intervening Creditors):** This group is represented by the law firm Pritzker Levine, LLP and has been supported by two vocal investors in the SRA funds, Joshua Cilano and Peter Healy. As stated above, the IG objected to the POL (please refer to Docket number 230: Declaration of Jonathan Levine in support of the SRA Funds Investor Group's Objections to Joint Distribution Plan) on August 24, 2017 for the following reasons: the "… Joint Distribution Plan rests on improper assumptions regarding the nature of asserted claims   against   the   receivership   estate, unfairly favors  certain claimants   over   others,   and unreasonably harms SRA Funds investors…" The Receiver has met the request for information by participating in a telephonic meeting on July 19, 2017 and follow up on August 23, 2107, and provided comprehensive supporting analysis of the Square mis-distributions as made by Susan Diamond while employed as compliance officer to the SRA defendants.  The SEC, IG and counsel for Global Generation, pursuant to the Court's request, have been directed to work together  to attempt to resolve all, or some of the IG's objections to the Plan. Since the hearing on September 28th, the Reciever

5

has participated no less then five calls staring on October 5th and contuing on a regular basis through Novenber 3rd with the IG, Global Group & SEC.

**Telesoft:** Telesoft is an investor in approximately 227,000 shares of Palantir. On August 24, 2017, Telesoft objected to the POL[4] on grounds that TeleSoft's contractual agreement with Clear Sailing IV and its resulting investment structure in Palantir Technologies stock, vis-à-vis other investors, was unique and different, providing TeleSoft had an alleged ability to tie TeleSoft's capital investment directly to the purchase of 227,000 shares of Palantir. As described above, the Court overruled this Objection. The Receiver has had no discussions with Telesoft's representatives since the September 28th hearing.

**Mandatory Tax Filings:** In performing its Receiver's duties, Sherwood has engaged an accounting firm to prepare the Receivership entities' tax returns for the years 2015 and 2016, since the last prepared tax returns were for the tax year 2014. The Receiver is assembling the records of the Defendant Entities and the Affiliated Entities.[5] This is a time-consuming task due to the incomplete company records of the Estate as provided to the Receiver when they were surrendered on October 11, 2016.

## RECORDS MANAGEMENT

To administer the Estate in the most cost-effective and efficient manner, the Receiver relocated all Defendants' records to its warehouse in Mountain View, California. At the time of the relocation, the Receiver conducted an inventory of the records. However, many of the Receivership entities' records are incomplete and have required considerable effort to locate, identify, or recreate. Sherwood has recovered missing tax documents, emails, and computer data required to administer the Receivership Estate and defend and pursue claims on behalf of its investors and creditors.

**Notice of Federal and State Taxing Authorities:** The Receiver has noticed the following tax authorities regarding the POL: the Internal Revenue Service, New Jersey Division of Taxation, Delaware Bankruptcy Administrator, New York State Department of Taxation and Finance, and the Franchise Tax Board of California.

## CASE SUPPORT AND ADMINISTRATION

The Receiver has spent time administering the matter to ensure compliance with the Order. The Receiver's work during this period has included (a) the preparation of the Third Quarterly Report of the Receiver, dated August 14, 2017, and (b) the preparation of the Second Fee Application of the Receiver for the period April 2017 through June 2017.

**Fee Applications:** The Receiver submitted its first fee application to the Court on July 13, 2017, for $221,120.67, which covered the time period October 11, 2016 to March 31, 2017. Judge Chen approved this first application for Receivership fees on July 25, 2017. At the hearing on September 28, 2017, Judge

---

[4] The Telesoft objection docket # 226 can be downloaded from the Receiver's website.
[5] The Defendant and Affiliated entities can be identified in the order to appoint the Receiver and are: Defendant Entities - SRA Management Associates, LLC, SRA I, SRA II & SRA III, LLC, and Clear Sailing Group IV & V, LLC, Affiliated Entities - FMOF I & II LLC, FMOF Management Associates, LLC., NYPA I & II LLC, NYPA Management Associates, LLC.

Chen granted consent to use funds held in the Receiver's account, which arose from the sale of the shares of Square inc. to pay the approved application for fees. This approval included the outstanding fees of the Monitor and the Monitor's Counsel, and the Receiver and Receiver's counsel, through March 31, 2017. [6]

## SUPPORT OF AND REPORTING TO THE SECURITIES AND EXCHANGE COMMISSION

As part of the administrative obligations to the Receivership Estate, Sherwood has had regular dialog with the SEC. Sherwood has conducted regular meetings with the SEC and has assisted and received support with the following activities:

**Support of Settlements of the Estate:** As part of the POL, the SEC has sought fees' disgorgement of the Defendants J. Bivona & F. Mazola. In support of this, the Receiver has shared a draft of a preliminary analysis of assets regarding the distributions of Box, Inc. and Flurry, Inc.

