1   JOHN W. COTTON (SBN 54912)
    Email:  JCotton@gghslaw.com
2   GARTENBERG GELFAND & HAYTON LLP
    15260 Ventura Blvd., Suite 1920
3   Sherman Oaks, CA 91403
    (213) 542-2100
4   (818) 292-0898

5   Counsel to Receiver Sherwood
    Partners Inc.

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10  SECURITIES AND EXCHANGE          )   Case No.  3:16-cv-1386
    COMMISSION,                      )
11                                   )   **NOTICE OF LODGING OF**
               Plaintiff,            )   **RECEIVER'S QUARTERLY**
12                                   )   **REPORT TO THE COURT**
               v.                    )   **FOR THE QUARTER ENDED**
13                                   )   **MARCH 31, 2018**
    JOHN V. BIVONA; SADDLE RIVER     )
14  ADVISERS, LLC; SRA               )   Date:  No Date
    MANAGEMENT ASSOCIATES, LLC;      )   Time:  No Time
15  FRANK GREGORY MAZZOLA            )   Judge:  Edward M. Chen
                                     )
16             Defendants, and       )
                                     )
17                                   )
    SRA I LLC; SRA II LLC; SRA III
18  LLC; FELIX INVESTMENTS,
    LLC; MICHELE J. MAZZOLA;
19  ANNE BIVONA; CLEAR
    SAILING GROUP IV LLC;
20  CLEAR SAILING GROUP V LLC,

21             Relief Defendants.

22  _____

23

24       The Receiver in the above matter, Sherwood Partners, Inc. ("the

25  Receiver") pursuant to this Court's Order of October 11, 2016 ("the Order"),

26  has been charged with the filing of quarterly reports advising the Court of the

27  status of its work for the most recently ended quarter, as specified by Sec. XIII

28  of the Order. Attached hereto as Exhibit A is the Receiver's Sixth Quarterly

                                     1

1  Report to the Court for the period January 1, 2018 to March 31, 2018,

2  regarding specified activities undertaken during that quarter.

3

4

5                                GARTENBERG, GELFAND & HAYTON LLP

6  April 30, 2018

7

8                                     /s/ John W. Cotton
                                      John W. Cotton
9                                     Counsel to the Receiver

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

# SHERWOOD
## Partners, Inc.

Sherwood Partners, Inc.  |  www.shrwood.com

Peter Hartheimer
Direct: (212) 333 0711
Email: p.hartheimer@shrwood.com

Hon. Edward M. Chen
United States District Court
Northern District of California
Courtroom 5
United States Courthouse
450 Golden Gate Ave.
San Francisco, California 94102

Re: Securities and Exchange Commission v. John V. Bivona, *et al.,* Case No. 16-cv-01386-EMC

Hon. Edward M. Chen:

Attached please find the Sixth Quarterly Report of the Receiver in the matter of the Securities and Exchange Commission v. John V. Bivona, et al., Case No. 16-cv-01386-EMC.

Please note that portions of this Sixth Quarterly Report are based upon financial and other information provided to the Receiver by the Defendants of Saddle River Advisors, LLC, SRA Management Associates, LLC, SRA I, LLC, SRA II, LLC, SRA III, LLC, Clear Sailing Group IV, LLC, Clear Sailing Group V, LLC, Felix Multi Opportunity Fund I, LLC, and Felix Multi Opportunity Fund II, LLC.

This Sixth Quarterly Report has been prepared pursuant to the terms of the Order Appointing the Receiver.

Sincerely,

Peter Hartheimer
Sherwood Partners, Inc.
Representative of the Receiver
May 1, 2018

