JOHN W. COTTON (SBN 54912)
Email: JCotton@gghslaw.com
GARTENBERG GELFAND & HAYTON LLP
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA 91403
(213) 542-2100
(818) 292-0898

Counsel to Receiver Sherwood Partners Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN V. BIVONA; SADDLE RIVER ADVISERS, LLC; SRA MANAGEMENT ASSOCIATES, LLC; FRANK GREGORY MAZZOLA<br><br>　　　　Defendants, and<br><br>SRA I LLC; SRA II LLC; SRA III LLC; FELIX INVESTMENTS, LLC; MICHELE J. MAZZOLA; ANNE BIVONA; CLEAR SAILING GROUP IV LLC; CLEAR SAILING GROUP V LLC,<br><br>　　　　Relief Defendants. | Case No. 3:16-cv-1386<br><br>**NOTICE OF LODGING OF RECEIVER'S QUARTERLY REPORT TO THE COURT FOR THE QUARTER ENDED JUNE 30, 2018**<br><br>Date: No Date<br>Time: No Time<br>Judge: Edward M. Chen |

　　　　The Receiver in the above matter, Sherwood Partners, Inc. ("the Receiver") pursuant to this Court's Order of October 11, 2016 ("the Order"), has been charged with the filing of quarterly reports advising the Court of the status of its work for the most recently ended quarter, as specified by Sec. XIII of the Order. Attached hereto as <u>Exhibit A</u> is the Receiver's Seventh Quarterly

Report to the Court for the period April 1, 2018 to June 30, 2018, regarding specified activities undertaken during that quarter.

GARTENBERG, GELFAND & HAYTON LLP

August 2, 2018

          */s/ John W. Cotton*
          John W. Cotton
          Counsel to the Receiver

# Exhibit A

**SHERWOOD** Partners, Inc.

Sherwood Partners, Inc. | www.shrwood.com

Georgiana Nertea
Direct: (212) 930 2247
Email: gnertea@shrwood.com

Hon. Edward M. Chen
United States District Court
Northern District of California
Courtroom 5
United States Courthouse
450 Golden Gate Ave.
San Francisco, California 94102

Re: <u>Securities and Exchange Commission v. John V. Bivona, *et al.*, Case No. 16-cv-01386-EMC</u>

Hon. Edward M. Chen:

Attached please find the Seventh Quarterly Report of the Receiver in the matter of the Securities and Exchange Commission v. John V. Bivona, *et al.*, Case No. 16-cv-01386-EMC.

Please note that portions of this Seventh Quarterly Report are based upon financial and other information provided to the Receiver by the Defendants of Saddle River Advisors, LLC, SRA Management Associates, LLC, SRA I, LLC, SRA II, LLC, SRA III, LLC, Clear Sailing Group IV, LLC, Clear Sailing Group V, LLC, Felix Multi Opportunity Fund I, LLC, and Felix Multi Opportunity Fund II, LLC.

This Seventh Quarterly Report has been prepared pursuant to the terms of the Order Appointing the Receiver.

Sincerely,

Georgiana Nertea
Sherwood Partners, Inc.
Representative of the Receiver
August 1, 2018

**Securities and Exchange Commission v. John V. Bivona, *et al.,* Civil Action No. 3:16-cv-01386**

**Receiver's Seventh Quarterly Report for the quarter ended June 30, 2018**
**August 1, 2018**

The Receiver in the above matter, Sherwood Partners, Inc. ("Receiver" or "Sherwood"), hereby provides its Seventh Quarterly Report ("Report") to the Court on the progress of its administration of the Receivership Estates of the Defendants and the stipulating affiliated entities[1], for the period April 1, 2018 to June 30, 2018. As the Court is aware, the Receiver was appointed on October 11, 2016, pursuant to this Court's Order ("Order"), which charged it with administering the Receivership Estates of Saddle River Advisors, LLC's holding companies, SRA I, LLC, SRA II, LLC, SRA III, LLC, (the "SRA Funds") and Clear Sailing Group IV, LLC and Clear Sailing Group V, LLC (the "Clear Sailing Funds"), which are, collectively, the "Receivership Defendants." The stipulating affiliated entities agreed as well to their administration by the Receiver. Prior to this Report, the Receiver has filed a total of six quarterly reports on the following dates: February 1, 2017-Court Doc [168], May 16, 2017-Court Doc [183], August 14, 2017-Court Doc [216], November 9, 2017-Court Doc [271], January 31, 2018-Court Doc [306] and May 1, 2018-Court Doc [333].

