UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>FELIX INVESTMENTS, LLC,<br><br>Defendant. | Case No. 16-cv-01386-EMC<br><br>**ORDER RE GLOBAL GENERATION'S STATUS AS CREDITOR OR INVESTOR** |

I. **INTRODUCTION**

On July 30, 2018, the Court issued an Order rejecting Global Generation Group's ("Global") proposal that it be treated as a creditor up to the amount of its money judgment against Defendants, but also as a shareholder if a Palantir liquidating event generates proceeds that exceed the amount of shares distributed to Global. *See* Docket No. 385 at 3–6. The Court determined that, because Global had exercised its put rights to return the Palantir shares it had purchased through Defendants and reduced the resulting claim against Defendants to a judgment, the doctrines of election of remedies, merger, and res judicata all bar Global from now seeking an equity interest on top of its money judgment. *Id.* Thus, the Court ruled that Global's claim is limited to that of either a creditor or an investor, but left open the question whether it may still choose between the two options. *See id.* at 6. In an August 16, 2018 minute order, the Court ordered supplemental briefing on this question. *See* Docket No. 395. Both Global and the SRA Funds Investor Group ("SRA Group") filed responsive briefs. *See* Docket Nos. 396 ("Global

Br."), 397 ("SRA Br.").[1]

For the reasons stated below, the Court finds that Global's claim is limited to that of a creditor.

II. **DISCUSSION**

A. Legal Standard

In supervising an equitable receivership, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable. *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010) (citing *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 84 (2d Cir. 2006)). "[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (quoting *S.E.C. v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)).

B. Global's Choice of Status

Global's supplemental brief, like its initial brief on this issue, *see* Docket No. 382 at 5, argues that the Court should exercise its broad discretion in fashioning equitable relief to allow Global to choose its status because Global is in a different position than the other claimants. Global Br. at 1. First, Global "did what no other investor [except Progresso Ventures] in this proceeding did—Global took steps to mitigate its damages" in court. *Id.* Second, Global made "an early and significant investment in Palantir," "without which there would be far fewer shares of Palantir in the receivership estate," so denying Global its choice of status would be inequitable to Global *and* "confer an unwarranted and undeserved benefit to the SRA Investor Group." *Id.* at 1. Global also points out that whether it will recover more as a creditor or investor—and therefore, whether and to what extent the other claimants will be affected if Global is allowed to choose its status—depends on a host of uncertain factors, including the amount that will be

---

[1] John Syron, owner of Global, also filed a letter in his own name on August 24, 2018 asking the Court to consider certain facts he alleges in the interests of fairness and equity. *See* Docket No. 398. SRA Group filed an objection to the letter. *See* Docket No. 399. Because the letter was not timely submitted, makes no legal arguments, and follows a responsive brief already filed on Global's behalf by its counsel, it was not considered by the Court.

2

generated by the liquidation of the Palantir position, the distribution plan that will be approved, and the priority that will ultimately assigned between the claimants. *Id.* at 2.

Global's arguments do not persuade the Court to grant the relief it seeks. As the Court explained in the July 30 Order, Global already made the choice, before this case was filed, to put back its Palantir shares. When Defendants failed to fully reimburse Global for the shares, Global reduced its claim for the outstanding balance to a money judgment, thus making it a creditor. This means that Global does not have, as it contends, both "viable investor and creditor claims."[2] Global Br. at 2. Because it opted to seek recovery by means of a money judgment, Global's claim to now obtain recovery as an investor is barred by the doctrines of election of remedies, merger, and res judicata. *See* Docket No. 385 at 5–6.

