KATHY BAZOIAN PHELPS (State Bar No. 155564)
*kphelps@diamondmccarthy.com*
DIAMOND MCCARTHY LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-4402
Telephone:    (310) 651-2997
*Successor Receiver*

CHRISTOPHER D. SULLIVAN (148083)
csullivan@diamondmccarthy.com
STACEY L. PRATT (124892)
stacey.pratt@diamondmccarthy.com
DIAMOND MCCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200
*Counsel for Successor Receiver*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 3:16-cv-01386-EMC |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR:** |
| v. | **(1) FINAL APPROVAL OF RECEIVER'S PLAN OF DISTRIBUTION; AND** |
| JOHN V. BIVONA; SADDLE RIVER ADVISORS, LLC; SRA MANAGEMENT ASSOCIATES, LLC; FRANK GREGORY MAZZOLA, | **(2) FOR ORDER APPROVING FORM AND MANNER OF NOTICE;** |
| | **AND** |
| Defendants, and | **NOTICE OF OPPORTUNITY TO SERVE ON INVESTMENT ADVISORY COMMITTEE** |
| SRA I LLC; SRA II LLC; SRA III LLC; FELIX INVESTMENTS, LLC; MICHELE J. MAZZOLA; ANNE BIVONA; CLEAR SAILING GROUP IV LLC; CLEAR SAILING GROUP V LLC, | *Memorandum of Points and Authorities and Supporting Declaration Filed Concurrently* |
| | Date:    April 7, 2020 |
| | Time:    10:30 a.m. |
| | Place:    Courtroom:  5 |
| | 450 Golden Gate Ave |
| | San Francisco, CA |
| Relief Defendants. | Judge:  Edward M. Chen |

**PLEASE TAKE NOTICE THAT** on April 7, 2020, at 10:30 a.m., in Courtroom 5 of the above-entitled Court located at 450 Golden Gate Ave., San Francisco, California, Kathy Bazoian Phelps, the successor Receiver herein (the "Receiver"), will and hereby does move for an order granting her Motion for (1) Final Approval of the Plan of Distribution; and (2) Order Approving Form and Manner of Notice; and Notice of Opportunity to Serve on Investment Advisory Committee (the "Motion").

**Procedural Requirements**: If you oppose all or part of the relief requested in this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 450 Golden Gate Ave., San Francisco, California 94102, and serve the same on the undersigned not later March 16, 2020, pursuant to the Court's Order.  IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

If you wish to receive a hard copy of the Plan by regular mail, please contact Kathy Bazoian Phelps by email to kphelps@diamondmccarthy.com or by regular mail at Diamond McCarthy, 1999 Avenue of the Stars, Ste 1100, Los Angeles, CA 90067.

If you wish to submit an application to serve on the Investment Advisory Committee, you must submit your application to the Receiver no later than March 9, 2020, by email to kphelps@diamondmccarthy.com or regular mail to Kathy Bazoian Phelps, Diamond McCarthy, 1999 Avenue of the Stars, Ste 1100, Los Angeles, CA 90067.

**Meet and Confer:** The Receiver has met and conferred with counsel for the Securities and Exchange Commission ("SEC"), counsel for the SRA Investor Group, and counsel for Progresso Ventures LLC prior to filing this pleading and they have identified particular issues that night be the subject of an objection or further briefing.

**Relief Requested in Motion**. The Motion seeks final approval of the Receiver's Distribution Plan, a copy of which is attached to the Declaration of Kathy Bazoian Phelps as Exhibit "A." The Motion is made on grounds that, in the Receiver's business judgment, the proposed distribution plan is fair and reasonable.

The Motion also seeks to invite any interested investor to submit an application to the

1  Receiver if they wish to serve on the Investment Advisory Committee, as described in the Plan.

2  **NOTICE OF OPPORTUNITY TO SERVE ON INVESTOR ADVISORY**

3  **COMMITTEE**

4  One of the provisions of the Plan provides for the formation of an Investor Advisory

5  Committee ("IAC") to consult with the Receiver regarding the liquidation of securities in

6  connection with the Plan implementation.  This Motion invites any investor who is interested in

7  serving on the IAC to submit an application to the Receiver by March 9, 2020.  The Receiver will

8  consider new nominations as well as members of the SRA Funds Investor Group pursuant to the

9  SRA Funds Investor Group's Proposed Alternative Distribution Plan [Doc No. 407-1] as

10 candidates for an IAC.  All individuals wishing to nominate themselves to serve on the IAC must

11 submit an application to the Receiver by email to kphelps@diamondmccarthy.com or regular mail

12 to Kathy Bazoian Phelps, Diamond McCarthy, 1999 Avenue of the Stars, Ste 1100, Los Angeles,

13 CA 90067, no later than March 9, 2020. The IAC application must include: (1) the investor name;

14 (2) mailing address; (3) email address; (4) phone number; and (5) brief statement of qualifications

15 to serve on the IAC.

16 Submission of an application to serve on the IAC is not a guarantee of a position to serve on

17 the IAC.

18 Following March 9, 2020, the Receiver will meet and confer with the SEC, the SRA

19 Investor Group, and Progresso Ventures, LLC to review the applications submitted and to try to

20 reach agreement on the individuals who will serve on the IAC.  If the parties cannot agree, then the

21 Receiver shall file a request for instructions on who shall serve on the IAC by March 16, 2020. Any

22 responses to the Receiver's request for instructions shall be filed on or before March 20, 2020, and

23 any replies shall be filed on or before March 24, 2020.

24 This Motion is supported by the Notice of Motion and Motion, the accompanying

25 Memorandum of Points and Authorities, the Declaration of Kathy Bazoian Phelps and Exhibits

26 filed herewith, and all the papers and files in this matter.

27 Kathy Bazoian Phelps, the successor Receiver herein (the "Receiver"), hereby files her

28 Motion for (1) Final Approval of the Plan of Distribution; and (2) for Order Approving Form and

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF RECEIVER'S DISTRIBUTION PLAN

Manner of Notice; and Notice of Opportunity to Serve on Investment Advisory Committee.

