1  KATHY BAZOIAN PHELPS (State Bar No. 155564)
   *kphelps@diamondmccarthy.com*
2  DIAMOND MCCARTHY LLP
3  1999 Avenue of the Stars, Suite 1100
   Los Angeles, California 90067-4402
4  Telephone:    (310) 651-2997

5  *Successor Receiver*

6                    **UNITED STATES DISTRICT COURT**

7                    **NORTHERN DISTRICT OF CALIFORNIA**

8                         **SAN FRANCISCO DIVISION**

9

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>     v.<br><br>JOHN V. BIVONA; SADDLE RIVER ADVISORS, LLC; SRA MANAGEMENT ASSOCIATES, LLC; FRANK GREGORY MAZZOLA,<br><br>              Defendants, and<br><br>SRA I LLC; SRA II LLC; SRA III LLC; FELIX INVESTMENTS, LLC; MICHELE J. MAZZOLA; ANNE BIVONA; CLEAR SAILING GROUP IV LLC; CLEAR SAILING GROUP V LLC,<br><br>              Relief Defendants. | Case No. 3:16-cv-01386-EMC<br><br>**ADMINISTRATIVE MOTION BY RECEIVER KATHY BAZOIAN PHELPS PURSUANT TO LOCAL CIVIL RULE 7-11 FOR ORDER APPROVING SALE AND DISTRIBUTION OF PUBLICLY TRADED SECURITIES PURSUANT TO DISTRIBUTION PLAN**<br><br> Date:   No Hearing Set<br> Time:   No Hearing Set<br> Judge:  Edward M. Chen |

Kathy Bazoian Phelps, the successor receiver herein (the "Receiver") of SRA Management Associates, LLC, SRA I, LLC, SRA II, LLC, SRA III, LLC, SRA Management Associates, Clear Sailing Group IV, LLC, Clear Sailing Group V, LLC, Felix Multi-Opportunity Fund I, LLC, Felix Multi-Opportunity Fund II, LLC, Felix Management Associates, LLC, NYPA Fund I, LLC, NYPA Fund II, LLC, NYPA Management Associates, LLC and Solis Associates Fund LLC (collectively, the "Receivership Entities" and their estates the "Receivership Estate"), hereby files this Motion for Order Approving Sale and Distribution of Publicly Traded Securities Pursuant to Distribution Plan (the "Motion").[1]

## I.   Introduction

The Court approved the distribution plan (the "Plan") in this case by Order entered on May 25, 2020 [Dkt No. 613]. Pursuant to the Plan, the Receiver is to liquidate a portion of the publicly traded securities to fund the Plan Fund and the Tax Holding Account and to sell surplus shares. The Plan also provides that the Receiver may make an interim distribution, in her discretion, of a portion of the Plan Fund and the remaining securities to the creditors and investors with allowed claims, respectively. The Plan provides that the Receiver may hold an Administrative Cash Reserve and an Administrative Stock Reserve to protect the estate and ensure that sufficient assets remain to satisfy all administrative and tax claims.

This Motion sets forth the detailed distribution schedules for each of the groups of investors holding securities in each of the following publicly traded securities: Bloom Energy, Inc.; Cloudera, Inc.; DropBox, Inc.; Lyft, Inc., Inc.; MongoDB, Inc.; Pinterest, Inc.; Snap, Inc., Inc., and Uber, Inc. The distribution schedules attached as Exhibits "1" through "8" hereto (the "Schedules") reflect the Investor Claimants by I.D. Number and the number of shares that will need to be liquidated to pay into the Plan Fund, the Tax Holding Account and the commissions, as well as the proposed number of shares to be distributed to each investor. The taxes have been estimated based on the now current value of the securities that will be sold and the portion of the

---

[1] The Receiver will serve notice of this Motion, the Motion, and supporting documents on all interested parties pursuant to Civil Local Rule 66-6.and will post the papers on the Receivership website.  *See* Civil L.R. 66-6.  Any interested party has four days to file any opposition to or support for this motion.  *See* Civil L.R. 7-11.

securities that will be distributed at this time. The actual figures may vary based on price fluctuations at the exact time of sale and distribution. The Receiver proposes to endeavor to sell the securities on the open market at a price equal to or higher than the current value of the shares as set forth in the Schedules. However, given daily fluctuations in price, the Receiver requests authority to liquidate the securities at a price that is up to 10% lower than the "Sales Price Per Share" listed for each respective security in the Schedules.

The Receiver has conferred with counsel for the Securities and Exchange Commission, who does not oppose the Motion. The Receiver has also provided copies of the Motion to the members of the Investor Advisory Committee, and counsel for Progresso Ventures LLC, who did not express any comment or opposition in response. A stipulation with all parties was deemed impractical given, among other things, the entry of judgment against the defendants and pending bankruptcy of defendant John Bivona. (L.R. 7-11 1(a)).

## II. The Sale of Securities as Set Forth in the Distribution Schedules is Appropriate

The Plan provides in Section VII.A.I that the Receiver is to sell securities to create the Plan Fund and Tax Holding Account as follows:

(a) Securities shall be sold to generate an amount of 30% of the gross amounts invested by the Investor Claimants in Successful Investments to fund the Plan Fund.
(b) Any surplus securities for any of the Successful Investments shall be sold and the proceeds shall be added to the Plan Fund.
(c) Additional securities shall be sold to generate sufficient funds to pay any estimated Priority Tax Claims generated from the sale of securities and the distribution of shares back to Investors and said sales proceeds shall be deposited in the Tax Holding Account.
(d) The Receiver shall sell securities as follows for the Successful Investments following a liquidity event for a given Successful Investment.
(e) The 30% to fund the Plan Fund shall be net of any brokerage fees paid in connection with the sale of the securities. In other words, the amount to be held in the Plan Fund following payment of brokerage fees shall equal 30% of the gross amount invested.
(f) The Receiver shall sell the securities in a manner consistent with state and federal corporate and securities laws. The Receiver anticipates that such distributions or sales shall be done in accordance with Section 5 of the Securities Act of 1933 ("Securities Act") or in accordance with exemptions from registration provided in the Rules promulgated by the Commission pursuant to the Securities Act.