## CLAIMS AND LITIGATION FOR THE BENEFIT OF THE ESTATE

In addition to the monetization and recovery of assets, the Receiver will need to pursue remedies, consensual and legal, to recover funds. These funds are compensation due to the Receivership Estate by misappropriation. Early in the Receivership, the principal of the Receivership Defendant entities, John V. Bivona, filed for bankruptcy in the Southern District of New York, Case 16-12961-scc. The Receiver analyzed and addressed issues concerning the impact of Bivona's personal Chapter 7 bankruptcy, as well as issues pertaining to the preservation of claims and assets of the Receiver's estate, by working with local counsel.

During this period, no activities were conducted related to claims and litigation on behalf of the Estate.

**B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate:**

As of September 30, 2017, the Receiver holds $1,645,219.77, which represents proceeds from the sale of all 97,505 Square shares in March 2017 and, accounting for the $20,000 distribution made, representing the settlement with Duff in the Northern District of Illinois.

---

[6] Sherwood, as Monitor, previously had three approved, but unpaid fee applications totaling $203,925.50 incurred during the period of March 22, 2016, to October 11, 2016. For the same period, John Cotton, Esq., of the law firm Gartenberg, Gelfand and Hayton LLP, has accrued professional fees in the amount of $24,522. These fees have now been paid. For the period of October 11, 2016 to March 31, 2017, Sherwood, in its role as Receiver, accrued professional fees and expenses totaling $221,120.67. For the same period, John Cotton, Esq., had accrued professional fees and expenses totaling $39,369. At the Hearing on September 28, 2017, Judge Chen approved the disbursement of funds to pay the approved, outstanding Monitor and Receiver fees totaling $425,046.20, as well as the outstanding supporting counsel's fees of $63,891. These fees were paid in October 2017.

As of September 30, 2017, the accrued administrative expenses of the Defendant entities are as follows:

| Pre-Appointment Accrued Administrative Expenses | |
|---|---|
| Office Expenses | $61,528.60 |
| Salaries-SRA Management | $64,927.31 |
| Expenses - John Bivona | $10,180.37 |
| Expenses - Nina Dazzo | $3,018.15 |
| Expenses - Vito Fredella | $1,555.41 |
| Expenses - Susan Diamond | $2,540.72 |
| Registered Agent- National Corporate Research | $2,036.00 |
| State of NJ Annual Report | $105.00 |
| Delaware delinquent LLC taxes | $6,360.00 |
| | $152,251.56 |
| Post-Appointment Accrued Administrative Expenses | |
| Temporary Administrative Labor | $2,746.08 |

During the Third Quarter, the Receiver submitted its Second Fee Application for $143,417.00, for the time period of April 1, 2017 to June 30, 2017. This was filed along with the Fee Application of John Cotton, Esq., Counsel for the Receiver, in the amount of $31,477. Both of these applications are pending Court approval and are on calendar for the Hearing on November 16, 2017.

### C. A Schedule of all the Receiver's Receipts and Disbursements:

During the previous quarter, the Receiver made one disbursement in the amount of $20,000 to SEC Receiver Duff in the Northern District of Illinois, pursuant to a settlement approved by both Courts in the Northern District of California and the Northern District of Illinois. This transaction is reflected in the attached Exhibit A. Subsequent to the close of the time period of the Fourth Quarterly Report, the Receiver also made disbursements to itself and its counsel totaling $488,273.20, which are reflected as well in Exhibit A.

### D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended:

**1.** All Defendant Entities' assets subject to the SEC's stipulated Order for Appointment of Receiver. These assets would be those of the Defendant and stipulated affiliated entities. They are as follows:

- SRA I, LLC
- SRA II, LLC
- SRA III, LLC
- Saddle River Advisors, LLC
- SRA Management, LLC
- Clear Sailing Group IV, LLC
- Clear Sailing Group V, LLC
- Felix Multi-Opportunity Fund I, LLC
- Felix Multi-Opportunity Fund II, LLC
- Felix Management Associates, LLC
- NYPA Fund I, LLC
- NYPA Fund II, LLC
- NYPA Management Associates, LLC

8

2. All known investments of the Receivership Entities to the best of the Receiver's knowledge and belief. These investments, with the exception of Addepar, are held with the so-called "Purchase Funds" (Clear Sailing IV, Clear Sailing V, and Equity Acquisition Corp. ("EAC"). They are as follows:

- Addepar, Inc.
- Airbnb, Inc.
- Badgeville, Inc.
- Bloom Energy, Inc.
- Candi Controls, Inc.
- Cloudera, Inc.
- Dropbox, Inc.
- Evernote, Inc.
- Flurry, Inc.
- Glam, Inc.
- Jawbone, Inc.
- Lookout, Inc.
- Lyft, Inc.
- Mongo DB, Inc.
- Palantir, Inc.
- Pinterest, Inc.
- Practice Fusion, Inc.
- Snapchat, Inc.
- Square, Inc.
- Uber, Inc.
- Big Ten
- Series X