**Securities and Exchange Commission v. John V. Bivona, *et al.,* Civil Action No. 3:16-cv-01386**

**Receiver's Sixth Quarterly Report for the quarter ended March 31, 2018**
**May 1, 2018**

The Receiver in the above matter, Sherwood Partners, Inc. ("Receiver" or "Sherwood"), hereby provides its Sixth Quarterly Report ("Report") to the Court on the progress of its administration of the Receivership Estates of the Defendants and the stipulating affiliated entities[1], for the period January 1, 2018 to March 31, 2018. As the Court is aware, the Receiver was appointed on October 11, 2016, pursuant to this Court's Order ("Order"), which charged it with administering the Receivership Estates of Saddle River Advisors, LLC's holding companies, SRA I, LLC, SRA II, LLC, SRA III, LLC, (the "SRA Funds") and Clear Sailing Group IV, LLC and Clear Sailing Group V, LLC (the "Clear Sailing Funds"), which are, collectively, the "Receivership Defendants." The stipulating affiliated entities agreed as well to their administration by the Receiver. Prior to this Report, the Receiver has filed a total of five quarterly reports on the following dates: February 1, 2017-Court Doc [168], May 16, 2017-Court Doc [183], August 14, 2017-Court Doc [216], November 9, 2017-Court Doc [271] and January 31, 2018-Court Doc [306]. These are available for review on the Receiver's website.

Pursuant to the Order, Sec. XIII, the Receiver is to provide the following information on a quarterly basis:

A. A summary of the operations of the Receiver

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the Receivership Estate

C. A schedule of the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Report), with one column for the quarterly period covered and a second column for the entire duration of the Receivership

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims, including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments. Note: Please refer to Section A of this Report, specifically to the "Stock Redemptions" paragraph, for additional information

F. A list of all known creditors with their addresses and the amounts of their claims

G. The status of Creditor Claims Proceedings, after such proceedings have been commenced

H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the basis for the recommendations.

---

[1] The stipulating affiliated entities include FMOF I, FMOF II, FMOF Management, NYPA I, NYPA II, and NYPA III, each as defined by this Court in its Order on October 11, 2016.

## A. Summary of Operations of the Receiver

Since the submission of the Fifth Quarterly Report on January 31, 2018, the Receiver continued to fulfill the requirements of the Order. The following is a summary of what has transpired between January 1, 2018 and March 31, 2018:

**I. ASSET MANAGEMENT**

**Stock Redemptions:** At the date of Sherwood's appointment, the Defendants' assets consisted of investments in 21 companies that are or were pre-IPO and two companies that had already experienced a liquidity event resulting from their IPOs. Details and updates regarding efforts undertaken by the Receiver related to investments during the period of this Report are outlined below. An additional liquidity event occurred during the period of this Report.

- o **Candi Controls, Inc.** ("Candi") - SRA controls 2,179,390 shares of Candi, which represent approximately 25% of the company's Series A preferred stock. On March 23, 2018 a group of creditors filed an involuntary petition for relief under Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Delaware against Candi. On March 27, 2018 the Court granted the requested relief. On March 28, 2018 Candi provided a declaration[2] that it had amassed an amount of $6,750,000 in convertible or unsecured debt. Since the Debtor is a technology company with no revenue, its only available option to raise capital was through debt financing or additional equity offerings. According to filed Court Documents, they were unsuccessful in raising additional capital and determined that a sale of the company's assets was the best course of action. In February 2018 Candi received an offer from Altair Engineering, Inc. ("Altair") to purchase substantially all the assets of the company through a bankruptcy sale. Since the Court has earlier granted relief on March 27, 2018, Candi filed a motion with the Bankruptcy Court to approve the sale of the company to Altair for a gross amount of $2,600,000[3]. This amount is significantly below the amount of unsecured debt. Therefore, there are insufficient funds to pay any non-convertible equity holders of which SRA is one. The sale was approved by the Bankruptcy Court on April 25, 2018.  Based on the above, neither SRA nor Candi shareholders will receive any benefit from the Candi investment.

- o **Cloudera, Inc.** ("Cloudera") - Cloudera issued an IPO on April 28, 2017 and the "lock-up" period expired on October 25, 2017. The Receiver is no longer restricted from recovering the value of the Cloudera asset.

    - The Cloudera shares reside in two places: stock certificates under the Receiver's control and with the transfer agent, American Stock Transfer ("AST")
    - The Receiver has sent a demand letter to the transfer agent requesting that all shares held in the name of the Defendant Entity be transferred to the name of the Receivership Estate
    - A portion of Cloudera is owned by Equity Acquisition Corporation ("EAC"), a related Bermuda Fund.  Please refer to See Section VI of this Report for additional information

---

[2] See Case No. 18-10679 (CSS)- Declaration of Douglas Klein in support of First Day Motions
[3] See Case No. 18-10679 (CSS)- Debtor's Motion for Orders approving: (A) Notice and Bidding Procedures for sale of substantially all Estate assets and (B) Sale of substantially all Estate assets

- o **Dropbox, Inc. ("Dropbox")** - Dropbox issued an IPO on March 22, 2018. The "lock-up" period is set to expire on September 19, 2018. The Receivership Estate holds 69,000 shares.