These are available for review on the Receiver's website, https://www.shrwood.com/saddleriver.

Pursuant to the Order, Sec. XIII, the Receiver is to provide the following information on a quarterly basis:

    A. A summary of the operations of the Receiver

    B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the Receivership Estate

    C. A schedule of the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Report), with one column for the quarterly period covered and a second column for the entire duration of the Receivership

    D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended

    E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims, including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments. **Note:** Please refer to **Section A** of this Report, specifically to the ***"Stock Redemptions"*** paragraph, for additional information

    F. A list of all known creditors with their addresses and the amounts of their claims

    G. The status of Creditor Claims Proceedings, after such proceedings have been commenced

---

[1] The stipulating affiliated entities include FMOF I, FMOF II, FMOF Management, NYPA I, NYPA II, and NYPA Management, each as defined by this Court in its Order on October 11, 2016.

H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the basis for the recommendations

## A. Summary of Operations of the Receiver

Since the submission on May 1, 2018, of the Sixth Quarterly Report for the period ending March 31, 2018, the Receiver continued to fulfill the requirements of the Order. The following is a summary of what has transpired between April 1, 2018 and June 30, 2018:

### I. ASSET MANAGEMENT

**Stock Redemptions:** At the date of Sherwood's appointment, the Defendants' assets consisted of investments in 21 companies that are or were pre-IPO and two companies that had already experienced a liquidity event resulting from their IPOs. Details and updates regarding efforts undertaken by the Receiver related to investments during the period of this Report are outlined below. An additional liquidity event occurred during the period of this Report.

- **Bloom Energy, Inc. ("Bloom")** - Bloom filed for an IPO with the SEC on June 12, 2018. As of the date of this Report Bloom has gone public, trading on the New York Stock Exchange ("NYSE") under the symbol BE. The lock-up period is set to expire on January 21, 2019. At that point in time the Receiver will no longer be precluded from recovering the value of the Bloom asset. The Receivership Estate holds 136,000 Bloom shares.

- **Candi Controls, Inc. ("Candi")** - SRA controls 2,179,390 shares of Candi, which represent approximately 25% of the company's Series A preferred stock. On March 23, 2018 a group of creditors filed an involuntary petition for relief under Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Delaware against Candi. On March 27, 2018 the Court granted the requested relief. On March 28, 2018 Candi provided a declaration[2] that it had amassed an amount of $6,750,000 in convertible or unsecured debt. Since the Debtor is a technology company with no revenue, its only available option to raise capital was through debt financing or additional equity offerings. According to filed Court Documents, they were unsuccessful in raising additional capital and determined that a sale of the company's assets was the best course of action. In February 2018 Candi received an offer from Altair Engineering, Inc. ("Altair") to purchase substantially all the assets of the company through a bankruptcy sale. Since the Court has earlier granted relief on March 27, 2018, Candi filed a motion with the Bankruptcy Court to approve the sale of the company to Altair for a gross amount of $2,600,000[3]. This amount is significantly below the amount of unsecured debt. Therefore, there are insufficient funds to pay any non-convertible equity holders of which SRA is one. The sale was approved by the Bankruptcy Court on April 25, 2018. Based on the above, neither SRA nor Candi shareholders will receive any economic return from the Candi investment.