In arguing that it is not barred from recovering as an investor despite having become a creditor, Global relies primarily on *S.E.C. v. Wealth Management LLC*, 628 F.3d 323 (7th Cir. 2010), in which the court approved a distribution plan that treated "all investors equally as equity holders, regardless of whether an investor had submitted a request to redeem his or her interest." Global Br. at 2 (quoting *Wealth Management*, 628 F.3d at 329). However, the investors in *Wealth Management* had successfully redeemed portions of their interests without needing to obtain money judgments, and therefore were not creditors. *See* 628 F.3d at 328. Even setting aside this fundamental distinction, *Wealth Management* does not support Global's position.

In *Wealth Management*, a financial-planning firm had its assets turned over to a receiver after the SEC commenced an enforcement action against the firm for misleading investors about the safety and liquidity of the funds it managed. *See id.* at 328–29. Before the SEC announced that it was investigating the firm, the firm had "sent a letter to . . . investors saying that there was not enough money to pay redemptions in full and that redemptions would be limited to two percent per quarter of the value of each individual's investment." *Id.* at 328. This led some

---

[2] Global points to the SEC's statement that Global "possesses an investor status because it actually purchased Palantir shares" as support for its claim. Global Br. at 1. However, the SEC based that conclusion on the premise that "a large number of those [Palantir] shares were not redeemed through a redemption payment," *id.*, a premise the July 30 Order has rejected, *see* Docket No. 385 at 4 n.1 ("No authority has been cited that a redemption remains incomplete even after a claim has been reduced to judgment.").

3

investors to request redemptions of their equity. *Id.* The court thus needed to decide how to account for these redemptions in calculating each investor's recovery. The Seventh Circuit ultimately approved a distribution plan that "imposed a May 31, 2008 redemption 'cutoff date.'" *Id.* at 329. "Redemption distributions received after the cutoff date would be offset against the investor's total distribution," but redemption distributions received prior to the cutoff date would not be offset. *Id.* The cutoff date of May 31, 2008 was selected "because the SEC investigation became public in June 2008 and triggered a spike in redemption requests." *Id.* at 329. In other words, *Wealth Management* recognized that at some point, equity that had been redeemed could no longer be recovered as equity. Applying the logic of *Wealth Management* in this case, Global cannot recover as an investor because it had fully relinquished its equity in Palantir early on, so its claim is not "substantively similar" to those of the other investors, and the shares it put back can no longer be recovered as equity.

Global makes the final assertion that "if the [SRA] Investor Group is permitted to take any appreciation in Global's 625,666 unredeemed Palantir shares by the forced classification of Global as a creditor, the Investor Group will take the benefit of the fraud perpetrated against Global, absent which there would be far fewer Palantir shares." Not only is this line of reasoning flawed because Global's Palantir shares have already been redeemed as a money judgment, it ignores the fact that Global had the opportunity to weigh the risk that its Palantir shares might appreciate before deciding to exercise its put rights. It cannot *post facto* hedge its bets now.

In holding that Global must recover as a creditor, the Court retains the discretion to adjust the priority of Global's claim relative to those of the other claimants as appropriate. *See* Docket No. 385 at 14; *Quilling v. Trade Partners, Inc.*, No. 103-CV-236, 2007 WL 107669, at *3 (W.D. Mich. Jan. 9, 2007) ("A district court's broad powers and wide discretion extend to allocating the priority of distributions from the receivership estate.") (citation and internal quotation marks omitted); *S.E.C. v. HKW Trading LLC*, No. 8:05–CV–1076–T–24–TB, 2009 WL 2499146, at *5 (M.D. Fla. Aug. 14, 2009) (determining priority in receivership distribution based on what is "fair, just, and reasonable"); *In re Indian Motorcycle Litig.*, 307 B.R. 7, 16 (D. Mass. 2004) ("[I]n a receivership proceeding . . . this court sits in equity, and the allocation of priority lies within the

4

trial court's sound discretion.").

### III. **CONCLUSION**

For the foregoing reasons, Global must recover as a creditor.

**IT IS SO ORDERED**.

Dated: October 10, 2018

                                             _____
                                             EDWARD M. CHEN
                                             United States District Judge