DATED: February 27, 2020

By:   /s/ Kathy Bazoian Phelps
      Kathy Bazoian Phelps, Successor Receiver

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
                                               OF RECEIVER'S DISTRIBUTION PLAN

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................... 3

III.    THE PLAN .............................................................................................. 5

        A.      Classes of Claimants ................................................................. 5

        B.      The Plan Fund ............................................................................ 9

        C.      Tax Holding Account ................................................................. 9

        D.      Equitable Adjustment ............................................................... 9

        E.      Methods of Distribution Under the Plan ................................ 10

                1.      Sale of Securities to Create Plan Fund and Tax Holding Account ....... 10

                2.      Priority of Payment of Claims from Plan Fund and Tax Holding
                        Account ................................................................................... 11

                3.      Administrative Cash Reserve: ............................................. 12

                4.      Anne Bivona Funds: .............................................................. 12

                5.      Final Distribution of Cash: .................................................. 12

                6.      Distribution of Securities to Investor Claims ..................... 12

        F.      Affected Claims Under the Plan .............................................. 14

IV.     SUBSTANTIVE CONSOLIDATION OF SOLIS FUND ...................... 15

V.      APPOINTMENT OF INVESTOR ADVISORY COMMITTEE ............. 16

VI.     TAX TREATMENT AND APPORTIONMENT OF TAX LIABILITY ..... 17

VII.    THE PROPOSED PLAN FOR FINAL DISTRIBUTION OF RECEIVERSHIP
        ESTATE ASSETS SHOULD BE APPROVED .................................... 18

VIII.   NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED
        APPROPRIATE AND SUFFICIENT ................................................... 19

IX.     CONCLUSION ..................................................................................... 20

1

2

# **TABLE OF AUTHORITIES**

3

## **Cases**

4

FTC v. Crittenden,
   (1993) 823 F. Supp. 699....................................................................................................... 19

*Quilling v. Trade Partners, Inc.*,
   2007 WL 107669, * 1 (W.D. Mich. 2007)............................................................................ 18

*SEC v. Basic Energy*,
   (2001) 273 F.3d 657.............................................................................................................. 18

*SEC v. Forex Asset Mgmt. LLC*,
   (2001) 242 F.3d 325.............................................................................................................. 18

*SEC v. Hardy*,
   (1986) 803 F.2d 1034............................................................................................................ 18

*SEC v. Wang*,
   (1991) 944 F.2d 80................................................................................................................ 18

*SEC v.Elliott*,
   (1992) 953 F.2d 1560............................................................................................................ 18

## **Statutes and Rules**

F.R. Civ. P. 5(a) ...................................................................................................................... 20

F.R. Civ. P. 5(c) ...................................................................................................................... 20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
                                                                     OF RECEIVER'S DISTRIBUTION PLAN

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

The Court has preliminarily approved the major components of a distribution plan in this case, and this Motion seeks final approval of the Receiver's Plan of Distribution, which contains modifications and updates based upon corrections and adjustments made upon agreement of the parties.

This Motion also seeks to invite any interested investor to submit an application to the Receiver if they wish to serve on the Investment Advisory Committee, as described in the Plan.

The Receiver has met and conferred with counsel for the SEC, Progresso Ventures, and the SRA Funds Investor Group.  Declaration of Kathy Bazoian Phelps in Support of Motion for: (1) Final Approval of Receiver's Plan of Distribution; and (2) For Order Approving Form and Manner of Notice; and Notice of Opportunity to Serve on Investment Advisory Committee ("Phelps Decl."), ¶ 4. The parties have significantly narrowed the remaining points of disagreement regarding a distribution plan, and have identified particular issues that might be the subject of an objection or further briefing:

1. The SEC does not believe that investors who invested in Failed Investments should be excluded from the Plan. The Receiver's Plan excludes Failed Investments pursuant to the Court's prior orders. The SEC will identify portions of the proposed Plan that are inequitable to investors with Failed Investments.  Additionally, the SEC will identify portions of the Plan that will be difficult to administer efficiently and fairly.  Phelps Decl., ¶ 4.a.

2. The SRA Funds Investor Group contends that investors and creditors should know whether the Anne Bivona funds will be part of the distribution plan or not prior to the objection deadline so that they can consider this fact in deciding whether and what position to take with respect to the proposed distribution plan. The SEC does not wish to make a determination at this time with respect to the Anne Bivona funds.  Phelps Decl., ¶ 4.b.

1

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF RECEIVER'S DISTRIBUTION PLAN

3.   Upon the agreement of the parties, the Receiver has built into the Plan the possibility for an "Equitable Adjustment" at a later date to take into account potential inequities that may result from the allocations of the administrative claims from the Plan Fund and the taxes from the Tax Holding Account, respectively. The Equitable Adjustment provision was added to the Plan to address the issues raised by the parties as follows:

a.   Progresso Ventures has expressed concern that the 30% Plan Fund which is also to be used to fund administrative claims may be insufficient and that provision should be made to sell additional securities should there be unanticipated administrative or unsecured claims.

b.   The SRA Investor Group has expressed concern that the allocation of tax burden as set forth in the Plan shifts the entire tax burden onto the investors and that the creditors should share in the tax burden as well.  Phelps Decl., ¶ 4.c.

Other than those main issues, the parties have agreed upon the terms of the Plan which is attached hereto as Exhibit "A." This Motion seeks final approval of this version of the Plan.  Phelps Decl., ¶ 5.

Notice to Candidates to Apply to Serve on Investor Advisory Committee

One of the provisions of the Plan provides for the formation of an Investor Advisory Committee ("IAC") to consult with the Receiver regarding the liquidation of securities in connection with the Plan implementation.  This Motion invites any investor who is interested in serving on the IAC to submit an application to the Receiver by March 9, 2020.  Phelps Decl., ¶ 12. The Receiver will consider new nominations as well as members of the SRA Funds Investor Group pursuant to the SRA Funds Investor Group's Proposed Alternative Distribution Plan [Doc No. 407-1] as candidates for an IAC.  All individuals wishing to nominate themselves to serve on the IAC must submit an application to the Receiver by email to kphelps@diamondmccarthy.com or regular mail to Kathy Bazoian Phelps, Diamond McCarthy, 1999 Avenue of the Stars, Ste 1100, Los Angeles, CA 90067, no later than March 9, 2020.  The IAC application must include: (1) the investor name; (2) mailing address; (3) email address; (4) phone number; and (5) brief statement of qualifications to serve on the IAC.