The publicly traded securities, the number of shares claimed by investors, owned by the estate, the 30% gross investment amounts, and the Tax Holding Account amounts, assuming the

RECEIVER'S ADMINISTRATIVE MOTION TO
APPROVE SALE AND DISTRIBUTION OF SECURITIES

Administrative Stock Reserves set forth in the schedules, are summarized as follows:

| Company | Securities Owned by Estate | Shares Claimed by Investors | Gross Investment Amount | 30% of Gross Investment Amount | Tax Holding Account Amount | Percentage of Shares to Sell |
|---|---|---|---|---|---|---|
| Bloom Energy Inc. | 147,429 | 139,583 | $ 3,724,498 | $1,117,350 | $1,886 | 90% |
| Cloudera, Inc. | 37,639 | 37,639 | $ 637,245 | $ 191,174 | $0 | 90% |
| Dropbox, Inc. | 46,000 | 46,001 | $ 1,783,457 | $ 535,038 | $0 | 50% |
| Lyft, Inc. | 9,479 | 9,479 | $ 250,756 | $ 75,227 | $0 | 85% |
| MongoDB Inc. | 20,000[2] | 22,171 | $ 1,002,322 | $ 300,697 | $1,289,737 | 50% |
| Pinterest, Inc. | 23,206 | 23,206 | $ 550,470 | $ 165,141 | $19,840 | 80% |
| Snap, Inc. | 31,172 | 31,173 | $ 549,821 | $ 164,946 | $0 | 60% |
| Uber Inc. | 500 | 500 | $ 19,388 | $ 5,816 | $0 | 90% |

The Receiver has estimated the Tax Holding Account amount based upon the valuation of the securities as of the close of the market of the date of the filing of this Motion. The Tax Holding amount may increase or decrease depending on the value of the securities as of the date of sale and the dates of distribution, which will change the number of shares required to be liquidated to satisfy that tax liability.

By this Motion, the Receiver requests authority to take the following actions:

1. To approve the Schedules attached hereto as Exhibits "1" through "8" subject to modification in the price of the stocks at the time of sale and distribution;

2. To approve the sale of the securities in a price range of any amount higher than 90% of the "Sales Price per Share" prices set forth in the Schedules, which reflect the price of the securities as of the close of the market of the date of the filing of this Motion.[3] The timing of the sale and distribution shall be determined in the Receiver's discretion;

3. To authorize the sale of the approximate number of shares as set forth in the Schedules, which may vary based upon the amount required for the Tax Holding Account, which may change due to fluctuation in the price of the securities;

4. To authorize the sale of surplus securities pursuant to the Plan. Only one of the categories of securities – Bloom Energy – contains surplus shares so, in addition to the

---

[2] The estate is owed another 6,250 shares from Ben Sabrin, and the Receiver has commenced litigation seeking turnover of those shares.

[3] To the extent that the actual sales price for the securities at the time of sale and distribution differs from the price set forth in the Schedules, the Receiver shall adjust the number of shares required to be sold to fund the Tax Holding Account accordingly.

Plan Fund and Tax Holding Account amounts, the Receiver will also sell 7,846 shares of Bloom Energy and any additional shares as may be necessary to cover any tax liability that may be generated as a result of that sale.

5. To make an interim distribution of securities to the investors holding Allowed Claims as set forth in the Schedules.

6. To pay the commissions that will be generated from the sale of securities. The 30% Plan Fund is to be net of commissions pursuant to the Plan, so additional shares will be sold to generate funds to pay the commissions. The current commission structure at Wells Fargo Bank was been negotiated from .05% of the value of the trade to .025%, and may be reduced to a lower flat fee per trade. The Receiver is in the process of evaluating whether locating another financial institution can handle a fiduciary brokerage account at a lower commission rate that will justify the transfer of the securities. If so, the Receiver requests authority to move the securities prior to sale and distribution if a meaningfully lower commission structure can be obtained.

### IV.    Interim Distribution

The Receiver seeks authority at this time to distribute a certain percentage of the shares but to maintain an Administrative Stock Reserve for each investment in an amount that she believes necessary to protect the estate. The percentage of the Reserve varies by investment depending on the estimated tax position, the manner in which the securities were acquired by the estate, the number of securities involved, and the risk related to each investment. The Receiver does not presently intend to make a cash distribution to Class 3 claimants and intends to hold the cash as an Administrative Cash Reserve pursuant to the Plan until her tax advisor advises that an interim distribution to cash claimants is appropriate and, if so, in what amount.

///
///
///
///
///

### V. Conclusion

The Receiver respectfully requests that the Court approve the Schedules, authorize the Receiver to liquidate the securities on the terms set forth herein, pay all appropriate taxes and commissions, and requests all other appropriate relief.

DATED: July 13, 2020                    By:   /s/ *Kathy Bazoian Phelps*
                                              Kathy Bazoian Phelps
                                              Receiver