3. All known bank accounts of the Defendant Entities, to the best of the Receiver's knowledge and belief:

|   | ACCOUNT NAME | ACCOUNT # | BALANCE |
|---|---|---|---|
| 1 | SRA Management Associates LLC | TD Bank-8771 | $ 147.72 |
| 2 | SRA I LLC | TD Bank-8804 | $ 37,109.51 |
| 3 | SRA II LLC | TD Bank-8797 | $ 174.11 |
| 4 | SRA III LLC | TD Bank-8789 | $ 135.82 |
| 5 | Saddle River General Account LLC | TD Bank-8846 | $ 4,029.64 |
| 6 | Clear Sailing Group V LLC | TD Bank-2096 | $ - |
| 7 | Clear Sailing Group IV LLC | TD Bank-9076 | $ 38,080.53 |
| 8 | NYPA Fund I LLC | TD Bank-7543 | $ 58.10 |
| 9 | NYPA Fund II LLC | TD Bank-7551 | $ 75.00 |
|   |   |   | $ 79,810.43 |

**E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for: forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments):**

To the best of its knowledge and belief, the Receiver is unaware of any liquidated or unliquidated claims held by the Receivership Estate as of the date of this Fourth Quarterly Report. Note: Please refer to Section A of this Report, specifically to the "Stock Redemptions" paragraph, for additional information.

**F. A list of all known creditors that includes their addresses and the amounts of each claim:**

Per the direction of the Court, on September 28, 2017, the Receiver, in cooperation with the IG and the SEC, prepared a Proof of Claim Form which it has submitted to the Court and is soliciting quotes from a Claims Agent who would be tasked with the collection and distribution of claims against the Estate.

**G. The status of Creditor Claims Proceedings, after such Proceedings have commenced:**

The Receiver has not engaged in a claims process as of the date of this Fourth Quarterly Report. Please refer to Section F for further details.

**H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the reasons for the recommendations:**

The Receiver has made significant progress in administering the Receivership Estate and analyzing and understanding the issues at hand. The Receiver is in the midst of carrying out its duties. As reported above, the Receiver and the SEC proposed the Joint Plan of Distribution to minimize risk to all investors and, in the face of commingling, to provide a fair and equitable distribution. The SEC and the Receiver look to (i) preserve the value of securities that have entered the public markets by selling them and distributing their proceeds, and (ii) and sell and redistribute the proceeds of the remaining illiquid securities. Currently before the Court is an alternative Plan proposed by the IG that would terminate the duties of the Receiver. While the Receiver does not support it as it does not represent the most economic method of Estate management and puts the assets in the hands of insiders of the Defendants, the Receiver is the appointee of the Court and performs its duties at the Court's instruction and direction. The Receiver's recommendation is to continue the Receivership so that it can thoroughly complete its duties as instructed by the Order Appointing the Receiver on October 11, 2016.

## UPCOMING WORK OF THE RECEIVERSHIP

The primary upcoming task of the Receiver is to address any questions by investors and creditors of the Defendants and, together with the SEC, to address objections and oppositions to the POL jointly filed by the Receiver and the SEC, as well as to execute the Order of the Court as delivered by Judge Chen on September 28th, 2017, as described in section A of this Report.

Additional upcoming work of the Receiver includes the redemption of the Snap, Inc., and Cloudera, Inc., shares due to the Estate and hold them per the instructions of this Court. As the Court is aware from the Receiver's Third Quarterly Report (pages 3 and 4) Cloudera and Snap, are now both out of their "lockup period" and can be distributed as soon as AST is prepared to deliver the unrestricted shares, either to the Receiver or the SRA shareholders to whom they would be otherwise distributed. The Receiver has been attempting to get this process completed with AST during the past month.

The Receiver needs the Court's guidance on whether to hold the shares of Snap and Cloudera until a decision is reached on the pending Joint Plan, or to liquidate those shares in the market to cash in order to eliminate any further risk caused by holding them.

Under the current receivership order, the Receiver may sell the Snap and Cloudera shares on the public markets without further action by the Court. The proceeds from that sale may not be distributed,

however, without court approval and a good faith effort to locate all investors in those shares. The Receiver wishes the Court to address this issue at the November 16th hearing to provide guidance on the course the Receiver should take.

## Exhibit A

|  | For quarter ended September 30, 2017 | Cumulative since October 11, 2016 |
|---|---|---|
| **Receiver's Receipts** | - | $1,665,219.77 |
| **Receiver's Disbursements** | ($20,000) | ($20,000) |
| **TOTAL** | **($20,000)** | **$1,645,219.77** |
| Subsequent Payments To Receiver and Counsel |  | ($ 488,273.20)[7] |
| **Cash Balance as of November 9, 2017** |  | **$1,156,946.57** |

---

[7] Since the close of the time period for which this report is being submitted, the Receiver has made payments on October 4, 2017 to itself and October 16, 2017 to its counsel, per the approval of the Court in its September 28, 2017 Minute Order

12