- o **Practice Fusion, Inc. ("Practice Fusion")** - Practice Fusion was acquired in January 2018 for $100 million by Allscripts Healthcare Solutions, Inc. ("Allscripts"), an electronic health records provider.[4] The Receiver has written the General Counsel of Practice Fusion and has instructed its counsel to write to the acquiring company, Allscripts to inquire how the Receivership Estate's interest in Practice Fusion is being treated. The Receiver will continue to follow up and report to the Court.

**Solis Associates Fund, LLC ("Solis")** – At the February 8th, 2018 Status Hearing, the Court determined that Solis will not be a Receivership entity, but instead should be managed separately by the Receiver, as the Receiver is a significant investor in Solis. The Court ordered: *"The SEC and Receiver also explained that they have determined that the Solis Associates Fund, not currently managed by the Receivership, possesses approximately 85,000 shares in Bloom Energy owed to the Receivership entities. The SEC and Receiver indicate that transfer of those shares from Solis Associates to the appropriate Receivership Entity will not prejudice the other investors in Solis Associates Fund because there are sufficient assets to compensate all investors. The SEC and Receiver proposed that the Receiver manage Solis Associates Fund, to which no party objected and which the Court approved."* Please refer to Court Document 309, available on the Receiver's website.

The SEC has also requested an estimated budget in connection with the Receiver's management of Solis to determine the extent to which a fulsome process should be run that includes noticing, a claims process and a distribution of Solis' assets.

**Investment Banker Retention (Valuation):** Per instructions of the Court, the Receiver, together with the Securities and Exchange Commission ("SEC") and the Investors' Group ("IG") represented by Jonathan K. Levine of Pritzker Levine, LLP, collectively participated in a selection process of an investment banker. Theodore A. Griffinger of Lubin Olson & Niewiadomski LLP, counsel representing Global Generations ("GG"), consented to the selection. The main purpose for the retention of an investment banker is to provide all the interested parties with a market research analysis and valuation of the Receivership's assets. The selection and retention of the investment banker was formalized. The name of the investment banker is Oxis Capital, Inc. ("Oxis"). As part of the engagement, Oxis was to prepare an analysis of different market options and to provide a report to the Court. Oxis' report and conclusions are separate and apart from the monetization of any securities. On January 23, 2018, Oxis issued its final report on potential recoveries of certain assets, to the Receiver and the SEC. This has been submitted to the Court under seal.

## II. INVESTOR RELATIONS AND CREDITORS

The Receiver continues to conduct regular communication with the Defendants' investors. The Receiver maintains a log of these communications along with any additional information investors choose to share with the Receiver. The Receiver has made every effort to provide accurate and concise information on the case status and its progress. The Receiver set up a website reflecting the most up-to-date information and

---

[4] "Allscripts to acquire Practice Fusion for $100 million"-
www.modernhealthcare.com/article/20180108/NEWS/180109933

Court filings in the matter: http://www.shrwood.com/saddleriver. In certain cases, the Receiver has been asked to conduct meetings with investors regarding their perceived unique circumstances surrounding investments. The Receiver has been conducting a claims process to best assist the Court in determining a Plan of Distribution.

The SEC, IG and counsel for GG, pursuant to the Court's request, have been directed to work together in an attempt to resolve all, or some of the IG's objections to the Liquidation Plan.

**Mandatory Tax Filings:** In performing its Receiver's duties, the Receiver engaged an accounting firm to prepare the tax returns for the various entities that are now managed by the Receiver. The returns have been prepared for the tax years of 2015 and 2016.  Prior to the initiation of the Receivership, the last tax returns filed had been for the tax year 2014. The Receiver has expanded significant efforts to gather available records of the Defendant Entities and the Affiliated Entities, in order to make the necessary information available to the new tax preparer.[5] This was a time-consuming task due to the incomplete and nonexistent records of several entities, as provided to the Receiver when they were surrendered on October 11, 2016.