---

[2] See Case No. 18-10679 (CSS)- Declaration of Douglas Klein in support of First Day Motions
[3] See Case No. 18-10679 (CSS)- Debtor's Motion for Orders approving: (A) Notice and Bidding Procedures for sale of substantially all Estate assets and (B) Sale of substantially all Estate assets

- **Cloudera, Inc. ("Cloudera")** - Cloudera issued an IPO on April 28, 2017 and the "lock-up" period expired on October 25, 2017. The Receiver is no longer restricted from recovering the value of the Cloudera asset.
    - The Cloudera shares reside in two places: stock certificates under the Receiver's control and with the transfer agent, American Stock Transfer ("AST")
    - The Cloudera shares are in the process of being transferred to the Receiver's account, pending the processing of the required documents
    - A portion of the Cloudera shares currently in the possession of the Receiver, are owned by Equity Acquisition Corporation ("EAC"). Please refer to See Section VI of this Report for additional information

- **Dropbox, Inc. ("Dropbox")** - Dropbox issued an IPO on March 23, 2018. The "lock-up" period is set to expire on September 19, 2018. The Receiver has initiated the steps to notify the stock transfer agent, as well as the parties of Stock Transfer Agreements, regarding their obligations pursuant to the Court Order appointing the Receiver. The Receivership Estate holds 69,000 shares.

- **MongoDB, Inc. ("MongoDB")** - Mongo issued an IPO on October 19, 2017. The "lock-up" period expired on April 17, 2018. The MongoDB shares are in the process of being transferred to the Receiver's account, pending the processing of the required documents and receipt of shares from the obligee contractually obligated to deliver them under his agreement to do so.

- **Practice Fusion, Inc. ("Practice Fusion")** - Practice Fusion was acquired in January 2018 by Allscripts Healthcare Solutions, Inc. ("Allscripts"), an electronic health records provider. The Receiver has written the General Counsel of Practice Fusion to inquire how the Receivership Estate's interest in Practice Fusion is being treated and what the updated stock valuation amounts to. As a result of the transaction, all 1,595,000 Practice Fusion shares that the Receivership Estate holds are now valued at $15,000.

**Solis Associates Fund, LLC ("Solis")** – At the February 8th, 2018 Status Hearing, the Court determined that Solis will not be a Receivership entity, but instead should be managed separately by the Receiver, as the Receiver is a significant investor in Solis. The Court ordered: *"The SEC and Receiver also explained that they have determined that the Solis Associates Fund, not currently managed by the Receivership, possesses approximately 85,000 shares in Bloom Energy owed to the Receivership entities. The SEC and Receiver indicate that transfer of those shares from Solis Associates to the appropriate Receivership Entity will not prejudice the other investors in Solis Associates Fund because there are sufficient assets to compensate all investors. The SEC and Receiver proposed that the Receiver manage Solis Associates Fund, to which no party objected and which the Court approved."* Please refer to Court Document 309, available on the Receiver's website.

The SEC has also requested an estimated budget in connection with the Receiver's management of Solis to determine the extent to which a fulsome process should be run that includes noticing, a claims process and a distribution of Solis' assets. The Receiver has set up separate books for this fund.

## II. INVESTOR RELATIONS AND CREDITORS

The Receiver continues to conduct regular communication with the Defendants' investors. The Receiver maintains a log of these communications along with any additional information investors choose to share with the Receiver. The Receiver has made every effort to provide accurate and concise information on the case status and its progress. The Receiver set up a website reflecting the most up-to-date information and Court filings in the matter: https://www.shrwood.com/saddleriver. In certain cases, the Receiver has been asked to conduct meetings with investors regarding their perceived unique circumstances surrounding investments.

The Receiver has conducted a claims process to best assist the Court in determining a Plan of Distribution. The claims process commenced in the last quarter of 2017. Please see the *"Proofs of Claim Process"* section below for additional information.

The Receiver, at the direction of the Court, conducts calls on a regular basis with the SEC and the SRA Investor's Group ("IG"), in an attempt to resolve the SRA IG's objections to the proposed Liquidation Plan. The SRA IG purports to represent the interests of approximately 70% of the affected investors.

**Mandatory Tax Filings:** In performing its Receiver's duties, the Receiver engaged an accounting firm to prepare the tax returns for the various entities that are now managed by the Receiver. The returns have been prepared for the tax years of 2015 and 2016. Prior to the initiation of the Receivership, the last tax returns filed had been for the tax year 2014. The Receiver has expanded significant efforts to gather available records of the Defendant, Relief Defendant and Affiliated Entities, in order to make the necessary information available to the new tax preparer.[4] This has been a time-consuming task due to the incomplete and nonexistent records of several entities, as provided to the Receiver when they were surrendered on October 11, 2016.