2

## II.   STATEMENT OF FACTS

1.   The Securities and Exchange Commission ("Commission" or "SEC") filed a complaint commencing this action on March 22, 2016, and Sherwood Partners was appointed as the Independent Monitor on March 25, 2016 (ECF 36).  Pursuant to the Stipulated Order for Appointment of Receiver so ordered on October 11, 2016 (ECF 142), the Court appointed Sherwood Partners, Inc. (the "Former Receiver") as the Receiver to take possession and control of the assets of the following entities:  SRA Management Associates, LLC ("SRA Management"), SRA I LLC ("SRA I"), SRA II LLC ("SRA II"), SRA III LLC ("SRA III") (together, "SRA Funds"), Clear Sailing Group IV LLC and Clear Sailing Group V LLC (together, "Clear Sailing"), and third-party affiliated entities NYPA Fund I LLC ("NYPA I"), NYPA II Fund LLC ("NYPA II") (together, "NYPA Funds") and NYPA Management Associates LLC (collectively, "NYPA Entities") and Felix Multi-Opportunity Funds I and II, LLC ("FMOF I and II") (together, "FMOF Funds") and FMOF Management Associates, LLC (collectively, "FMOF Entities").

2.   By Order entered on February 28, 2019, the Court appointed Kathy Bazoian Phelps as the successor Receiver (the "Receiver").  Pursuant to the Court's Civil Minutes entered on June 27, 2019 (ECF 503), the Solis Associates Fund LLC ("Solis") was substantively consolidated into the receivership estate.  SRA Management, SRA I, SRA II, SRA III, Clear Sailing, NYPA Entities, FMOF Entities and Solis are collectively referred to as the "Receivership Entities").

3.   Pursuant to the Court's February 19, 2020 Order (Doc. No. 566), the Receiver has met and conferred with the SEC, the SRA Investor Group, and counsel for Progresso Ventures LLC regarding the form and content of the Distribution Plan.  Phelps Decl., ¶ 4.   Except as otherwise set forth herein, the Receiver is advised that the parties agree to the terms of the Distribution Plan attached hereto as Exhibit "A."   Phelps Decl., ¶ 5, Exhibit "A".

4.   The assets of the estate consist of cash and securities as follows:

Unencumbered cash:                 Approx. $120,000[1]

---

[1] Additional funds may be received in connection with accounts currently frozen at TD Bank that are subject of a settlement with the bankruptcy trustee for the John Bivona bankruptcy estate. Phelps Decl., fn. 1.

Securities:  The estate holds an interest in securities, some of which are publicly held

shares and others of which are pre-IPO and are held in the form of book entries or are

owing in connection with forward contracts, as follows:

| Company | Securities Owned by Estate | Current Status |
|---|---|---|
| Addepar, Inc. | 995,509 | Pre-IPO |
| Airbnb | 11,125 | Pre-IPO |
| Bloom Energy Inc. | 147,429 | Public |
| Cloudera, Inc. | 37,639 | Public |
| Dropbox, Inc. | 46,000 | Public |
| Evernote Corp. | 96,108 | Pre-IPO |
| Lookout, Inc. | 174,800 | Pre-IPO |
| Lyft, Inc. | 9,479 | Public |
| MongoDB Inc. | 20,000[2] | Public |
| Palantir Technologies Inc. | 5,740,249 | Pre-IPO |
| Pinterest, Inc. | 23,206 | Public |
| Snap, Inc. | 31,172 | Public |
| Uber Inc. | 500 | Public |
| ZocDoc, Inc. | 21,599[3] | Pre-IPO |

Phelps Decl., ¶ 6.

5.      Prior to the Receiver's appointment, the Former Receiver served a Notice of Bar

Date, establishing January 31, 2018 as the claims bar date (the "Original Bar Date").  A

supplemental bar date of May 14, 2019 was later fixed to provide additional notice and opportunity

for filing of claims for those who had not received notice of the Original Bar Date.

6.      The Receiver filed a Motion to Disallow Certain Claims granted pursuant to Minute

Order entered on June 27, 2019 [Doc No 503], which disallowed the following categories of

claims:

• Claims which have received prior distribution

• Claims made for funds paid to non-receivership entities

---

[2] The estate is owed another 6,250 shares from Ben Sabrin which have not yet been delivered. Phelps Decl., fn, 2.

[3] Of these shares, 20,000 have not yet been confirmed by the Receiver.  Phelps Decl., fn. 3.

4

- Duplicate claims

- Claims for Failed Investments

7.  The Receiver may, in her discretion, file subsequent objections to claims, and shall provide notice and an opportunity to object and be heard pursuant to the Court's Local Rules to any claimant whose claim is affected.

## III.     THE PLAN

### A.     Classes of Claimants

The Receiver has categorized the claims which are deemed Allowed Claims under the Plan into the following classes of claimants:

Class 1:          Administrative Claims

Class 2:          Priority Claims

Class 3:          Unsecured Creditor Claims

Class 4:          Investor Claims

Class 5:          Subordinated Claims

Phelps Decl., ¶ 7.

These classes of claims and the proposed treatment of each class are discussed below.

#### 1.  Class 1

Class 1 consists of the Administrative Claims. It is contemplated these Administrative Claims will consist primarily of the Receiver's fees and costs and the fees and costs of professional retained by the Receiver.

#### 2.  Class 2

Class 2 consists of the Priority Claims. The priority claims will likely consist substantially, if not entirely, of tax claims. At the present time, two tax claims have been submitted by the New York Department of Tax and Finance in the amount of $20,940.

Other anticipated tax claims that would constitute Priority Claims are tax liability at both the federal and state levels attributable to the sale and disbursement of securities. The amount of the tax liability that will be realized from the sale of securities to fund the payments to the Class 1,

2 and 3 classes and from the disbursement of securities to Class 4 is presently unknown.

The Plan contemplates that additional securities will be sold as necessary to fund the estimated tax liability from the sale and distribution of securities and that those proceeds will be held in the Tax Holding Account and available to pay taxes.