As of the date of this Report, the tax returns for SRA I, LLC ("SRA I"); SRA II, LLC ("SRA II"); SRA III, LLC ("SRA III") and SRA Management Associates, LLC ("SRA Management") for the tax years 2015 and 2016 have been filed with the tax authorities.  The Receiver continues to work with the new tax preparer to prepare and finalize the tax returns for the same entities for tax year 2017.

Given that the tax returns above for the tax years 2015 and 2016 were filed late, the Internal Revenue Service ("IRS") may file a claim for interest and penalties, as a result of the late filing. The IRS has not assessed a claim yet, however, the Receiver is aware that this is a possibility.

It is the Receiver's understanding that the potential penalty amount for both tax years, 2015 and 2016 could total $1,488,241 or $744,120 for each tax year.

The estimated penalties were computed by the accounting firm that prepared the 2015 and 2016 tax returns, as follows: a statutory penalty per member of $195 for a maximum of 12 months of late filing of the tax returns. Since the aggregate number of members in SRA I, II, III and SRA Management is 318, it results in potential penalties of $744,120 for each of the two tax years, 2015 and 2016, respectively.

The Receiver has faced this issue in another recent matter and had the IRS imposed penalties successfully abated. Although, a taxpayer may try to get penalties abated under reasonable cause, it is not guaranteed. It is up to the IRS to determine whether there is a reasonable cause. The IRS will consider all facts and circumstances.

The LLCs have either reported losses or $0 income in the years 2015 and 2016, and accordingly, the IRS has not incurred financial losses nor been harmed by the late filing of these tax returns.

The late filing of the 2015 and 2016 tax returns was due to reasonable cause and not willful neglect by the taxpayer which is a component of the IRS abatement process.  As noted above, the Receiver was at a

---

[5] The Defendant and Affiliated entities can be identified in the order to appoint the Receiver and are: Defendant Entities - SRA Management Associates, LLC, SRA I, SRA II & SRA III, LLC, and Clear Sailing Group IV & V, LLC, Affiliated Entities - FMOF I & II LLC, FMOF Management Associates, LLC., NYPA I & II LLC, NYPA Management Associates, LLC.

significant disadvantage in providing appropriate information to the tax preparer due to the status of the books and records of the various entities.

Under Section 6724(a) of the Internal Revenue Code ("Code"), "no penalty shall be imposed under this part with respect to any failure, if it is shown that such failure is due to reasonable cause and not to willful neglect." Section 6724 reasonable cause relief applies to statements furnished by certain pass-through entities.
Generally, Treasury Regulation §301.6724-1 states that reasonable cause may be established by:

1. Showing that the filer acted in a responsible manner both before and after the failure occurred; and,
2. The filer establishes that the failure arose from events beyond the filer's control or that there were significant mitigating factors

**Notice Process:** At the direction of the Court, the Receiver has proceeded to conduct a public noticing process by publishing a notice in the Wall Street Journal ("WSJ") and Wall Street Journal Online ("WSJ Online"), in order to maximize the chances of capturing the majority of the investors in the Defendant entities.

**Proofs of Claim Process:** The proofs of claims process was launched in the fourth quarter of 2017 at the direction of the Court, per the Status Hearing held on November 16, 2017. In order to run an efficient claims process, the Receiver, with the approval of the Court, has retained the services of JND Corporate Restructuring ("JND"). The Order retaining JND, and the Minute Order approving the increase in their fees can be found on the Receiver's website. Please refer to Court Document 282 "Receiver Application for Retention of Claims Administrator" and Court Document 332, "Minute Order on Application Hearing 4-19-18."

On March 21, 2018, the Receiver lodged its First Preliminary Claims Report (Court Document 319, available on the Receiver's website).

In summary, the process resulted in 923 investor claims and 7 non-investor claims. Investors' claims amount to $74,937,303. Non-investors claims amount to $66,098,763. Per the Court Status Hearing on February 8th, 2018 and the subsequent Court tele-conference on April 19, 2018, the Receiver and JND are instructed to validate claims and provide the Court the results of validation seven days prior to the next scheduled Status Hearing on June 21, 2018.