As of the date of this Report, the tax returns for SRA I, LLC ("SRA I"); SRA II, LLC ("SRA II"); SRA III, LLC ("SRA III") and SRA Management Associates, LLC ("SRA Management") for the tax years 2015 and 2016 have been filed with the tax authorities. The Receiver continues to work with the new tax preparer to prepare and file the tax returns for the same entities for tax year 2017.

Given that the tax returns above for the tax years 2015 and 2016 were filed late, both the Internal Revenue Service ("IRS") and the New York State Department of Taxation ("NYS") have assessed penalties, as a result of the late filing. These assessed penalties amount to $1,511,240, in line with the estimated penalties that were computed by the accounting firm that prepared the 2015 and 2016 tax returns.

The estimated penalties were computed by the accounting firm as follows: a statutory penalty per member of $195 for a maximum of 12 months of late filing of the tax returns. Since the aggregate number of members in SRA I, II, III and SRA Management is 318, it resulted in estimated penalties of $744,120 for each of the two tax years, 2015 and 2016, respectively.

---

[4] The Defendant, Relief Defendant and Stipulating Affiliated entities can be identified in the Order to appoint the Receiver and are: Defendant Entities – SRA LLC, SRA Management LLC; Relief Defendant Entities - SRA I, SRA II & SRA III, LLC, and Clear Sailing Group IV & V, LLC, Stipulating Affiliated Entities - FMOF I & II LLC, Felix Management Associates, LLC, NYPA I & II LLC, NYPA Management Associates, LLC.

As of the date of this Report, the Receiver is in possession of additional correspondence from the IRS, in the form of Notices of Intent to Levy, in connection with some of the 2014, 2015 and 2016 tax returns. The Receiver has faced this issue in another recent matter and had the IRS imposed penalties successfully abated. Although, a taxpayer may try to get penalties abated under a showing of reasonable cause, it is not guaranteed. It is up to the IRS to determine whether there is a reasonable cause. The IRS will consider all facts and circumstances involved in the taxpayer's presentation of reasonable cause for the delay. [5]
The late filing of the 2015 and 2016 tax returns was due to reasonable cause and not willful neglect by the taxpayer which is a component of the IRS abatement process. As noted above, the Receiver was at a significant disadvantage in providing appropriate information to the tax preparer due to the status of the books and records of the various entities.

Under Section 6724(a) of the Internal Revenue Code ("Code"), "no penalty shall be imposed under this part with respect to any failure, if it is shown that such failure is due to reasonable cause and not to willful neglect." Section 6724 reasonable cause relief applies to statements furnished by certain pass-through entities.
Generally, Treasury Regulation §301.6724-1 states that reasonable cause may be established by:

1. Showing that the filer acted in a responsible manner both before and after the failure occurred; and,
2. The filer establishes that the failure arose from events beyond the filer's control or that there were significant mitigating factors

In addition to the preparation of tax returns for the defendant and relief defendant entities above, the Receiver is working closely with the tax preparer to gather available records and last filed tax returns, in order to enable the preparation and filing of tax returns for the remaining relief defendant and stipulating affiliated entities for tax years 2015 and onward.

These entities are:

- Saddle River Advisors, LLC ("SRA")
- Clear Sailing Group IV, LLC ("CSG IV")
- Clear Sailing Group V, LLC ("CSG V")
- Felix Multi-Opportunity Fund I, LLC ("FMOF I")
- Felix Multi-Opportunity Fund II, LLC ("FMOF II")
- Felix Management Associates, LLC ("FMOF Management")
- NYPA Fund I, LLC ("NYPA I")
- NYPA Fund II, LLC (NYPA II")
- NYPA Management Associates, LLC ("NYPA Management")

**Proofs of Claim Process:** The proofs of claims process was launched in the fourth quarter of 2017 at the direction of the Court, pursuant to the Status Hearing held on November 16, 2017. In order to run an efficient claims process, the Receiver, with the approval of the Court, retained the services of JND Corporate Restructuring ("JND"), a reputable claims agent. The Order retaining JND, and the Minute Order approving the increase in their fees can be found on the Receiver's website. Please refer to Court

---

[5] The LLCs have either reported losses or $0 income in the years 2015 and 2016, and accordingly, the IRS has not incurred financial losses nor been harmed by the late filing of these tax returns.