The Plan does not provide any tax advice, and all Unsecured Creditors and Investor Claimants are encouraged to consult their own tax advisor regarding any tax consequences of the Plan.

In any event, no distribution will be made to Classes 3, 4 or 5 until such time as Class 1 and 2 claims have been paid in full or sufficient reserves are held to ensure payment in full to Classes 1 and 2.

### 3.  Class 3

Class 3 consists of the Unsecured Creditor Claims.  The Plan contemplates that the Unsecured Claims will be paid from the Plan Fund, which shall be funded by cash generated from the sale of securities as set forth in detail below.  A listing of the presently allowed Class 3 claims is attached to the Plan as Exhibit "1."  Phelps Decl., ¶ 8, Exhibit "A".  The Plan Fund will be used to pay Classes 1 and 3, and possibly to pay a portion of Class 2, subject to a request for an Equitable Adjustment and further order of the Court.  To the extent there is a surplus of cash following payment of Classes 1, 2, and 3, the surplus will be used to pay Class 5 claims on a *pro rata* basis.  To the extent there is a deficiency: (a) Class 1 will be paid in full from the Plan Fund; (b) the Receiver may seek an Equitable Adjustment regarding  payment of a portion of Class 2 Claims from the Plan Fund; and (c) Class 3 will receive a *pro rata* distribution on account of their claims from the remaining funds in the Plan Fund following payment in full to Classes 1 and 2 claimants pursuant to the terms of the Plan.  It is contemplated that Class 2 claims will be paid from the Tax Holding Account; however, to the extent that either there are insufficient funds in the Tax Holding Account to pay Class 2 claims in full or the Receiver believes that an Equitable Adjustment is appropriate and that a portion of Class 2 claims should be paid from the Plan Fund, the Receiver may request to use the Plan Fund to satisfy such Class 2 claims upon further order of the Court.

4.  **Class 4**

Class 4 consists of the Investor Claims, which have been divided by the company in which

the claimants invested.  The Class 4 claims are identified by Investor I.D. number and by intended

investment in Exhibits "2" through "15" attached to the Plan and identified as follows:

| | | |
|---|---|---|
| Class 4A: | Addepar | Exhibit "2" |
| Class 4B: | Airbnb | Exhibit "3" |
| Class 4C: | Bloom Energy | Exhibit "4" |
| Class 4D: | Cloudera | Exhibit "5" |
| Class 4E: | Dropbox | Exhibit "6" |
| Class 4F: | Evernote | Exhibit "7" |
| Class 4G: | Lookout | Exhibit "8" |
| Class 4H: | Lyft | Exhibit "9" |
| Class 4I: | MongoDB | Exhibit "10" |
| Class 4J | Palantir | Exhibit "11" |
| Class 4K: | Pinterest | Exhibit "12" |
| Class 4M: | Snap, Inc. | Exhibit "13" |
| Class 4N: | Uber | Exhibit "14" |
| Class 4O: | ZocDoc | Exhibit "15" |

Phelps Decl., ¶ 9, Exhibit "A."

The following chart reflects that shares that have been confirmed by the Receiver as owned

by the estate, the gross amount invested in those shares, and 30% of the gross invested amount for

purposes of calculating the Plan Fund as set forth herein.

| Company | Securities Owned by Estate | Shares Claimed by Investors | Gross Investment Amount | 30% of Gross Investment Amount |
|---|---|---|---|---|
| Addepar, Inc. | 995,509 | 995,509 | $1,150,684 | $  345,205 |
| Airbnb | 11,125 | 11,125 | $842,654 | $  252,796 |
| Bloom Energy Inc. | 147,429 | 139,583 | $3,724,498 | $1,117,349 |
| Cloudera, Inc. | 37,639 | 37,639 | $637,245 | $  191,174 |
| Dropbox, Inc. | 46,000 | 46,001 | $1,783,457 | $  535,037 |
| Evernote Corp. | 96,108 | 88,287 | $1,179,964 | $  353,989 |
| Lookout, Inc. | 174,800 | 171,797 | $1,976,853 | $  593,056 |
| Lyft, Inc. | 9,479 | 9,479 | $250,756 | $   75,227 |
| MongoDB Inc. | 20,000[4] | 22,171 | $1,002,322 | $  300,687 |
| Palantir Technologies Inc. | 5,740,249 | 5,895,853 | $32,551,706 | $9,765,512 |
| Pinterest, Inc. | 23,206 | 23,206 | $550,470 | $  165,141 |
| Snap, Inc. | 31,172 | 31,173 | $549,821 | $  164,946 |

---

[4] The estate is owed another 6,250 shares from Ben Sabrin.  Phelps Decl., fn. 4.

7

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
                 OF RECEIVER'S DISTRIBUTION PLAN

| | | | | |
|---|---|---|---|---|
| Uber Inc. | 500 | 500 | $19,388 | $    5,816 |
| ZocDoc, Inc. | 21,599[5] | 21,598 | $187,218 | $  56,165 |

Phelps Decl., ¶ 10.

This Plan contemplates that some of these securities will be liquidated to fund payment of the Class 1, 2, and 3 claims as set forth in the Plan.  Phelps Decl., ¶ 11.

"Investor Deficiency Claim" means any remaining unpaid Investor Claim following distribution of shares pursuant to the terms of the Plan that should be calculated as follows: The gross dollar amount invested by an Investor less 30% of the gross investment amount, less the Investor's *pro rata* share of the total dollar value generated to fund the Tax Holding Account,  less the value of any shares actually distributed to the Investor under the terms of this Plan calculated as the posted value of those shares as of the close of business on the dates that the shares are actually distributed to the Investor.