| Description | Totals (Validated and Non-Validated) | Validated to Date | Non-Validated | % Validated |
|---|---|---|---|---|
| Number of Investor POCs received | 923 | 374 | 549 | 41% |
| Number of Non-Investor POCs received | 7 | 0 | 7 | 0% |
| Total amount claimed by Investor claimants ($) | $74,937,303 | $27,356,851 | $47,580,452 | 37% |
| Total number of shares claimed by investor claimants | 13,278,693 | 4,144,294 | 9,134,399 | 31% |
| Total amount claimed by Non-Investor claimants ($) | $66,098,763 | $0 | $66,098,763 | 0% |

| | |
|---|---|
| Total Combined number of POCs received (Investors and Non-Investors) | 930 |
| Total Combined amount claimed by Investors and Non-Investors | $141,036,066 |

**Newsletter:** In an effort to provide updates and information even more frequently, the Receiver prepared the first issue of its periodic newsletter, which is available on the Receiver's website at http://www.shrwood.com/saddleriver.

### III. RECORDS MANAGEMENT

The Receiver has continued to update the Receiver's website in a timely manner by providing all interested parties with the latest Court Documents and relevant information.

### IV. CASE SUPPORT AND ADMINISTRATION

The Receiver has spent time administering the matter to ensure compliance with the Order. The Receiver's work during this period has included (a) the preparation of the Fifth Quarterly Report of the Receiver, dated January 31, 2018, and (b) the preparation of the fourth fee application of the Receiver for the period October 1, 2017 to December 31, 2017.

A Status Hearing was held on February 8, 2018. As a result of the Status Hearing, the Court issued a Minute Order (the "Order"), referenced by Court Document Number 309. According to the Order, the Receiver was expected to complete its review of the claims and submit a report to the Court in three weeks from that date. Another matter addressed by the Order concerned Solis and its management by the Receiver. In the same Order, the Court ordered the parties to meet and confer and submit a stipulation to the Court regarding retaining of an investment banker to solicit bids for a partial sale of the investment portfolio on the secondary market. The Judge also ordered that the SEC submit its proposed amendments to its plan of distribution by March 8, 2018 with responses due by March 15, 2018.

The next Status Hearing is scheduled for June 21, 2018.

**Fee Applications:** The Receiver's fourth fee application for the quarter ending December 31, 2017 was approved by the Court on March 13, 2018. The Receiver's fee applications have been subject to a 20% hold back.

As of the date of this Report, the Receiver has prepared and submitted for review by the SEC, its fifth fee application for the quarter ending March 31, 2018.

**Receiver's Professionals Fee Application:** During the period of this Report, the Receiver issued payments, with prior approval of this Court, to the different professionals that have been assisting the Receiver. These professionals include local counsel in New York, Archer and Greiner P.C. (formerly, DiConza Traurig Kadish, LLP), local counsel in New Jersey, McDonnell Crowley, LLC, local counsel in Delaware, Ashby Geddes P.A. and Oxis, investment banker. The Receiver paid a total $63,274.47 to professionals during this reporting period.

*Remainder of Page Intentionally Left Blank*

## V. SUPPORT OF AND REPORTING TO THE SEC

As part of the administrative obligations, Sherwood has had regular dialog with the SEC. Sherwood has conducted regular meetings with the SEC and has assisted and received support with the following activities:

(a) Obtaining guidance from the SEC in the claims analysis and reconciliation process, in order to outline suggested answers to some of the following questions, after the claims are validated:
   1. Each claimant's interest value
   2. Claims by investors who directed the investment funds towards a specific investment, but their funds were not utilized to buy that specific investment
   3. Feasibility of a partial portfolio sale, as some investors favor withdrawing their interests now
   4. Compensation of investors favoring withdrawing their interests now, as to the Receivership Estate has limited liquidity

(b) Reviewing and revising the SEC's proposed Amended Plan of Distribution ordered by the Court on February 9th: "The SEC shall submit its proposed amendments to its plan of distribution to the Court, including its argument in support on the basis of the completed notice and claim process and information gathered by retained investment bankers." Please refer to Court Document 309, available on the Receiver's website

## VI. CLAIMS AND LITIGATION FOR THE BENEFIT OF THE ESTATE

In addition to the monetization and recovery of assets, the Receiver will need to pursue remedies, consensual and legal, to recover funds. These funds are compensation due to the Receivership Estate by misappropriation.

During this reporting period, the Receiver has conducted meetings with the principals of EAC to determine the cross-ownership of investments between the Receivership Estate and EAC. There has also been legal correspondence between EAC's and Receiver's counsel.