Document 282 "Receiver Application for Retention of Claims Administrator" and Court Document 332, "Minute Order on Application Hearing 4-19-18."

On March 21, 2018, the Receiver lodged its First Preliminary Claims Report. Please refer to Court Document 319 available on the Receiver's website.

On June 14, 2018, the Receiver lodged its final claims progress report with the Court. Please refer to Court Document 340 available on the Receiver's website.

**Newsletter:** In an effort to provide updates and information even more frequently, the Receiver prepares periodic newsletters. The latest issue is available on the Receiver's website at https://www.shrwood.com/saddleriver.

### III. RECORDS MANAGEMENT

The Receiver has continued to update the Receiver's website in a timely manner by providing all interested parties with the latest Court Documents and relevant information. The Receiver's goal is to keep all interested parties up-to-date with all the relevant information in this matter. The Receiver uses its website as its primary tool to disseminate information to investors. The Receiver encourages all interested parties to visit the website for the most up-to-date information.

### IV. CASE SUPPORT AND ADMINISTRATION

The Receiver has spent time administering the matter to ensure compliance with the Order appointing the Receiver, dated October 11, 2016.

During the second quarter of 2018, the Receiver's work included:

(a) The preparation of the Sixth Quarterly Report of the Receiver, dated May 1, 2018

- The Sixth Quarterly Court Report can be viewed on the Receiver's website, identified as Court Document 333

(b) The preparation of the fifth fee application of the Receiver for the period January 1 to March 31, 2018

- The Receiver's fee application for the quarter ended March 31, 2018 has been filed with the Court, pending approval of this Court

(c) The preparation of the Receiver's professionals fee application, and

- The tax preparer fee application has been filed with the Court, pending approval of this Court

(d) Participation in Court Status Hearings and various updates on Receivership matters with Receiver's counsel, John Cotton, Esq. of the law firm Gartenberg Gelfand Hayton LLP

- The Receiver participated in a telephonic Court Hearing on April 19, 2018, addressing the claims process
- The Receiver participated in the Case Management Conference on June 22, 2018

A Status Hearing took place on July 16, 2018, subsequent to the end of the quarter covered by this Report, at which the Receiver and its counsel participated.

The next Status Hearing is scheduled for August 16, 2018.

**Fee Applications:** The Receiver's fifth fee application for the quarter ended March 31, 2018 was filed with the Court on June 29, 2018 and is currently pending approval of this Court.

As of the date of this Report, the Receiver has prepared and submitted for review by the SEC, its sixth fee application for the quarter ended June 30, 2018.

**Receiver's Professionals Fee Application:** During the period of this Report, the Receiver issued payments, with prior approval of this Court, to professionals assisting the Receiver in carrying out its duties. The Receiver paid a total $29,466 to the claims agent, JND, during this reporting period.

## V. SUPPORT OF AND REPORTING TO THE SEC

As part of the administrative obligations, Sherwood engages in regular dialogue and conducts meetings with the SEC.

During this reporting period the Receiver has obtained guidance from the SEC in the claims analysis and validation process in the form of proposed recommendations provided by the SEC to the Receiver and claims agent, JND.

The Receiver has participated in meetings with the SEC and JND addressing the claims review and validation procedures.

The Receiver and the SEC have maintained constant communication and have conferred prior to Court Hearings.

## VI. CLAIMS AND LITIGATION FOR THE BENEFIT OF THE ESTATE

In addition to the monetization and recovery of assets, the Receiver needs to pursue remedies, consensual and legal, to recover funds. These funds are compensation due to the Receivership Estate by misappropriation.

EAC holds shares in investments on behalf of the Receivership Estate and vice versa. The Receiver, through its counsel, John Cotton, Esq., has engaged in direct communication with counsel representing EAC, in an attempt to resolve any outstanding disputes with regard to the cross-owned investments.