### 5.   Class 5

Class 5 consists of the Subordinated Claims. It is presently unknown whether any distribution will be made to Class 5 creditors. After the distributions to Class 4 claimants has been completed, or substantially completed, and all likely administrative expenses, priority expenses, Class 1 claims, Class 2 claims and Class 3 claims have been provided for in full, the Receiver shall determine whether any surplus money remains in the Plan Fund or the Tax Holding Account.  Such surplus money may then be distributed by the Receiver to the Class 5 Subordinated Claimants on a *pro rata* basis. The Class 5 Subordinated Claims that are presently known are:

| | |
|---|---|
| Progresso Ventures: | $552,936.43 |
| Kenneth Lacey: | $500,000.00 |
| Alexander Pisemski | $500,000.00 |
| Carsten Klein: | $100,000.00 |
| Investor Deficiency Claims | Unknown |

### 6.   Surplus Funds

To the extent that any surplus funds remain following payment in full of Class 5 claims,

---

[5] Of these shares, 20,000 have not yet been confirmed by the Receiver.  Phelps Decl., fn. 5.

8

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF RECEIVER'S DISTRIBUTION PLAN

those funds shall be distributed to the Investors on a *pro rata* basis using their gross investment amount.

### B.    The Plan Fund

The "Plan Fund" means the cash generated from the sale of securities in the Successful Investments in a sum approximately equal to 30% of the gross amount invested by the Investor Claimants in each of the Successful Investments.  Additionally, the Plan Fund will include any surplus shares of Successful Investments that can be sold by the Receiver and funds generated from the sale of securities for the purpose of paying Class 1, 2, and 3 claims as set forth in this Plan.  It is presently understood, if each current investment that is not a Failed Investment becomes a Successful Investment, that 30% of the gross investments is $13,972,323, but that figure may decrease if any of the current pre-IPO securities do not ultimately become Successful Investments.

### C.    Tax Holding Account

The "Tax Holding Account" means a bank account to be established by the Receiver and funded with the proceeds of the sale of securities in amount sufficient to cover the full amount of state and federal taxes that are estimated to be generated from the sale and distribution of securities for each of the Successful Investments.

### D.    Equitable Adjustment

"Equitable Adjustment" means a request by the Receiver to modify the proposed allocation of Class 1 claims to be paid from the Plan Fund and Class 2 Claims to be paid from the Tax Holding Account, which request can be made by the Receiver if she determines that the presently contemplated allocation will not result in an equitable result as between the Investors and Unsecured Creditors.  Such a request for an Equitable Adjustment can be made by the Receiver upon a determination that a disproportionate amount of Class 1 or Class 2 Claims are to be borne by the Unsecured Creditors out of the Plan Fund, or by the Investors in the Tax Holding Account, and such request shall be subject to approval by the Court.  Notwithstanding the foregoing, the Tax Holding Account will be fully funded from the sale of securities in an amount sufficient to pay all tax liability and, in the event of an Equitable Adjustment, that results in excess funds remaining in the Tax Holding Account, those excess funds will be available for distribution to Class 5 Claims,

9

1  which include Investor Deficiency Claims.

2       **E.**    **Methods of Distribution Under the Plan**

3         **1.**  **Sale of Securities to Create Plan Fund and Tax Holding Account**

4       The Receiver shall sell securities to generate the Plan Fund and Tax Holding Account as

5  follows:

6      (a)  Securities shall be sold to generate an amount of 30% of the gross amounts invested by

7          the Investor Claimants in Successful Investments to fund the Plan Fund.

8      (b)  Any surplus securities for any of the Successful Investments shall be sold and the

9          proceeds shall be added to the Plan Fund.

10      (c)  Additional securities shall be sold to generate sufficient funds to pay any estimated

11          Priority Tax Claims generated from the sale of securities and the distribution of shares

12          back to Investors and said sales proceeds shall be deposited in the Tax Holding

13          Account.

14      (d)  The Receiver shall sell securities as follows for the Successful Investments following a

15          liquidity event for a given Successful Investment.

16      (e)  The 30% to fund the Plan Fund shall be net of any brokerage fees paid in connection

17          with the sale of the securities.  In other words, the amount to be held in the Plan Fund

18          following payment of brokerage fees shall equal 30% of the gross amount invested.

19      (f)  The Receiver shall sell the securities in a manner consistent with state and federal

20          corporate and securities laws.  The Receiver anticipates that such distributions or sales

21          shall be done in accordance with Section 5 of the Securities Act of 1933 ("Securities

22          Act") or in accordance with exemptions from registration provided in the Rules

23          promulgated by the Commission pursuant to the Securities Act.

24       If all of the remaining investments that are not Failed Investments ultimately become

25  Successful Investments, the dollar value of securities to be sold to create the Plan Fund shall be

26  $13,972,323 in the aggregate for the 30% figure.  The dollar value of the surplus shares is presently

27  unknown.  The amount of any tax liability that may be generated is presently unknown and

28  therefore the amount of securities to be sold to fund the Tax Holding Account is presently

unknown.  The Plan Fund will be less if not all of the pre-IPO investments become Successful Investments.

### 2.  Priority of Payment of Claims from Plan Fund and Tax Holding Account

Claims shall be paid from the Plan Fund and the Tax Holding Account in the following priority:

Class 1:  It is presently contemplated that Administrative Claims shall be paid in full from the Plan Fund, subject to an Equitable Adjustment.  The Administrative Cash Reserve shall retain sufficient funds and the Administrative Stock Reserve shall retain sufficient shares to pay projected Class 1 Claims through the close of the Receivership Estate.

Class 2:  It is presently contemplated that Class 2 Claims shall be paid in full from the Tax Holding Account, subject to an Equitable Adjustment. The Tax Holding Account and the Administrative Stock Reserve shall retain sufficient shares to pay projected Class 2 Claims through the close of the Receivership Estate.  If the Tax Holding Account is not sufficient to pay Class 2 claims in full, the Receiver shall sell additional securities to increase the Tax Holding Account to an amount sufficient to pay the Class 2 claims in full.  The payment of funds from the Tax Holding Account to pay Class 2 Claims may be subject to an Equitable Adjustment.

Class 3: Unsecured Creditor Claims shall be paid from the Plan Fund.  If the Plan Fund is insufficient to pay the Unsecured Creditor Claims in full, the Unsecured Creditor Claims shall be paid on a *pro rata* basis.  The Receiver shall not be obligated to make any payment to the allowed Class 3 claims if there are not sufficient securities to liquidate to pay all Class 1 and 2 claims in full.