The Receiver is endeavoring to determine the extent of those investments owed to the Receivership Estate and those owed to EAC by the Receivership Estate.

*Remainder of Page Intentionally Left Blank*

## B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the Estate:

As of March 31, 2018, the accrued administrative expenses of the Defendant entities are as follows:

| Pre-Appointment Accrued Administrative Expenses | |
| --- | --- |
| | |
| Office Expenses | $61,528.60 |
| Salaries-SRA Management | $64,927.31 |
| Expenses - John Bivona | $10,180.37 |
| Expenses - Nina Dazzo | $3,018.15 |
| Expenses - Vito Fredella | $1,555.41 |
| Expenses - Susan Diamond | $2,540.72 |
| Registered Agent- National Corporate Research | $2,036.00 |
| State of NJ Annual Report | $105.00 |
| Delaware delinquent LLC taxes | $6,360.00 |
| | $152,251.56 |
| | |
| Post-Appointment Accrued Administrative Expenses | |
| Temporary Administrative Labor | $2,746.08 |

## C. A Schedule of all the Receiver's Receipts and Disbursements:

The detail of all receipts and disbursements as of the end of the first quarter of 2018 is reflected on the attached Exhibit A. The Receiver's cash balance as of March 31, 2018 is $1,282,701.75. The detail of the Receiver's Receipts and Disbursements through March 31, 2018 is reflected in the schedule below:

| Receipts | Amount |
| --- | --- |
| Sale of Square shares | $1,665,219.77 |
| Clawback of Square excess misdistributions | 120,010.22 |
| Anne Bivona settlement | 500,000.00 |
| Interest Income | 7,896.07 |
| Dividend Income | 3,149.29 |
| Total Receipts | $ 2,296,275.35 |

| Disbursements | Amount |
| --- | --- |
| Settlement with the SEC Receiver in ND of Illinois | ($20,000.00) |
| Professional Fees (Sherwood as Receiver & Monitor and Receiver's counsel) | (890,517.13) |
| Professional Fees (Receiver's local counsel) | (38,274.47) |
| Investment Banker | (50,000.00) |
| Claims Agent | (1,000.00) |
| Consultant-Advertising Agency | (13,752.00) |
| Miscellaneous | (30.00) |
| Total Disbursements | ($1,013,573.60) |

| Balance as of March 31, 2018 | $ 1,282,701.75 |
| --- | --- |

## D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended:

**1.** All Defendant Entities' assets subject to the SEC's stipulated Order for Appointment of Receiver. These assets would be those of the Defendant and stipulated affiliated entities. They are as follows:

- SRA I, LLC
- SRA II, LLC
- SRA III, LLC
- Saddle River Advisors, LLC
- SRA Management, LLC
- Clear Sailing Group IV, LLC
- Clear Sailing Group V, LLC

- Felix Multi-Opportunity Fund I, LLC
- Felix Multi-Opportunity Fund II, LLC
- Felix Management Associates, LLC
- NYPA Fund I, LLC
- NYPA Fund II, LLC
- NYPA Management Associates, LLC

**2.** All known investments of the Receivership Entities to the best of the Receiver's knowledge and belief. These investments, with the exception of Addepar, are held with the so-called "Purchase Funds" (Clear Sailing IV, Clear Sailing V, and EAC).

They are as follows:

- Addepar, Inc.
- Airbnb, Inc.
- Badgeville, Inc.
- Bloom Energy, Inc.
- Candi Controls, Inc.
- Cloudera, Inc.
- Dropbox, Inc.
- Evernote, Inc.

- Flurry, Inc.
- Glam, Inc.
- Jawbone, Inc.
- Lookout, Inc.
- Lyft, Inc.
- Mongo DB, Inc.
- Palantir, Inc.
- Pinterest, Inc.