*Remainder of Page Intentionally Left Blank*

## B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the Estate

As of June 30, 2018, the accrued administrative expenses of the Defendant entities are as follows:

| Pre-Appointment Accrued Administrative Expenses | |
|---|---|
| | |
| Office Expenses | $61,528.60 |
| Salaries-SRA Management | $64,927.31 |
| Expenses - John Bivona | $10,180.37 |
| Expenses - Nina Dazzo | $3,018.15 |
| Expenses - Vito Fredella | $1,555.41 |
| Expenses - Susan Diamond | $2,540.72 |
| Registered Agent- National Corporate Research | $2,036.00 |
| State of NJ Annual Report | $105.00 |
| Delaware delinquent LLC taxes | $6,360.00 |
| | $152,251.56 |
| | |
| Post-Appointment Accrued Administrative Expenses | |
| Temporary Administrative Labor | $2,746.08 |

*Remainder of Page Intentionally Left Blank*

## C. A Schedule of all the Receiver's Receipts and Disbursements

The detail of all receipts and disbursements as of the end of the second quarter of 2018 is reflected on the attached **Exhibit A.** The Receiver's cash balance as of June 30, 2018 is $1,255,960. The detail of the Receiver's Receipts and Disbursements through June 30, 2018 is reflected in the schedule below:

| Receipts | Amount |
|---|---|
| Sale of Square shares | $ 1,665,220 |
| Clawback of Square excess misdistributions | 120,010 |
| Anne Bivona settlement | 500,000 |
| Interest Income | 8,140 |
| Dividend Income | 5,631 |
| **Total Receipts** | **$ 2,299,000** |
| | |
| **Disbursements** | |
| Settlement with the SEC Receiver in ND of Illinois | $ (20,000) |
| Professional Fees (Sherwood as Receiver & Monitor and Counsel) | (889,717) |
| Professional Fees (Receiver's local counsel) | (38,274) |
| Investment Banker | (50,000) |
| Claims Agent | (30,466) |
| Consultant-Advertising Agency | (13,752) |
| Taxes | (800) |
| Miscellaneous | (30) |
| **Total Disbursements** | **$ (1,043,040)** |
| | |
| Balance as of June 30, 2018 | $ 1,255,960 |

## D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended

**1.** All Defendant Entities' assets subject to the SEC's stipulated Order for Appointment of Receiver. These assets would be those of the Defendant, Relief Defendant and Stipulated Affiliated entities. They are as follows:

- SRA I, LLC
- SRA II, LLC
- SRA III, LLC
- Saddle River Advisors, LLC
- SRA Management, LLC
- Clear Sailing Group IV, LLC
- Clear Sailing Group V, LLC
- Felix Multi-Opportunity Fund I, LLC
- Felix Multi-Opportunity Fund II, LLC
- Felix Management Associates, LLC
- NYPA Fund I, LLC
- NYPA Fund II, LLC
- NYPA Management Associates, LLC

**2.** All known investments of the Receivership Entities to the best of the Receiver's knowledge and belief. These investments, with the exception of Addepar, Inc., are held with the so-called "Purchase Funds" (Clear Sailing IV, Clear Sailing V, and EAC).

They are as follows:

- Addepar, Inc.
- Airbnb, Inc.
- Badgeville, Inc.
- Bloom Energy, Inc.
- Candi Controls, Inc.
- Cloudera, Inc.
- Dropbox, Inc.
- Evernote, Inc.
- Flurry, Inc.
- Glam, Inc.
- Jawbone, Inc.
- Lookout, Inc.
- Lyft, Inc.
- Mongo DB, Inc.
- Palantir, Inc.
- Pinterest, Inc.
- Practice Fusion, Inc.
- Snapchat, Inc.
- Square, Inc.
- Uber, Inc.
- Big Ten
- Series X