Class 5: To the extent that there remain any surplus funds in the Plan Fund or the Tax Holding Account following payment in full of Class 1, 2 and 3 claims, the Receiver shall distribute the balance of the Plan Fund and the Tax Holding Account to the Class 5 claimants on a *pro rata* basis up to the full amount of the Class 5 claims.

To the extent that any surplus funds remain following payment in full of Class 5 claims, those funds shall be distributed to the Investors on a *pro rata* basis using their gross investment amount.

The Receiver shall endeavor to make distributions from the Plan Fund as soon as practicable following a liquidity event for a given investment. The Receiver anticipates holding a balance in the Plan Fund and the Tax Holding Account pending receipt of final tax clearance from the IRS at the end of the case and will distribute any excess funds after such clearance is received.

**3.  Administrative Cash Reserve:**

The Receiver shall have the authority to retain a reserve from the Plan Fund and the Tax Holding Account to ensure that sufficient funds will be available to pay:

      a.   Class 1 and 2 claims in full through the close of the case;

      b.   Any and all estimated tax liability generated from the sale of securities to generate the Plan Fund, the Tax Holding Account, and in connection with the transfer of shares to Class 4 claimants.

      c.   The fees and costs to wind up the Receivership Estate; and

      d.   Any unanticipated costs of the Receivership Estate.

Although it is presently contemplated that Class 1 Claims will be paid from the Plan Fund and Class 2 Claims will be paid from the Tax Holding Account, the allocations of those payments may be subject to an Equitable Adjustment.

**4.  Anne Bivona Funds:**

The Disgorgement Funds obtained by the SEC from relief defendant Anne Bivona are not assets of the Receivership Estate and may be distributed or transferred at the SEC's discretion on receiving any necessary court approval.

**5.  Final Distribution of Cash:**

Following the last liquidity event for the last Successful Investment, the expiration of any lockup period, and the distribution of the cash from the Plan Fund and the securities in connection with that particular Successful Investment as set forth herein, the Receiver shall prepare and file final tax returns and, upon receipt of final tax clearance, shall seek authority from the Court to make a final distribution of any funds remaining in the Plan Fund and the Tax Holding Account at that time.

**6.  Distribution of Securities to Investor Claims**

12

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF RECEIVER'S DISTRIBUTION PLAN

Class 4 Investor Claims shall receive distributions following: (a) a liquidity event for a Successful Investment; (b) the expiration of any lockup period or contractual restrictions on transfer imposed by the issuer of the securities; (c) the sale of securities to create the Plan Fund and Tax Holding Account; (d) a determination of estimated Priority Claims generated from the anticipated distributions and the sale of securities to generate funds to pay the anticipated tax liability; (e) the sale of securities sufficient to generate funds sufficient to pay such estimated Priority Claims; and (f) approval by the Court of the Final Schedule of Proposed Stock Distributions for a particular Successful Investment.

If the Receivership Estate does not ultimately obtain securities for a Successful Investment, the Investor Claimants shall be treated as Class 5 Subordinated Claims.

To the extent that there is any shortfall in the number of shares to distribute for a particular Successful Investment, the number of shares distributed to investors shall be reduced on a *pro rata* basis and such distribution shall be deemed full satisfaction of the Investor Claims with respect to that particular Successful Investment.  The Investor Deficiency Claims shall be treated as Class 5 Claims. Notwithstanding the foregoing, Investor Claims may receive a distribution pursuant to Section VII.A.2 of the Plan to the extent that any surplus funds remain following payment in full of Class 5 claims.

The Receiver shall retain an Administrative Stock Reserve of shares from each of the Successful Investments to ensure that sufficient funds will be available to pay:

    a.  Class 1 and 2 claims in full through the close of the case;

    b.  Any and all tax liability generated from the sale of securities to generate the Plan Fund and the Tax Holding Account and in connection with the transfer of shares to Class 4 claimants;

    c.  The fees and costs to wind up the Receivership Estate; and

    d.  Any unanticipated costs of the Receivership Estate.

The Receiver may delay such distribution until such time as the tax liability for the liquidation of the shares has been established.

Each of the Final Schedules of Proposed Stock Distributions and distributions made to

13

Class 4 Investor Claimants shall comply with all securities law requirements.

**F.     Affected Claims Under the Plan**

Interested parties and claimants are encouraged to review the definitions under the terms of the Plan attached to the Phelps Declaration as Exhibit "A" as their rights may be impacted as set forth in the Plan. The following definitions will affirmatively disallow claims as follows:

1.      "Disallowed Claims" include claims, whether or not formally and timely filed, belonging to or asserted by or on behalf of or for (i) John V. Bivona; (ii) Frank Mazzola; (iii) Anne Bivona; (iv) Michele Mazzola; (v) David Jurist; (vi) Alice Jurist; (vii) former agents or employees of Saddle River, Felix Investments, LLC, FMOF Management Associates LLC, NYPA Management Associates LLC, SRA Management, Clear Sailing Group IV LLC, Clear Sailing Group V LLC, and the Fortuna Fund Management LLC; (viii) other insiders (including but not limited to Emilio DiSanluciano); (ix) management fees; (x) inter-company claims; (xi) any claim for the guarantee of a debt or financial obligation, including for the benefit of insiders (including but not limited to John V. Bivona, Frank Mazzola, Anne Bivona, Michele Mazzola, David Jurist, and Alice Jurist, by FMOF Management, or NYPA Management or any other of the Receivership Entities); (xii) any claim for the guarantee of a debt or financial obligation in connection with a Failed Investment; (xiii) any claim that has been disallowed by an order of the Court after notice and a hearing; and (xiv) any claim that was filed with the Receiver after May 14, 2019 that has not been expressly allowed by an order of the Court after notice and a hearing.  The definition of "Disallowed Claim" excludes a claim or claims filed on behalf of Fortuna Funds by Stephen Soler, unless such claim or claims are disallowed on another basis.

2.      "Failed Investment" means any of the companies in which the Receivership Entities offered investments in securities in companies which were pre-IPO, did not go public and have a liquidity event, and have failed.  Those companies as of the date of this Plan are Alphcom dba Jawbone, Badgeville Inc., Candi Controls, Glam, Jumio Inc., Odesk, Practice Fusion, Virtual Instruments, eSolar and Silver Springs Network.   Any intended investment which fails to go public after approval of this Plan is intended to be included in the definition of Failed Investment.