- Practice Fusion, Inc.
- Snapchat, Inc.
- Square, Inc.
- Uber, Inc.
- Big Ten
- Series X

**3.** All known bank accounts of the Defendant Entities, to the best of the Receiver's knowledge and belief:

|   | ACCOUNT NAME | ACCOUNT # | | BALANCE |
|---|---|---|---|---|
| 1 | SRA Management Associates LLC | TD Bank-8771 | $ | 147.72 |
| 2 | SRA I LLC | TD Bank-8804 | $ | 37,109.51 |
| 3 | SRA II LLC | TD Bank-8797 | $ | 174.11 |
| 4 | SRA III LLC | TD Bank-8789 | $ | 135.82 |
| 5 | Saddle River General Account LLC | TD Bank-8846 | $ | 4,029.64 |
| 6 | Clear Sailing Group V LLC | TD Bank-2096 | $ | - |
| 7 | Clear Sailing Group IV LLC | TD Bank-9076 | $ | 38,080.53 |
| 8 | NYPA Fund I LLC | TD Bank-7543 | $ | 58.10 |
| 9 | NYPA Fund II LLC | TD Bank-7551 | $ | 75.00 |
| | | | $ | 79,810.43 |

**E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for: forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments):**

To the best of its knowledge and belief, the Receiver is unaware of any liquidated or unliquidated claims held by the Receivership Estate as of the date of this Report. Please refer to Section A of this Report, specifically to the "Stock Redemptions" paragraph, for additional information. The Receiver believes that EAC holds shares in investments on behalf of the Receivership Estate, which remain to be determined.

**F. A list of all known creditors that includes their addresses and the amounts of each claim:**

At the direction of the Court, the Receiver has retained a claims agent, JND Corporate Restructuring ("JND"). JND has been tasked with running and administering a claims process on behalf of the Receivership Estate. A proof of claim form was developed and approved by the Court. In addition, a deadline to submit claims was set for January 31, 2018. After January 31, 2018, JND and the Receiver have commenced conducting a comprehensive review of all the claims filed. Please refer to the "Proofs of Claim Process" section in this Report.

**G. The status of Creditor Claims Proceedings, after such Proceedings have commenced:**

The claims process was initiated in December 2017. On March 21, 2018, the Receiver filed its First Preliminary Claims Report. Subsequent to the end of the first quarter of 2018, on April 12, 2018, the Receiver filed an application to pay JND. A detailed account of their services performed can be found in Court Document 326-1, "Declaration of Support to Pay Administrative Fees of JND. Please refer to Section F above and the "Proofs of Claim Process" section of this Report, for further details.

**H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the reasons for the recommendations:**

The Receiver has made significant progress in administering the Receivership Estate and analyzing and understanding the issues at hand. The Receiver is in the midst of carrying out its duties. The Receiver and the SEC proposed a Joint Plan of Distribution to minimize risk to all investors and, in the face of commingling, to provide a fair and equitable distribution. The IG has submitted an alternative plan that would terminate the duties of the Receiver. While the Receiver does not support the plan submitted by the IG, as it does not represent the most economic method of Estate management and essentially puts back the assets of the Estate in the hands of insiders of the Defendants, the Receiver is the appointee of the Court and performs its duties at the Court's instruction and direction. The Receiver's recommendation is to continue the Receivership, so that it can thoroughly complete its duties as instructed by the Order Appointing the Receiver on October 11, 2016.

**UPCOMING WORK OF THE RECEIVERSHIP**

The primary upcoming tasks of the Receiver include the completion of the claims process, review of claims filed, preparation of tax returns for tax year 2017, continuing to address questions from investors and to update the Receiver's website, as well as providing periodic updates to all interested parties, and challenge any penalties imposed for late filing of prior year tax returns. At the direction of the Court, the Receiver has been instructed to meet and confer to arrive at a consensual proposed distribution plan or otherwise, to propose a schedule for the Court to hear such dispute. The Court directed the parties to meet and confer about the dispute over the possible shortfall of Palantir, Inc. shares. Please refer to Court Document 322, "Minute Order on Application Hearing 4-19-18."

Pending the Court's instructions, potential additional upcoming work of the Receiver includes either distribution or liquidation of Estate assets or conversely transition of the Estate to a new fund manager. As far as the sale of Practice Fusion to Allscripts is concerned, the Receiver must determine the recovery on behalf of the Receivership Estate.

**Exhibit A**

|  | For quarter ended March 31, 2018 | Cumulative since October 11, 2016 |
|---|---|---|
| **Receiver's Receipts** | $503,272.01 | $2,296,275.35 |
| **Receiver's Disbursements** | ($374,301.93) | ($1,013,573.60) |
| **TOTAL** | **($128,970.08)** | **$1,282,701.75** |
| **Cash Balance as of March 31, 2018** |  | $1,282,701.75 |

13