**3.** All known bank accounts of the Defendant Entities, to the best of the Receiver's knowledge and belief:

|   | ACCOUNT NAME | ACCOUNT # | BALANCE |
|---|---|---|---|
| 1 | SRA Management Associates LLC | TD Bank-8771 | $ 147.72 |
| 2 | SRA I LLC | TD Bank-8804 | $ 37,109.51 |
| 3 | SRA II LLC | TD Bank-8797 | $ 174.11 |
| 4 | SRA III LLC | TD Bank-8789 | $ 135.82 |
| 5 | Saddle River General Account LLC | TD Bank-8846 | $ 4,029.64 |
| 6 | Clear Sailing Group V LLC | TD Bank-2096 | $ - |
| 7 | Clear Sailing Group IV LLC | TD Bank-9076 | $ 38,080.53 |
| 8 | NYPA Fund I LLC | TD Bank-7543 | $ 58.10 |
| 9 | NYPA Fund II LLC | TD Bank-7551 | $ 75.00 |
|   |   |   | **$ 79,810.43** |

## E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for: forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments)

To the best of its knowledge and belief, the Receiver is unaware of any liquidated or unliquidated claims held by the Receivership Estate as of the date of this Report. Please refer to Section A of this Report, specifically to the "Stock Redemptions" paragraph, for additional information. The Receiver believes that EAC holds shares in investments on behalf of the Receivership Estate.

*Remainder of Page Intentionally Left Blank*

## F. A list of all known creditors that includes their addresses and the amounts of each claim

At the direction of the Court, the Receiver has retained JND as the claims agent. JND has been tasked with running and administering a claims process on behalf of the Receivership Estate. A proof of claim form was developed and approved by the Court. In addition, a deadline to submit claims was set for January 31, 2018. After January 31, 2018, JND and the Receiver have commenced conducting a comprehensive review of all the claims filed. The Receiver's initial Claims Progress Report and its second and final Claims Report were filed with the Court on March 21 and June 14, 2018, respectively. Both Court Documents are available to be viewed on the Receiver's website. The investors' and creditors' addresses are maintained by the claims agent. Please refer to the *"Proofs of Claim Process"* section in this Report.

## G. The status of Creditor Claims Proceedings, after such Proceedings have commenced

The claims process was initiated in December 2017. On March 21, 2018, the Receiver filed its First Preliminary Claims Report. On June 14, the Receiver filed its second and final Claims Report with the Court. Please refer to Section F above and the *"Proofs of Claim Process"* section of this Report, for further details.

## H. The Receiver's recommendations for a continuation or discontinuation of the Receivership and the reasons for the recommendations

The Receiver has made significant progress in administering the Receivership Estate and analyzing and understanding the issues at hand. The Receiver is in the midst of carrying out its duties. The Receiver and the SEC proposed a Joint Plan of Distribution to minimize risk to all investors and, in the face of commingling, to provide a fair and equitable distribution. The IG is proposing an alternative plan that would terminate the duties of the Receiver. The Receiver does not support the plan proposed by the IG, as it does not represent the most economic method of Estate management. The Receiver's recommendation is to continue the Receivership, so that it can thoroughly complete its duties as instructed by the Order appointing the Receiver on October 11, 2016.

### UPCOMING WORK OF THE RECEIVERSHIP

The primary upcoming tasks of the Receiver include the filing of tax returns for tax year 2017 and preparation of tax returns for the remaining defendant, relief defendant and stipulating affiliated entities, continuing to address questions from investors, while updating the Receiver's website, as well as providing periodic updates to all interested parties, and challenging any penalties imposed for late filing of prior years' tax returns.

At the direction of the Court, the Receiver has been instructed to meet and confer to arrive at a consensual proposed distribution plan or otherwise, to propose a schedule for the Court to hear such dispute.

The Receiver is continuing its attempts at arriving at a consensus with EAC and is also attempting to recover MongoDB shares from an obligee under a Stock Transfer Agreement.

Pending the Court's instructions, potential additional upcoming work of the Receiver includes either distribution or liquidation of Estate assets or conversely transition of the Estate to a new fund manager.

## EXHIBIT A

|  | For quarter ended June 30, 2018 | Cumulative since October 11, 2016 |
|---|---|---|
| **Receiver's Receipts** | $2,725 | $2,299,000 |
| **Receiver's Disbursements** | ($29,466) | ($1,043,040) |
| **TOTAL** | ($26,741) | $1,255,960 |
| **Cash Balance as of June 30, 2018** |  | $1,255,960 |