3.     "Subordinated Claims" means and includes an Allowed Claim for: (1) penalty or other properly subordinated claims in connection with outstanding tax liabilities; (2) claims which have been subordinated pursuant to Court order or agreement between the Receiver and an Eligible Claimant; and (3) Investor Deficiency Claims.   The claim of the SEC arising from its Final Judgment is deemed satisfied upon the Court's approval of a distribution plan and shall not receive any distribution pursuant to this Plan.  Subordinated Claims do not include Disallowed Claims.

## IV.     SUBSTANTIVE CONSOLIDATION OF SOLIS FUND

The assets and claims of Solis Fund Associates LLC ("Solis") have been consolidated with the assets and liabilities of the other Receivership Entities pursuant to the Court's order entered on June 27, 2019. The sole assets of Solis are 59,111 shares of Bloom Energy, Inc. The other companies that were targeted for investment through Solis are no longer operating so only the Bloom Energy shares remain.

Solis is formally added as one of the Receivership Entities and its assets made part of the Receivership Estate. The interest of Investor Claimants in Bloom Energy shares will be combined with the interest of the investors in Solis in Bloom Energy shares so that all Bloom Energy shares held in the name of the Solis and the Receivership Entities will be available to satisfy the claims of Solis investors and the Investor Claims of investors with an interest in Bloom Energy shares.

Pursuant to the Plan, the 59,111 shares of Bloom Energy originally held by Solis shall be combined with the 88,317 shares of Bloom Energy held by the Receivership Entities.  For notice purposes only, the following chart reflects the original shares of Bloom Energy held by the respective entities and the investors' claims against those shares:

| Company | Shares Owned | Shares Claimed |
|---|---|---|
| Bloom Energy Inc. | 88,317 | 117,017 |
| Bloom Energy Inc. (Solis Funds) | 59,111 | 22,566 |

Pursuant to the Plan, the total shares owned of 147,428 will be available to satisfy the total shares claims by investors of 139,583, and the 7,845 surplus shares will be liquidated to fund the Plan Fund as set forth herein. The Bloom Energy shares shall otherwise be distributed in accordance with the terms of this Plan.

15

1       The basis of the consolidation of Solis into the Receivership Estate is as follows. According

2  to an Agreement and Plan of Merger by and among Solis Associates I, LLC, Solis Associates II,

3  LLC and Solis Fund Associates LLC effective as of August 12, 2013, the entities Solis Associates

4  I, LLC ("Solis I") and Solis Associates II, LLC ("Solis II") were merged into the surviving entity

5  Solis Fund Associates LLC ("Solis Fund").  Solis I and Solis II agreed that those entities would be

6  terminated and members of those entities would become members of Solis Fund, the surviving

7  entity. The Amended and Restated Limited Liability Company and Operating Agreement of Solis

8  Associates Fund LLC ("Amended Solis LLC Agreement") of the same date, August 12, 2013,

9  recites that the primary purpose of Solis Associates Fund LLC was to acquire and hold interests in

10  Bloom Energy Corporation ("Bloom"), eSolar, Inc., and Silver Spring Networks, Inc. The investors

11  in Solis Fund only have claims for investments in Bloom Energy Corporation as the other

12  companies that were targeted for investment are no longer operating. Solis Associates Fund LLC

13  and the surviving entity Solis Fund Associates LLC are one and the same entity and that the name

14  of Solis Associates Fund LLC in the Amended Solis LLC Agreement incorrectly transposed the

15  name of Solis Fund.

16       Pursuant to the Court's Civil Minutes entered on June 27, 2019 (ECF 503), the Solis

17  Associates Fund is substantively consolidated into the Receivership Estate.

18  **V.**     **APPOINTMENT OF INVESTOR ADVISORY COMMITTEE**

19       An Investor Advisory Committee (the "IAC") shall be appointed to assist the Receiver with

20  respect her management of the remaining securities in implementing the Plan.  The IAC will have

21  no formal decision-making authority and will serve solely as a resource to provide assistance to the

22  Receiver with respect to her management of the securities remaining in the Receivership Estate.

23  The Receiver may consult with the IAC or individual members of the IAC as appropriate. Members

24  of the IAC will not be compensated for their service on the IAC and the estate shall not bear any

25  expense attributable to the IAC or any professionals it may wish to engage.  If the Receiver and/or

26  the SEC seek any future changes to this Distribution Plan, they shall meet and confer in advance

27  with the IAC and Progresso Ventures, LLC at least two weeks prior to filing any motion in this

28  Court seeking such changes.

Case No. 3:16-cv-01386-EMC              NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
                                     OF RECEIVER'S DISTRIBUTION PLAN

1    By this Motion, the Receiver invites nominations for interested parties who wish to serve on

2  the IAC.  The Receiver will consider new nominations as well as members of the SRA Investor

3  Group pursuant to the SRA Funds Investor Group's Proposed Alternative Distribution Plan [Doc

4  No. 407-1] as candidates for an IAC.   All individuals wishing to nominate themselves to serve on

5  the IAC must submit an application to the Receiver by email to kphelps@diamondmccarthy.com or

6  regular mail to Kathy Bazoian Phelps, Diamond McCarthy, 1999 Avenue of the Stars, Ste 1100,

7  Los Angeles, CA 90067, no later than March 9, 2020. The IAC application must include the

8  investor name, address, email address, phone number and statement of qualifications to serve on

9  the IAC. Submission of an application to serve on the IAC is not a guarantee of a position to serve

10  on the IAC.

11    Following March 9, 2020, the Receiver will meet and confer with the SEC, the SRA

12  Investor Group, and Progresso Ventures, LLC to review the applications submitted and to try to

13  reach agreement on the individuals who will serve on the IAC.  If no agreement can be reached, the

14  Receiver will file a motion with a list of all identified names and will provide an opportunity for the

15  SEC, the SRA Investor Group, Progresso Ventures, LLC, or any other party to take a position

16  regarding the identity of the member of the IAC, which shall then remain subject to Court approval.

17  **VI.    TAX TREATMENT AND APPORTIONMENT OF TAX LIABILITY**

18    1.    The Receivership Estate shall be treated as a Qualified Settlement Fund ("QSF")

19  effective as of the date of the commencement of the Receivership Estate, October 11, 2016.

20    2.    The assets of the Receivership Entities became property of the QSF as of October

21  11, 2016.

22    3.    The Receiver shall obtain a valuation of the assets of the Receivership Entities as of

23  October 11, 2016.

24    4.    The sale of securities to create the Plan Fund and the Tax Holding Account, and the

25  transfer of securities to Investors in connection with the Class 4 distributions, shall be treated as

26  taxable events if required by law.

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF RECEIVER'S DISTRIBUTION PLAN

5. The Receiver is authorized to sell securities and to retain monies in the Tax Holding Account to pay any and all tax liability generated from the sale and transfer of securities in connection with this Plan.

6. Any tax liability of the estate shall be paid through the sale of securities to generate sufficient cash in the Tax Holding Account to pay such tax liability. No distributions to Classes 3, 4, or 5 shall be paid until such time as the Receiver, in her discretion, determines that sufficient funds are available in the Tax Holding Account to pay all taxes in full.

## VII.   THE PROPOSED PLAN FOR FINAL DISTRIBUTION OF RECEIVERSHIP ESTATE ASSETS SHOULD BE APPROVED

The Court's power over an equity receivership and to determine appropriate procedures for administering a receivership is "extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986); *see SEC v. Basic Energy*, 273 F.3d 657, 668 (6th Cir. 2001); *SEC v.Elliott*, 953 F.2d 1560, 1566 (11th  Cir. 1992). The primary purpose of an equity receivership is to promote the orderly and efficient administration of the estate for the benefit of the creditors. *See Hardy*, 803 F.2d at 1038. The relief requested by the Receiver best serves this purpose. The Court has wide latitude when it exercises its inherent equitable power to approve a plan of distribution of receivership funds. *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir.  2001)  (affirming District Court's approval of plan of distribution because court used its discretion in "a logical way to divide the money"); *Quilling v. Trade Partners, Inc.*, 2007 WL 107669, * 1 (W.D. Mich. 2007) ("In ruling on a plan of distribution, the standard is simply that the district court must use its discretion in a logical way to divide the money" (internal quotations omitted)). In approving a plan of distribution in a receivership, "the district court, acting as a court of equity, is afforded the discretion to determine the most equitable remedy." *Forex*, 242 F.3d at 332. The Court may adopt any plan of distribution that is logical, fair, and reasonable. *SEC v. Wang*, 944 F.2d 80, 83-84 (2d Cir. 1991); *Basic Energy*, 273 F.3d at 671; *Quilling*, 2007 WL 107669 at *1.

The Receiver believes the proposed distribution plan is logical, fair, and reasonable.  The expenses of administration of the receivership incurred for the services of the Receiver and her professionals and those who provided goods, services, and use of property to the Receiver post-

18

1 | receivership as part of the administration of the estate are properly paid as a priority before

2 | distribution of the receivership assets to creditors since the Receiver collected the assets of the

3 | receivership estate. *FTC v. Crittenden*, 823 F. Supp. 699, 704 (CD Cal. 1993).  The Receiver

4 | additionally believes that the Plan, which provides for payment in full of priority tax claims prior to

5 | distribution to investors or creditors, is necessary and appropriate.  The Plan also provides for the

6 | best possible equitable distribution as between the investors and creditors given the key elements of

7 | the Plan imposed in this case that creditors shall receive cash disbursements and investors shall

8 | receive a distribution of shares.  The Plan also allows for an Equitable Adjustment after the figures

9 | become better known regarding the administrative and tax claims so that the burden of those

10 | priority classes of claims can be borne most equitable as between the creditors and investors.

11 | Phelps Decl., ¶ 13.

12 | **VIII.   NOTICE OF THE HEARING ON THIS MOTION SHOULD BE DEEMED**

13 | **APPROPRIATE AND SUFFICIENT**

14 | The Receiver has served notice of the hearing on this Motion by email on the investors and

15 | creditors with known, valid email addresses.  Parties with unknown or invalid email addresses have

16 | been served by regular mail.  The Receiver has posted the notice of hearing and the Motion on the

17 | Receiver's website (www.diamondmccarthy.com/saddleriverreceiver). This notice complies with

18 | the Court's preliminary approval of the Plan which expressly provided that the Receiver shall serve

19 | the Plan Notice on all Unsecured Creditors, Investors and parties in interest as follows:

20 | a.   By ECF on those parties that have an account on the District Court's website;

21 | b.   By email where the email address is known to be valid and current;

22 | c.   By regular mail where an email address is not known or is known to be invalid.

23 | e.   The Receiver shall post the Plan Notice and the Distribution Plan on the

24 | Receiver's website at: http://www.diamondmccarthy.com/saddleriverreceiver.

25 | The Receiver has complied with those notice requirements. The Receiver requests that the

26 | Court approve this form of notice as reasonable, appropriate, and the most cost-effective means of

27 | providing notice of the hearing under the circumstances, since there are approximately 335

28 | investors both in the United States and overseas. To the extent necessary, the Receiver requests that

19

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF RECEIVER'S DISTRIBUTION PLAN

1   the Court approve the notice given as reasonable, limited notice appropriate under the

2   circumstances and in the interests of time and cost. This Court, as a court of equity supervising the

3   receivership estate, may make appropriate administrative orders governing the receivership,

4   including limitations on and changes in notice and other procedures. *See* F.R. Civ. P. 5(a) and (c)

5   (authorizing the court to modify service procedures when numerous defendants are involved in

6   litigation).

7   **IX.      CONCLUSION**

8          Wherefore, the Receiver respectfully requests that the Court approve the Distribution Plan

9   attached to the Declaration of Kathy Bazoian Phelps as Exhibit "A" on a final basis, that the

10  Court approve the form and manner of notice of the Motion, and for all other appropriate

11  relief.

12  DATED: February 27, 2020

13

14                             By:    /s/ *Kathy Bazoian Phelps*
                                      Kathy Bazoian Phelps, Successor Receiver
15

16

17

18

19

20

21

22

23

24

25

26

27

28